**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | |
|---|---|
| In re: | **Chapter 11** |
| **Climate Control Mechanical Services, Inc.** | **Case No.: 3:15-bk-02248-JAF** |
| | **(Jointly Administered With)** |
| **Base 3, LLC** | **Case 3: 15-bk-02249-JAF** |
| **The Alexander Group, LLC** | **Case 3:15-bk-02250-JAF** |
| **Facility Performance, LLC** | **Case 3:15-bk-05021-JAF** |
| | |
| **Debtors** | **Emergency Relief Requested** |
| _____/ | |

**CIRACO ELECTRIC, INC.'S EMERGENCY MOTION FOR**
**APPOINTMENT OF CHAPTER 11 TRUSTEE OR IN THE**
**ALTERNATIVE TO CONVERT CASE TO CHAPTER 7**

Creditor Ciraco Electric, Inc. ("Ciraco"), pursuant to sections 1104(a) and 1112(b) of Title 11 of the United States Code (the "Code") moves this Court to appoint a Chapter 11 trustee in the bankruptcy cases of Climate Control Mechanical Services, Inc. ("Climate Control"), The Alexander Group, LLC ("Alexander Group"),  Base 3, LLC ("Base 3") and Facility Performance, LLC ("Facility Performance", and together with Climate Control, Alexander Group, and Base 3 each a "Debtor" and together the "Related Debtors") or to convert the instant matters to Chapter 7.  In support thereof, Ciraco states as follows:

**Summary of Argument**

The Related Debtors have failed to file a single bank statement with their monthly operating reports, among the other deficiencies in complying with their obligations as debtors-in-possession. Yet, the Related Debtors have crossed the line from noncompliance to concealment of assets and unauthorized bank accounts, which were revealed only recently through discovery served upon third parties. The third party information demonstrates that the Related Debtors have run a substantial amount of its operational funds through unauthorized and undisclosed bank

accounts, to the tune of more than $700,000. Their principal, Louie F. Wise III, and/or their CFO, Ralph Pressley, have even boldly withdrawn nearly $70,000 in cash belonging to Debtor Alexander Group. Thus, while the Related Debtors feign compliance with their obligations, including their latest request for an extension to pay United States trustee fees, see Doc. No. 503, in reality, they have been operated without transparency and for the personal benefit of Wise and/or Pressley. The facts herein demonstrate a dire need for the appointment of a Chapter 11 trustee over the Related Debtors, or, in the alternative, conversion to Chapter 7. Either way, the concealment, and what appears to be a fraudulent diminution and diversion of the estates' assets, warrants the appointment of a disinterested, honest, third party neutral to protect the estates' and their creditors.

## Jurisdiction and Venue

1.      This Court has jurisdiction pursuant to 28 U.S.C. §§ 157(b)(2) and 1334.

2.      This is a core proceeding pursuant to § 157(b)(2)(A).

3.      Venue is proper pursuant to 28 U.S.C. § 1408.

## Factual Background

4.      On May 18, 2015, the debtors Climate Control, Alexander Group, and Base 3 filed their respective petitions for relief under Chapter 11 of the Code. Thereafter, Facility Performance filed its petition for relief under Chapter 11 of the Code on November 16, 2015.

5.      The Related Debtors' principal is Louie F. Wise III ("Wise").

6.      The Related Debtors' CFO is Ralph Pressley ("Pressley").

7.      The Chapter 11 bankruptcy cases for the Related Debtors have been administratively consolidated pursuant to the Order Directing Joint Administration of Cases, dated July 7, 2015, see Doc. No. 114, and the Order Adding Additional Case to those Previously

Consolidated for Joint Administration, dated December 15, 2015, with the related bankruptcy cases referred to together as the "Related Cases").

8.      The Related Debtors have throughout the pendency of the Related Cases filed monthly operating reports with this Court that purport to outline the financial condition of the respective Debtors on a monthly basis.

9.      Although the Related Debtors' monthly operating reports have been filed, the Related Debtors have failed to file complete and accurate monthly operating reports by failing to attach the required bank statements to each report.

10.     As a result of the failure of the Related Debtors to file correct and accurate monthly operating reports, Ciraco sent subpoenas to determine if the Related Debtors had or currently have a bank account, and requested any and all bank statements and other documents related to any such accounts that existed during the pendency of the Related Cases.

11.     Additionally, Ciraco sent subpoenas to entities that, upon information and belief, have provided funds to the Related Debtors that were not disclosed to this Court.

12.     One bank that received a subpoena, CenterState Bank, has produced documents showing multiple accounts of the Related Debtors that have not been disclosed to the Court.

13.     The Related Debtors, subsequent to the filing of their bankruptcy petitions, have misled this Court by failing to disclose four (4) bank accounts at CenterState Bank (each an "Account", and together the "Accounts") that contain deposits totaling in the aggregate more than $685,000.00 that were made after the Related Debtors filed their bankruptcy petitions. These deposits include:

        (a)      Deposits in excess of $550,000.00 made to CenterState account ending in 4132, owned by Climate Control ("CC 2015 Account");

        (b)      Deposits in excess of $150,000.00, made to CenterState account ending in

9014, owned by Climate Control ("CC 2016 Account"); and

(c)     Deposits in excess of $67,000.00, made to CenterState account ending in 9204, owned by Alexander Group ("AG Account").

14.     Facility Performance also maintained an unauthorized account at CenterState ("Facility Account"). The account ending in 4140 was opened July 7, 2015, but was maintained post-petition. While Facility Performance disclosed this account on its schedules, it states that the balance was only $123.97; in reality, the balance was closer to $17,139.30.

15.     True and correct, but redacted, copies of the bank statements showing the Related Debtor's activity in the Accounts that occurred during the pendency of the Related Debtor's bankruptcy cases, but was hidden from this Court, are attached hereto as follows:

| Composite Exhibit: | Account Statements For: |
|---|---|
| A | CC 2015 Account |
| B | Facility Account |
| C | CC 2016 Account |
| D | AG Account |

16.     Much of the monies deposited into the Accounts has either been taken out as cash by, or paid to or for the benefit of, Wise and/or Pressley, as follows:

(a)     Over $514,000.00 was withdrawn by Wise from the Account ending 4132 during the pendency of the Climate Control bankruptcy case.

(b)     Over $67,000.00 was withdrawn in cash by Wise and/or Pressley from the Account ending 4132 during the pendency of the Alexander Group bankruptcy case.

(c)     $104,000.00 was withdrawn by Wise from the Account ending 9014 during the pendency of the Climate Control bankruptcy case in checks made payable to Climate Control, but deposited in another Climate Control account.

17.     Additionally, Ciraco discovered an account at CenterState Bank belonging to Native Hubzone Solutions, LLC ("Native Hubzone Solutions"), an affiliate of the Related Debtors that is controlled by Wise.  During the pendency of the Climate Control bankruptcy

case, Native Hubzone Solutions transferred $104,283.00 to Climate Control, which funds were deposited in the Account of Climate Control that has been concealed from the Court.

18.     Additionally, Native Hubzone Solutions received over $145,000.00 funds from Climate Control's debtor-in-possession account at Wells Fargo Bank, the statements of which debtor-in-possession account have not been provided to this Court with Climate Control's monthly reports.  It is unclear whether the payment of these funds were proper and for the benefit of the bankruptcy estate.  An identical amount of money was paid near in time to Climate Control; however, it is unclear whether Climate Control deposited these funds in its debtor-in-possession account at Wells Fargo or some other account that is yet to be disclosed to the Court.

19.     True and correct, but redacted, copies of the bank statements of the Native Hubzone Solutions account at CenterState Bank showing activity with the Related Debtors during the pendency of the Related Debtor's bankruptcy cases, but was hidden from this Court, are attached as **Composite Exhibit E**.

20.     Neither the Accounts, their contents, nor any of the related deposits and withdrawals have been disclosed to this Court by the Related Debtors.  During the pendency of the Related Debtor's bankruptcy cases, amounts were moved in and out of the Accounts, including via cash, cashier's checks, money/debit/gift cards, transfers to unrelated accounts, and transfers and payments to Wise personally.

21.     The Related Debtors' failure to obtain either court permission or the consent of parties in interest prior to unilaterally and wrongfully liquidating over $700,000.00 from the Accounts over a period of years during the pendency of the Related Cases constitutes clear and continuing misuse of cash and estate assets in violation of section 363(b)(1).

22.     The Related Debtors, by misleading this Court, hiding the existence of the

Accounts, and liquidating the Accounts for the personal benefit of their individual owner and/or CFO, have shown a wanton disregard for this Court and the bankruptcy rules applicable to the Accounts.

23.     Although the monthly operating reports have been filed, the Related Debtors have failed to file complete monthly operating reports due to their failure to attach the required bank statements to each month's reports.

24.     The remaining recipients of the subpoenas that have been served have not yet responded to the subpoenas. As a result, it is not clear as to whether there are further instances of the Related Debtors, Wise, and/or Pressley either failing to disclose accounts or funds or misappropriating funds that should be part of the bankruptcy estates. However, to the extent that further information is uncovered, Ciraco will provide it to this Court.

25.     Despite the remaining responses which are due to Ciraco, this obvious and egregious violation by the Related Debtors is sufficient to require the appointment of a Chapter 11 Trustee on an emergency basis in order to ensure that the Related Debtors have disclosed all funds and accounts and are acting in the best interests of the creditors and other interested parties.

26.     Indeed, the Related Debtors today received an extension from the Court to pay United States trustee fees which were due November 1, 2017, based on (a) a lack of funds on hand to pay the fees; and (b) what appears to be a hastily-made settlement solely so the Related Debtors can pay the United States trustee fees.

27.     Yet, throughout the lengthy life of these cases, it appears Wise has siphoned significant amounts of money away from the Related Debtors, including cashing out a $67,000 claim that clearly belonged to Debtor, Alexander Group.

28.     Concurrently with filing this motion, Ciraco is filing its Motion to Freeze Unauthorized Bank Accounts. Ciraco incorporates that motion herein by reference, including the factual allegations and argument.

29.     Based on the egregious facts stated above, and potentially other facts that will be brought to light through the discovery process, the Court should appoint a Chapter 11 trustee, or convert the cases to Chapter 7.

## Argument

### A.     *The standard for appointment of a Chapter 11 trustee.*

8.     Section 1104(a) provides alternative grounds for appointing a trustee in a Chapter 11 bankruptcy.  Section 1104(a) states in pertinent part:

> (a)    At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of a trustee--
>> (1)    for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; [or]
>> (2)    if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor;

9.     While the appointment of a trustee should be the exception rather than the rule, "in the appropriate case, the appointment of a trustee is a power which is critical for the Court to exercise in order to preserve the integrity of the bankruptcy process and to ensure that the interest of creditors are served." In re Suncruz Casinos, LLC, 298 B.R. 821, 828 (Bankr. S.D Fla. 2003) (citations omitted).

>    **B.    *"Cause" exists to appoint a trustee in this case due to the related debtors' failure to disclose bank accounts and certain funds to this Court.***

10.    Section 1104(a)(1) illustrates what constitutes "cause" for purposes of appointment of a trustee, including fraud, dishonesty, incompetence, and gross mismanagement.

11.    In addition, courts have often found cause to appoint a trustee based on the consideration of a variety of other factors including the "[m]ateriality of the misconduct" and "[s]elf-dealings by management or waste or squandering of corporate assets." In re Sundale, Ltd., 400 B.R. 890, 900 (Bankr. S.D. Fla. 2009) (citing In re Intercat, Inc., 247 B.R. 911, 921 (Bankr. S.D. Ga. 2000)).

12.    "[D]iversion of corporate assets to the debtor's management or to other corporations owned by management constitute[s] mismanagement at best and fraud or dishonesty at worse; either warrants appointment of a trustee." In re PRS Ins. Group, Inc., 274 B.R. 381, 387 (Bankr. D. Del. 2001) (discussing In re Intercat, Inc., 247 B.R. 911, 923 (Bankr. S.D. Ga. 2000)); see also In re Professional Accountants Referral Svcs., Inc., 142 B.R. 424, 428–29 (Bankr. D. Colo. 1992) (diversion of corporate assets for professional use constitutes dishonesty or gross mismanagement which required the appointment of a trustee).

13.    Furthermore, "[r]eorganization is a consensual process propelled by a free flow of information. . . . Complete monthly operating statements have long been required and are necessary to that process." Matter of Denrose Diamond, 49 B.R. 754, 759 (Bankr. S.D.N.Y. 1985).  "A debtor in possession stands in the shoes of a trustee.  A trustee stands in a fiduciary relationship to all the creditors and has the inherent duty to keep them informed." Id.

14.     "A dearth of such information negates that process.  Where there is no offer of proof as to a compelling excuse for the failure to comply, creditors should be protected through the appointment of a Chapter 11 trustee to investigate and operate the business." Id.

15.     "In a Chapter 11 case, the debtor-in-possession has a fiduciary duty to act not in its own best interest, but rather in the best interest of the entire estate, including secured and unsecured creditors." Commodity Futures Trading Commission v. Weintraub, 471 U.S. 343, 105 (1985).  Part of that fiduciary duty requires that the management of a debtor not squander assets or divert assets to management's personal benefit.  Another part of that duty requires that a debtor-in-possession faithfully report on its financial status.

16.     The willingness of Congress to leave a debtor-in-possession in control is premised on the expectation that current management will carry out its responsibilities in a competent, well managed, and open manner.  If the debtor-in-possession defaults in this respect, section 1104(a)(1) commands that the stewardship of the reorganization effort must be turned over to an independent trustee.

17.     In the instant matter, the existence of the Accounts, and the obvious transfers in and out of the Accounts to the benefit of Wise and related entities, is, among other things, a diversion of assets, a violation of the Bankruptcy Code, and a serious and wanton breach of fiduciary duties. At worst, this is fraud and dishonesty. At best, it is incompetence and gross mismanagement.  Under section 1104(a)(1), this is more than sufficient cause for appointment of a trustee.

18.     Moreover, the Related Debtors' failure to file bank account statements has interfered with the free flow of information in a manner that basically defeats the point of the

required monthly operating reports. The lack of information provided by the Related Debtors has assisted in the concealment of the Accounts.

19.    Significantly, some of the operating reports reflect transactions in a way that it appears intended to conceal the nature of the transaction. For example, some MORs simply show several transactions listed as "Transfer" in large, round amounts, like $10,000 (see Doc. No. 482 at 21) and $20,000 (see Doc. No. 482 at 21). All in all, by way of example, the August 2017 monthly operating report for Climate Control shows $63,250 in transfers for which there is no stated recipient, nor is there any backup for the purpose or destination of those transfers. See also Doc. No . 478 at 21-25 ($25,000, $6,000, $3,500, $4,000, $17,500, $22,675, and $30,000 – totaling $108,675 for July 2017).

20.    In conjunction with the Debtors failing to fully disclose their financial dealings, Wise is also the recipient (indirectly at the least) of payments from the Debtors, including payments for rent to Roberts Property Holdings, LLC, which payments have not been approved by the Court; nor has any lease with this entity ever been assumed.

21.    Furthermore, Wise has related entities under the umbrella of "InTec" (which is a d/b/a owned by Debtor, Facility Performance) that share the Related Debtors' operations, including locations, equipment, tools, vehicles, etc. Such entities include, but are not limited to, Intec Facility Solutions, LLC, Copper Creek Plumbing, and Vetcon. However, it is unclear whether the related entities are paying their fair share of the operations, or if the Related Debtors are footing the bill while these entities operate with reduced or no expense.

22.    As a result of these multiple failures and intentional acts undertaken by the Related Debtors and Wise, cause exists to appoint a trustee in this matter immediately and on an

emergency basis, especially in light of Wise's and/or Pressley's apparent comfort in siphoning

money away from the Related Debtors' operations without disclosure to the Court.

> ### C.    A trustee should be appointed in this case because such appointment is in the best interests of creditors.

23.    Additionally, section 1104(a)(2) provides that the court shall order the

appointment of a trustee "if such appointment is in the interest of creditors, any equity security

holders and other interests of the estate, without regard to the number of holders of securities of

the debtor or the amount of assets or liabilities of the debtor."

24.    Unlike section 1104(a)(1), which provides for mandatory appointment upon a

specific finding of cause, section 1104(a)(2) envisions a flexible standard.  "It gives the district

court discretion to appoint a trustee when to do so would serve the parties' and estate's interest."

In re Marvel Entertainment Group, 140 F.3d 463, 474 (3rd Cir. 1998) (internal quotations

omitted).

25.    The discovery (and recovery) of these funds, and possible further funds depending

on future document production, is clearly in the estates' best interest. However, since the Related

Debtors current management obviously cannot be trusted to ensure a proper and lawful

administration of the estates, it is in the best interest of all parties to appoint a trustee to oversee

the estates and to ensure that all possible assets are marshalled into the estates for the benefit of

all parties.

26.    The Related Debtors have been enjoying the protections of bankruptcy for years

now, while concealing and diverting estate assets from the Accounts. Pursuant to the discovery

of these concealed assets, it is clear that the debtors-in-possession are failing to act in the best

interests of the creditors and each of the bankruptcy estates.

27.    "A Chapter 11 trustee will be in a good position to determine whether or not the debtor can be reorganized and along which lines such reorganization or liquidation should proceed.  An independent Chapter 11 trustee will ensure that the unsecured creditors are not prejudiced by the debtor's failure to comply with the financial reporting requirements imposed under the Bankruptcy Code and Rules."  In re Cohoes Indus. Terminal, Inc., 65 B.R. 918, 923 (Bankr. S.D.N.Y. 1986).

28.    If the Related Debtors cannot be trusted to faithfully discharge their duties as debtors-in-possession, and it has become clear that this is the case, then this Court should appoint a disinterested party who can.  The appointment of a trustee would serve the best interests of all parties.

> ### D.    In the alternative, this matter should be converted to a Chapter 7 case for cause.

29.    Section 1112(b)(4) contains several actions that constitute cause under the statute that would warrant a conversion to a Chapter 7 case. In the instant matter, the most relevant item in that statute is that "gross mismanagement of the estate" constitutes cause that would allow a conversion to a Chapter 7 case in the instant matter.

30.    In a similar matter, cause was found to exist within the meaning of section 1112(b) where a debtor transferred his property within one (1) year before the filing of his petition and concealed property of the estate after the filing of the petition. See In re Eugene Alexander, 191 B.R. 920 (Bankr. M.D. Fla. 1994). Further, the court in that matter stated that cause existed within the meaning of section 1112(b) due to the fraud and dishonesty committed by each debtor. Id.

31.    In another similar matter, a debtor failed to disclose assets and failed to disclose certain items on its monthly operating reports. See In re Tucker, 411 B.R. 530 (Bankr. S.D. Ga.

2009). The debtor attempted to explain these failures by saying that the non-disclosed assets were divested pre-petition and had no value. Id. Despite that assertion, the Court ruled that "even the alleged lack of value of a concealed asset does not exculpate debtor." Id. The court ruled that conversion to Chapter 7 was warranted due to the fact that the debtor did not fully and completely adhere to its duties as a debtor in possession and should not, in light of its late, incomplete, or misleading disclosures. Id.

32.     In conclusion, the Related Debtors have failed to adhere to their duties as debtors in possession. That failure has led to the bankruptcy estate not containing all possible assets and has led to the misleading of the Court and creditors in this case. As a result, in the alternative to the appointment of a Chapter 11 trustee, these cases should be converted to Chapter 7 as the dismissal of these cases would only serve to allow current management to continue to divert assets away from creditors and remove the possibility of the restoration of any wrongfully taken funds for the benefit of the creditors.

WHEREFORE, Ciraco respectfully requests that the Court: (1) hold a hearing on this Motion on an emergency basis, on or before November 10, 2017; (2) enter an order (a) appointing a Chapter 11 trustee over the Related Debtors or (b) in the alternative, converting the Related Debtors to Chapter 7; and (3) grant such further relief as is necessary and just.

Date: November 2, 2017.                    Respectfully submitted,

                                           /s/ C. Andrew Roy
                                           C. ANDREW ROY
                                           Florida Bar No. 91629
                                           aroy@whww.com
                                           **WINDERWEEDLE, HAINES, WARD**
                                             **& WOODMAN, P.A.**
                                           Post Office Box 880
                                           Winter Park, FL 32790-0880
                                           (407) 423-4246; (407) 645-3728 (facsimile)
                                           Attorneys for Ciraco

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 2, 2017, I caused a true and correct copy of the foregoing to be served through CM/ECF on parties having appeared electronically in the instant matter. Undersigned will serve the following by U.S. Mail on November 3, 2017:

Climate Control Mechanical Services, Inc.
P.O. Box 3038
Ocala, FL 34478

Base 3, LLC
P.O. Box 3038
Ocala, FL 34478

Alexander Group, LLC
P.O. Box 3038
Ocala, FL 34478

Facility Performance, LLC
P.O. Box 3038
Ocala, FL 34478

Louie F. Wise III
4500 SW 52nd Cir., Unit 107
Ocala, FL 34474

Ralph Pressley
840 SE 5th Street
Ocala, FL 34471

/s/ C. Andrew Roy
C. ANDREW ROY