**FILED**

DEC 2 9 2017

CLERK U.S. BANKRUPTCY,
ORLANDO DIVISION

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION
www.flmb.uscourts.gov

In re:

Climate Control Mechanical
Services, Inc.,

Case No. 3:15-bk-02248-JAF

Jointly Administered with Base
3, LLC,                                           Case No. 3:15-bk-02249-JAF The
Alexander Group, LLC,                      Case No. 3:15-bk-02250-JAF
Facility Performance, LLC,               Case No. 3:15-bk-05021-JAF

    Debtors.                                        Chapter 11
_____/

## EXAMINER'S PRELIMINARY REPORT

    Examiner Paul M. Dumm ("Examiner") files this Preliminary Report.

**Background**

    1.    By Order of this Court entered on November 15, 2017 (the "Examination Order") (Doc. No.: 526), the United States Trustee was directed to appoint an Examiner in the jointly administered cases of Climate Control Mechanical Services, Inc. ("CCMS"); Base 3, LLC; The Alexander Group, LLC ("TAG"); and Facility Performance, LLC ("Facility"), (collectively, the "Debtors").

    2.    The Examination Order indicated that the Examiner was to file a preliminary or final report (the "Examiner's Report") with the Court concerning his or her investigation of the financial affairs of the Debtors within 30 days from the date of the Examination Order.

3.      By its Notice of Appointment of Chapter 11 Examiner, filed on November 22, 2017 (the "Notice of Appointment"), pursuant to the Examination Order, the Acting United States Trustee for Region 21 appointed Paul M. Dumm as Examiner.

**Scope of Examination**

4.      To identify issues to be examined, I reviewed documents filed in this case and discussed the case with representatives of the US Trustee's office and with other parties at interest.  Through that process, I identified the following issues to be examined:

   a.   Disposition of funds from the settlement of the BP Claim

   b.   Use of non-Debtor in Possession ("DIP") (improper or unauthorized) bank accounts

   c.   Possible diversion of business to non-debtor entities

   d.   Use of PEX cards

   e.   Possible improper or unauthorized payments to professionals

   f.   Possible improper or unauthorized payments to insiders or related parties

   g.   Failure to properly file Monthly Operating Reports ("MORs")

5.      I met with and communicated with the Debtors and other parties to understand and analyze the issues identified for examination and gather supporting information and documents.  I found that certain documents and records necessary for my analysis were prepared and maintained by an individual who is no longer employed by the Debtors, making location, identification, and analysis of those records difficult.

**Summary of Findings and Observations**

6.      This report is preliminary as many questions remain to be answered and additional analysis is needed to complete the analysis on a number of issues.  I will await the

Court's instruction as to the scope of additional analysis to be undertaken in this matter. The following summary of findings and observations is based on my analysis to date.

a. My examination revealed a number of significant and questionable transactions that were either not reported in the Debtors' MORs, or were reported in such a way that the transactions could not be identified, and numerous technical reporting deficiencies in the MORs. It is my opinion the MORs of the Debtors do not reliably report the transactions of the Debtors.

b. Non-DIP bank accounts were opened after the date of filing of the Debtors' bankruptcy petitions and were used to facilitate the deposit and disbursement of funds from specific transactions, such as the settlement of claims with BP, or for specific purposes, such as the use of PEX cards. Transactions within these non-DIP accounts were not always reported in the Debtors MORs and transactions between these non-DIP accounts and DIP accounts were recorded is such a way that the true nature of the transactions were disguised.

c. Funds received by TAG in settlement of the BP claim in the amount of $67,511 were placed in a non-DIP bank account. Funds were subsequently disbursed from the non-DIP account and not maintained in the bankruptcy estate. Although Louie F. Wise III ("Mr. Wise"), the owner of the Debtors, claims to have returned the funds to the bankruptcy estate, questions remain about the source of the returned funds and the timing of the return of funds. Neither the original receipt of the funds nor the

subsequent disbursement of those funds were reported in Facility's or CCMS's MORs.

d.   Native Hubzone Solutions, LLC ("Native") received funds for procurement services from a project involving the University of Florida, as owner, and Skanska USA Building, Inc., as Contractor, and CCMS, as Subcontractor.  Based on the circumstances of this project, the Debtors may have a claim against Native and/or Debtor insiders for funds disbursed to the insiders as a result of this project.

## Analysis

Following are descriptions of the analysis performed with respect to each of the issues identified for examination. ·

### Disposition of Funds from Settlement of Claim

7.      TAG received, under the terms of a confidential settlement, the sum of $67,511 by check dated December 14, 2016.  These funds were deposited to a bank account in TAG's name at CenterState Bank in Ocala, FL on December 19, 2016.  The bank account, with an account number of xxxx9204 ("TAG CS x9204"), was opened on that same date.  The account agreement was signed by Mr. Wise on behalf of TAG, with Ralph Pressley and Louie F. Wise III named as authorized signers on the account.  The account was open from December 19, 2016 to January 27, 2017.  No other deposits were noted to this account during the time it was open.

8.      The $67,511 deposit was not accounted for in TAG's accounting records.  In fact, TAG's General Ledger does not even have an account for recording transactions in TAG CS x9204.

9.    Similarly, the $67,511 receipt of funds was not reported on TAG's MOR for December 2016. In fact, TAG's MOR for December 2016 reported cash receipts of $13,625 in total, all of which came from and were reported as collections on accounts receivable.

10.    The settlement funds deposited to the account were disbursed from the account as follows:

a.  $30,000 disbursed by unnumbered check payable to cash on December 30, 2016. This check was signed and endorsed by Mr. Pressley's signature, with a memo notation reading "Operating Funds". The endorsement provided no indication as to the destination of the funds.

b.  $35,000 disbursed by check number 0092 payable to cash on January 12, 2017. This check was also signed and endorsed by Mr. Pressley's signature, with a memo notation reading "Operating Funds". The endorsement provided no indication as to the destination of the funds.

c.  After deduction of a $25.00 early closing fee, the remaining $2,486.00 of funds in the account were withdrawn from the account by Mr. Wise on January 27, 2017. The destination of these funds was not indicated on the withdrawal records.

11.    As with the deposit, the $30,000 and $35,000 disbursements do not appear in TAG's General Ledger accounts.

12.    Likewise, the $30,000 and $35,000 disbursements do not appear in TAG's MORs for December 2016 or January 2017. In fact, total reported disbursements for December 2016 and January 2017 were $13,222.93 and $3,152.79, respectively, according to the MORs.

13.     As with the $30,000 and $35,000 disbursements, the $2,486 disbursement to close the account was not recorded in TAG's General Ledger accounts or on its MOR. Further, no deposit of these funds was noted in any other TAG bank account, or any bank account of CCMS, Base 3, or Facility, at or around the time of the withdrawal of the funds.

14.     Mr. Wise asserted that Mr. Pressley received $10,000 of the funds disbursed from the account and that he received the remaining funds. Mr. Wise further asserted that these funds were redeposited into Debtor accounts, with $18,000 going to TAG and the remainder to CCMS.

15.     In support of this assertion, Mr. Wise produced records for the following transactions:

> a.  Deposit records for two deposits of $9,000 each made into TAG's bank account at Wells Fargo with account number ending in xxxxxx7595 ("TAG WF x7595") on March 31, 2017.
>
> b.  Deposit records for a $45,000 deposit into Facility Performance's bank account at Wells Fargo with account number ending in xxxxxx8122 ("FP WF X8122") on May 15, 2017.

16.     Deposit records for the two $9,000 deposits indicate that they were made in cash. In TAG's General Ledger, these deposits were recorded as increases to the cash account, with an offsetting increase of $18,000 in a liability account titled "Due to Member", as if they were a loan from Mr. Wise. On the MOR submitted for March 2017, the funds were reported as being collections on accounts receivable. An analysis of TAG's accounting records indicates that there were no accounts receivable transactions to which these deposits could have been applied. There were no charges to accounts receivable during the month of March

2017,and the balances of accounts receivable from February were only reduced by $1,950 between the end of February 2017 and the end of March 2017, and these reductions were the result of other confirmed deposits of $1,950[1].

17.    The deposit record for the $45,000 deposit on May 15, 2017 indicates that the deposit was made by wire transfer and that the remitter of the wire was G3 Gator Equity LLC ("G3").

18.    I searched the Florida Secretary of State website[2] and the internet and found that G3 is a Florida limited liability company formed on March 20, 2017. The registered agent of G3 is identified on its Articles of Organization as Gina E Sierra ("Sierra"), and the address of G3 is listed as 2103 W Virginia Avenue, Tampa, FL 33603. The address of Sierra as registered agent is reported as 2103 W Virginia Avenue, Ocala, FL 33603[3]. A search of the Hillsborough County Property Appraiser's website indicated a personal residence address for Sierra of 2103 W Virginia Avenue, Tampa, 33607. An internet search of "Gina E. Sierra of Tampa" identified a possible association with a construction company named Paul J. Sierra Construction, Inc. ("Sierra Construction"), which has an address of 912 W Dr. Martin Luther King Jr Blvd, Tampa FL 33603. Florida Department of Business and Professional Regulations ("DBPR") records identify Sierra as a Certified General Contractor with Sierra Construction and confirm the same addresses as noted above for both Sierra and Sierra Construction.

---

[1] Consisting of deposits totaling $1,700 into the Wells Fargo checking account xxxxxx7595 and $250 into the Wells Fargo payroll account xxxxxx7926, both DIP accounts.
[2] Accessed online via http://sunbiz.org.
[3] The zip code 33603 is a Tampa zip code and there is no such address in Ocala. The reference to Ocala in the address of the registered agent appears to be a scrivener's error.

19.     When asked why the $45,000 wire of funds would be coming to CCMS from G3 and who Sierra was, Mr. Wise replied that G3 was a place that he parked the money and that Sierra was just someone he knew from college.

20.     In Facility's General Ledger accounts, the $45,000 deposit was recorded as having been received from a client identified as "SIG100", which I found to be Signature Brands. I noted that the balance of accounts receivable from Signature Brands, as reported in Facility Performance's MORs was reduced from $101,004.90 at April 30, 2017 to $56,004.90 at May 31, 2017, a reduction of $45,000. Accounting and management personnel could not, or would not, explain why the funds were deposited into a Facility account instead of to a TAG account and why the wire from G3 was credited to the accounts receivable balance of Signature Brands.

21.     The balance of accounts receivable of TAG as of April 30, 2017 and as of May 31, 2017 was only $24,110 and $25,160, respectively. A collection of $45,000 into TAG could not, therefore, be applied against accounts receivable accounts without causing those accounts to go negative, which likely would not go unnoticed. The alternative would be to report the receipt under "other cash receipts", which would require separate identification in the MOR. This suggests the possibility that the funds were deposited to a Facility account as there were sufficient accounts receivable in Facility to be able to apply the receipt against a receivable account and report it as collections on receivables, in which case it might go unnoticed.

22.     If in fact the deposits described above do represent a return of the settlement funds to the bankruptcy estate, the returned amount is still short of the amount of settlement

funds received by $4,486 (i.e. $67,511 less $25 service charge, less $63,000 of settlement funds claimed by Mr. Wise to have been returned to the bankruptcy estate).

23.    To see if the Debtors had any other transactions involving G3 or Sierra, I searched the General Ledgers of the Debtors for the period from May 2015 through November 2017, with the following results:

a.  I found no other transactions with G3.

b.  I found a single transaction involving Sierra; a payment of $3,231.86 by Facility by check number 1488 dated November 29, 2016. This transaction was charged to "Travel Expenses" in the General Ledger accounts. The purpose of this transaction is still to be determined.

c.  I noted a single payment from Facility to an individual named Christopher M. Sierra by check number 1699 dated May 10, 2017. The relationship of Christopher M. Sierra to Sierra and the purpose of this payment are not yet determined.

d.  I noted a series of four payments from Facility to an individual named Brandon Sierra between September 2017 and October 2017, with the transactions ranging from $136.00 to $607.99 and totaling $1,733.99. The payments were charged to Cost of Goods Sold – Subcontract in the General Ledger accounts. The relationship of Brandon Sierra to Sierra and the purpose of these payments are not yet determined.

24.    The narrative presented above is based on information gathered and analysis made to the date of this report. There is likely more to this series of transactions than is presented in the narrative above, and questions remain unanswered, such as why it took two to

four months from the date of disbursement of the funds and the closing of the account to the return of the funds and where the funds went in the interim between the date of the disbursements from the CenterState bank account and the dates that the funds were returned to Debtor accounts, if in fact they represented the same funds. Notwithstanding this, as the signer of documents creating the bank account and of the withdrawal ticket initiating the closing of the account, Mr. Wise was certainly aware of the bank account's existence, knew or should have known of the activity in the account, and knew or should have known that the account was not an approved DIP account. Further, Mr. Wise knew or should have known that Facility Performance had an approved DIP account through which all cash receipts and disbursements of the entity were to be transacted, making opening of the account unnecessary to the deposit of the settlement funds.

25. The anomalies in the sequence of events and the accounting for the transactions described above indicate either a lack of care or failure to follow adequate procedures in the accounting and reporting process or an attempt to divert the funds and hide or disguise the transactions as something they were not.

26. I will defer to the Court for direction as to the scope of any additional analysis it wishes me to perform regarding this subject.

**Use of Non-DIP Bank Accounts**

27. The Debtors maintain their DIP bank accounts at Wells Fargo Bank. During the course of my examination, I identified additional non-DIP accounts that were used by the Debtors at one time or another during the period from May 2015 through November 2017, as follows:

       a.   CenterState Bank account xxxx9204 of TAG ("TAG CS x9204")

b. CenterState Bank account xxxx4140 of Facility Performance ("FP CS x4140")

c. CenterState Bank account xxxx9014 of CCMS ("CCMS CS x9014")

d. CenterState Bank account xxxx4132 of CCMS ("CCMS CS x4132")

e. Heritage Bank of the South/Renasant Bank account xxxxx6716 of Facility Performance

28. Another bank account at CenterState Bank was identified that was opened under the name of Native Hubzone Solutions, LLC ("Native"). I noted significant transactions between this account and the Debtors.

29. For purposes of this report, all bank accounts will be identified by reference to the owning entity of the account (e.g. TAG = The Alexander Group), the bank the account is held in (e.g. CS = CenterState and WF = Wells Fargo), and the last four digits of the account number. The activity in each of the accounts identified above is described in detail below.

**CenterState Bank account xxxx9204 of TAG:**

30. TAG CS x9204 is the account described above in the section entitled Disposition of Funds from Settlement of BP Claim. The Debtors' use of and the transactions through that account are fully described in that section.

**CenterState Bank account xxxx4140 of Facility Performance:**

31. FP CS x4140 was opened on July 9, 2015 by deposit of $25 from an unknown source. In Facility's General Ledger, the deposit was recorded as a reduction of accounts receivable from CCMS.

32. On August 8, 2015, $25 was transferred from this account to open another account at CenterState Bank, with account number xxxx4181 in the name of Native ("NH CS

x4181"). In Facility's General Ledger, the transfer of funds was recorded as Miscellaneous Expense. The activity in NH CS x4181 is described in a later section of this report.

33.    CS x4140 was open from July 7, 2015 to September 7, 2016, encompassing periods before and after November 16, 2015, the date of filing of Facility's bankruptcy petition. Very little activity occurred in the account after December 31, 2015.

34.    The following tables summarize the receipts and disbursements in FP CS x4140 during the pre-petition and post-petition periods that the account was open:

| | Pre-petition | | |
| | Deposits | Disbursements | Net |
|---|---|---|---|
| Native Hub Zone CS x4181 | $           - | $        (25.00) | $        (25.00) |
| CCMS WF x7603 | 224,764.00 | - | 224,764.00 |
| CCMS WF x7918 | - | (20,091.71) | (20,091.71) |
| FP Renasant x6716 | 32,000.00 | - | 32,000.00 |
| Base 3 | - | (43,423.98) | (43,423.98) |
| Louie F. Wise III | - | (5,000.00) | (5,000.00) |
| Roberts Property Holdings | - | (45,010.00) | (45,010.00) |
| Richard Perry | - | (30,000.00) | (30,000.00) |
| Other | 116,616.82 | (211,144.63) | (94,527.81) |
| TOTAL | $  373,380.82 | $ (354,695.32) | $    18,685.50 |

| | Post-petition | | |
| | Deposits | Disbursements | Net |
|---|---|---|---|
| CCMS WF x7603 | $ 66,588.00 | $ (156,530.31) | $ (89,942.31) |
| CCMS WF x7918 | - | (84,762.13) | (84,762.13) |
| FP WF x8122 | - | (7,400.00) | (7,400.00) |
| Louie F. Wise III | 58,653.60 | (63,153.60) | (4,500.00) |
| Roberts Property Holdings | - | (21,725.00) | (21,725.00) |
| Other | 272,251.95 | (82,608.01) | 189,643.94 |
| TOTAL | $ 397,493.55 | $ (416,179.05) | $ (18,685.50) |

35.     The pre-petition deposits into the account from CCMS WF x7603 included payments of management fees in August, September and October 2015 in the amounts of $63,588, $68,288, and $78,588 and totaling $210,464. According to the bankruptcy Court's various orders on use of cash collateral, management fees were originally allowed at a budgeted monthly amount of $56,383, plus an amount not to exceed 10% of the budgeted line item. This amount was exclusive of a rent allowance of $18,000 per month. The allowance was subsequently raised to $78,590 inclusive of rent.

36.     The remainder of the pre-petition deposits into the account from CCMS WF x7603 consisted of a payment of $2,300 in September 2015 and a payment of $12,000 in November 2015. Each of these payments was included in management fees. In November, 2015, an additional payment of $66,588 was noted from CCMS WF x7603, to a different Facility account, for a total payment for the month of $78,588, consistent with the budgeted and allowed amount.

37.    Other pre-petition deposits came largely from Facility's primary customer, Pilot Flying J.

38.    Pre-petition disbursements from the account included the following:

    a.    Payments to CCMS and Base 3 for contract services.

    b.    A single disbursement of $5,000 to Mr. Wise on October 9, 2015 by check number 1074. This payment was recorded by Facility as a Member's Equity disbursement.

    c.    Payments in August to October, in varying amounts, to Roberts Property Holdings ("Roberts"), for rent. The rental payments to Roberts did not correspond with the amounts being paid to Facility from CCMS for management fees during those same months.

    d.    A single payment of $30,000 to Richard Perry on November 12, 2015 for legal services.

    e.    Payments to vendors and employees.

39.    Post-petition receipts into the account included a deposit by wire transfer on November 24, 2015 of $58,638.60, after a $15 wire fee. This wire was received from a remitter by the name of "Home and Note Document". Mr. Wise indicated that this was a personal loan he made to Facility, and I noted that the transaction was recorded as such in Facility's General Ledger. I also noted that the receipts were reported as a loan from Mr. Wise on Facility's MOR for November 2015.

40.    As with the pre-petition period, other post-petition deposits came largely from Facility's primary customer, Pilot Flying J.

41.    Post-petition disbursements from the account included:

    a. Payments to CCMS for contract services.

    b. A disbursement of $58,653.60 to Mr. Wise to repay the loan he made to the company in the previous month.

    c. A single disbursement of $4,500 to Mr. Wise on December 2, 2015 by check number 1652. This payment was recorded by Facility as Administration Payroll Expense. I noted other payments to Mr. Wise in the Administration Payroll Expense account. Additional analysis is required to determine whether Mr. Wise was paid in excess of amounts allowed by the bankruptcy Court's orders.

    d. Payments of $18,000 in November 2015 and $3,725 in December 2015 to Roberts for rent. Facility's MOR for December 2015 reports an accounts payable balance to Roberts of $18,000, suggesting that Roberts was not paid for December. Additional analysis is required to determine whether Roberts was paid in excess of amounts allowed by the bankruptcy Court's orders.

42. The November and December 2015 MORs of Facility include the activity from FP CS x4140.

**CenterState Bank account xxxx4181 of Native Hubzone Solutions:**

43. Native Hubzone Solutions, LLC ("Native") was formed in 2012, and through Kendall Holdings, LLC ("Kendall") is ultimately owned by Mr. Wise. According to Mr. Wise, Native was formed to take advantage of opportunities that might be available under the federal government's historically underutilized business ("HUB") zones program; however, prior to August 2015, Native had no business operations.

44.     On or about April 29, 2015, CCMS was engaged by Skanska USA Building Inc. ("Skanska") as a subcontractor on a project Skanska had with the University of Florida ("UF") that was commonly referred to as the UF 323A Chemistry/Chemical Biology Building (the "Project"). See attached Exhibit A.

45.     According to Mr. Wise, Native became involved in the Project as a procurement entity, buying materials and supplying them to UF for use in the construction project. On or about July 6, 2015, email communications from Kevin Barry, an Operations Manager with CCMS, to representatives of Commercial Ductwork Systems, LLC ("CDS") indicated that a Purchase Order would be sent to them and that a Letter of Intent was attached as authorization to proceed with fabrication. A Letter of Intent was issued on Native letterhead and under Mr. Wise's signature for "the fabrication and delivery of round and rectangular ductwork…" for the Project. The Letter of Intent indicated that a Purchase Order in the amount of $653,702 would be issued. On July 22, 2015, a Purchase Order was issued from Native to CDS in the amount of $653,702.

46.     A complaint filed by CDS (the "CDS Complaint") against Native and Mr. Wise in Hillsborough County Circuit Court (Case No. 2016 CA 009961) (the "CDS Case") for nonpayment of amounts due provided exhibits evidencing the transaction between the parties, including the email communication, the Letter of Intent, and the Purchase Order discussed above. The exhibits to the CDS Complaint also included additional documents regarding the transaction, including:

        a.  a Waiver and Release of Lien indicating that Native had been paid
            $706,600 for labor, service or materials furnished to Skanska for the
            Project;

    b.  A Statement of account indicating that CDS was owed $285,777.76 from
Native on unpaid invoices,

    c.  A Sworn Statement of Account indicating a total value provided on the
Project of $645,117.75.

47.    The documents referenced above as exhibits to the CDS Complaint are attached
to this report as composite Exhibit B.

48.    The CDS Case was ultimately concluded on October 4, 2017 with entry of a
Final Judgment by Consent in which Native and Wise were directed, jointly and severally, to
pay CDS the amount of $285,777.76, plus interest and attorney's fees.  See Exhibit C.

49.    The documents referenced above suggest an expectation of profit from the
procurement transaction of approximately $61,483 (i.e. $706,600 less $645,117), before other
expenses, if any.

50.    I found that the receipts from UF and the disbursements to CDS related to the
Project were deposited into and disbursed from a bank account at CenterState Bank.

51.    The Account Agreement for NH CS x4181, dated August 5, 2015, was signed
by Mr. Wise as authorized representative of Native.  Mr. Wise was identified as the authorized
signer on the account.

52.    As stated above, $25 was transferred from FP CS x4140 on August 7, 2015 to
open NH CS x4181.

53.    NH CS x4181 was open from August 5, 2015 to November 16, 2016, when the
account was closed by transfer of funds to CCMS CS x9014, another account at CenterState
Bank.  The activity in CCMS CS x9014 is described in a later section of this report.

54.    The following tables summarize the receipts and disbursements in NH CS x4181 during the period that the account was open:

|  | Deposits | Disbursements | Net |
|---|---|---|---|
| Facility Performance CS x4140 | $ 25.00 | $ - | $ 25.00 |
| University of Florida | 706,700.00 | - | 706,700.00 |
| Commercial Ductwork Systems | | (359,340.00) | (359,340.00) |
| VetCon Services | 194,508.90 | - | 194,508.90 |
| CCMS WF x9014 | - | (104,287.94) | (104,287.94) |
| CCMS WF x7603 | 145,936.40 | (245,936.40) | (100,000.00) |
| Facility Performance WF x8122 | - | (225,000.00) | (225,000.00) |
| Louie F. Wise III | - | (68,200.00) | (68,200.00) |
| Ralph Pressley | - | (15,000.00) | (15,000.00) |
| Richard Perry | - | (3,000.00) | (3,000.00) |
| Other | - | (26,405.96) | (26,405.96) |
| TOTAL | $ 1,047,170.30 | $(1,047,170.30) | $ - |

55.    The $706,700 amount received into NH CS x4181 from UF is consistent with the amount acknowledged on the Waiver and Release of Lien as having been received by Native[4].

56.    The $359,340 disbursed to CDS is consistent with documents provided as exhibits to the CDS Complaint. Those documents indicate $645,117.75 of value provided and claim $285,777.76 was unpaid. This would suggest that CDS received $359,339.99[5] (i.e. $645,177.75 less $285,777.76).

---

[4] Minor difference noted, but not examined.
[5] Minor difference noted, but not examined.

57.     The $194,508.90 from VetCon Services was received into NH CS x4181 on
June 15, 2016, by deposit of check number 2047 from VetCon Services, LLC to Native. See
Exhibit D. An entry in the memo field of the check indicated "Signature Brands". Native had
no other business activity with Signature Brands; however, I determined that Signature Brands
was a customer of Facility at or around the time of this deposit. The reason for payment of the
check to Native and deposit to Native's bank account is still under investigation.
Approximately three weeks prior to this deposit, Native wired $225,000 from NH CS x4181 to
Facility's Operating DIP account FP WF x8122. See Exhibit E. This transfer was recorded in
Facility's General Ledger as a collection on receivables from Signature Brands. At that point,
no amount had been received into Native related to Signature Brands. Prior to this transfer,
NH CS x4181 had a balance of approximately $239,000. Meanwhile, FP WF x8122 had a
balance of only $10,000. On the same date that the funds were wired from NH CS x4181 to
FP WF x8122, FP WF x8122 disbursed funds for payroll and insurance and transferred funds
to CCMS totaling approximately $170,000. This suggests that the transfer of funds was
merely made to move funds from an account that had funds to an account that needed funds,
without regard to the fact that different entities were involved. The accounting for the wire
transaction by Facility as collection of accounts receivable from Signature Brands suggests an
attempt to disguise the true nature of the transaction as a transfer of funds from Native. Any
other connection between this transfer of funds and the earlier deposit, if any, is still under
investigation.

58.     The $104,287.94 disbursement to CCMS CS x9014 was made via transfer of
funds on November 16, 2016 and used as the opening deposit for CCMS CS x9014. The
activity in CCMS CS x9014 is discussed in a later section of this report.

59.    . The net amount transferred to CCMS WF x7603 consisted of the following:

   a.    Disbursement from Native to CCMS on February 3, 2016 by check .
         number 1010 in the amount of $105,936.40. Funds of this same amount
         were subsequently returned to Native by CCMS when CCMS wrote check
         number 10967, dated February 24, 2016, to Native. Check 10967 was not
         deposited by Native until April 24, 2016. CCMS recorded the transactions
         above through a series of journal entries and accounts payable transactions
         involving cash, accounts payable, and cost of goods sold accounts. with
         the overall effect being no change to any of the affected accounts.
         However, CCMS records indicate that on February 24, 2016, check
         number 10858 was written payable to CDS and check number 10967 was
         written payable to Native. Each of these checks was written in the amount
         of $105,936.40. CCMS accounting records indicate that check number
         10858 was ultimately voided by a journal entry on April 25, 2016, the
         same date that check number 10967 was deposited by Native. Further,
         while check number 10858 was listed on the cash disbursements listing on
         CCMS's MOR for February 2016, check number 10967 was not. Nor was
         check number 10967 listed on CCMS's MOR for March 2016 or for April
         2016, when check numbers around the same number, such as 10966 and
         10968, were reported. This suggests an attempt to hide the disbursement
         of funds to Native from view. Excerpts of the bank statement showing the
         deposit of funds and the check register listings from the MORs for
         February 2016 through April 2016 are attached as composite Exhibit F.

b. Disbursement from Native to CCMS of $40,000 on July 22, 2016 by check numbers 1017 and 1018 in the amount of $25,000 and $15,000, respectively.  Funds of this same amount were subsequently returned to Native by CCMS when CCMS wrote check number 11177, dated July 26, 2016, to Native.  Check 11177 was not deposited by Native until September 7, 2016.  Memo notations on the Native checks indicate the purpose of the checks to be for temporary loans.  These checks were deposited into CCMS WF x7603 on July 22, 2016.  The accounting for these checks by CCMS is not clear.  There is no deposit recorded in CCMS General Ledger in this amount on July 22, 2016.  On July 26, 2016, there is a journal entry recorded in the CCMS General Ledger with the description "Wrong GL".  In this journal entry, cash is increased by $59,435.89, with offsetting increases to the Commercial Construction revenue account of $40,000 and various other accounts of $19,435.89.  On that same date, two journal entries are recorded involving Accounts Receivable accounts and the Commercial Construction revenue account. The first entry recorded increases of $25,000 and $15,000 on invoices from an account identified as "CLI100", which is the customer code for CCMS.  The second entry recorded decreases of $25,000 and $15,000, with the same customer code, "CLI100", and with reference to "Check 1017" and "Check 1018", respectively.  These check numbers are the numbers of the checks written by Native to CCMS and deposited on July 22, 2016.  On the same date that these journal entries were recorded,

CCMS recorded entries to record the disbursement by check number 11177 and check number 11178 of $40,000 back to Native. These checks were recorded as a decrease to cash and a decrease to the Commercial Construction revenue account. As with the deposit transaction above, disbursements of funds do not typically impact revenue accounts.

c. Disbursements from Native to CCMS of $50,000 on September 21, 2016 by check numbers 1019 and $50,000 on November 15, 2016 by check number 1022 in the amount of $50,000. In the case of each of these disbursements, the checks were converted to cashier's checks prior to deposit by CCMS into CCMS WF x7603. Both of these deposits were recorded in CCMS's General Ledger with offsetting decreases to Cost of Goods Sold. This is not typical recording for deposit transactions, unless the receipt of funds was for a legitimate reimbursement of expenses. I have seen no evidence to date in the records to indicate that this is the case for these deposits. Further, if CCMS had paid for materials or services with expectation of reimbursement of those costs from someone else, proper accounting for the transactions would have been to record the transactions as a loan, in which case the receipt of funds would have been recorded as repayment of the loaned amount. Nothing in the record indicates that the transfers were considered to be a loan. This suggests the possibility that the accounting for the transactions was made to disguise the true nature of the transactions.

60.    The disbursements to Mr. Wise and Mr. Pressley result from a series of checks, in varying amounts, written to Mr. Wise and Mr. Pressley[6] between November 13, 2015 and May 20, 2016. With exception of the first checks, written on November 13, 2015, Mr. Wise and Mr. Pressley each received the same amount on or around the same date. See composite Exhibit G for copies of checks disbursing funds to Mr. Wise and Mr. Pressley.

61.    Other disbursements are primarily for computer software charges.

62.    The overall flow of cash through the bank account indicates that the amounts that were due to CDS and expected profits from the transaction were used to pay computer software charges, were transferred to Debtor entities, and were disbursed to Mr. Wise and Mr. Pressley.

63.    Native shares the same physical address as the Debtors. However, Native made no payments for rent, or for employees, or, with the exception of the computer service charges, for overhead costs. This suggests that Native provided no benefit to this transaction that couldn't have been provided by CCMS, as the subcontractor to Skanska on the Project.

64.    Notwithstanding the judgment against Native and Wise from the CDS Case, if the Court determines that the activity in NH CS x4181 was improperly diverted from the Debtors to Native, the bankruptcy estate may have claims against Mr. Wise and Mr. Pressley, or Marathon Equity, LLC, for amounts they received.

**CenterState Bank account xxxx9014 of CCMS:**

65.    CCMS CS x9014 was opened on November 16, 2016 by deposit of $104,287.94 via transfer of funds from FP CS x4181. This deposit is not recorded in CCMS's General

---

[6] Three checks were made payable to Marathon Equity, LLC, a company owned by Mr. Pressley. These disbursements were considered to have been made to Mr. Pressley.

Ledger. In fact, CCMS General Ledger does not contain an account in which any of the transactions of CCMS CS x9014 were recorded.

66.    CCMS CS x9014 was open from November 26, 2016 to June 2, 2017; however, by March 13, 2017, the account balance had been largely liquidated.

67.    A disbursement of $50,000 was made from CCMS CS x9014 on November 23, 2016 by check number 0091 made payable to CCMS. The disposition of the funds is not evident from the endorsement on the check. According to CCMS accounting personnel, the funds were deposited into a CCMS DIP account. Deposit records show a deposit of $50,000 to CCMS WF x7918 on November 23, 2016, through deposit of a Cashier's Check drawn on CenterState Bank. The Cashier's Check was made payable to CCMS and identified the remitter as CCMS. In CCMS's General Ledger, a series of transactions were recorded on November 23, 2016 in the amount of $50,000 each to the accounts used to record the activity of CCMS WF x7603 and CCMS WF x7918. The recorded transactions included a deposit to CCMS WF x7603, a disbursement by check number 11443 payable to CCMS, and a transfer of funds from CCMS WF x7603 to CCMS WF x7918. Check number 11443 was not listed in the check register listing included as Attachment MOR-8 to CCMS's November MOR. By a subsequent transaction, recorded December 29, 2016, check number 11443 was voided. The net effect of the above series of transactions was to record an increase to the CCMS WF x7918 account and an increase to accounts payable. It is not clear from the accounting records whose payable account was increased by this series of transactions or how the accounts payable account may have been subsequently reconciled. The Accounts Payable listing including in CCMS's December MOR does not provide any indication that a $50,000 "payable" to CCMS exists.

68.    A disbursement of $54,000 was made from CCMS CS x9014 on March 10, 2017 by check number 0092 made payable to CCMS. The endorsement on the check indicated that the funds were to be deposited into CCMS WF x7603. Bank records confirm that $54,000 was deposited into CCMS WF x7603 on March 10, 2017. In CCMS's General Ledger, a deposit of $54,000 was recorded on March 16, 2017, with an offsetting credit to Cost of Goods Sold – Material. No offsetting journal entries or transactions were noted in the CCMS General Ledger to adjust this credit to Cost of Goods Sold. As with other transactions noted above, a deposit transaction does not typically result in a credit to an expense account, such as Cost of Goods Sold.

69.    Other than the transactions described above and the closing transaction described below, the only other activity in this account was bank charges totaling $27.90.

70.    CCMS CS x9014 was closed on June 2, 2017 by transfer of funds to CCMS CS x4132. The activity in CCMS CS x4132 is described below.

**CenterState Bank account xxxx4132 of CCMS:**

71.    Mr. Wise opened a bank account in the name of CCMS at CenterState Bank, with account number xxxx4132 ("CCMS CS x4132"), on June 8, 2015.

72.    According to Debtor management, this account was established to facilitate the use of prepaid purchasing cards ("PEX cards"). The activity in this account is described in a later section of this report labeled "Use of PEX Cards".

**Heritage Bank of the South/Renasant Bank account xxxxx6716 of Facility Performance:**

73.    FP RB x6716 was in existence prior to the bankruptcy petition. The account was largely inactive after December 31, 2015, but remained open until February 11, 2016,

when the account was closed by a withdrawal of the final $1,739.72 in the account by Mr.
Wise.  These funds were deposited into FP WF x8122.

74.    Facility's November and December 2015 MORs disclosed FP RB x6716,
included a register of disbursements from the account, and appears to have reported the
activity in the account.

75.    No further investigation of this account was made.

**Diversion of Business to Non-Debtor Entities**

76.    To address concerns about the possibility of business of the Debtors being
diverted to other entities, I searched public records and the internet to identify entities with
same or similar officers or registered agents as the Debtors or entities having the same physical
or mailing address as the Debtors.  I also talked with representatives of the US Trustee's office
and other interested parties about related parties that might exist.  The following entities were
targeted for initial investigation:

      a.  Kendall Holdings, LLC ("Kendall")

      b.  Native Hubzone Solutions, LLC ("Native")

      c.  Roberts Property & Holdings, LLC ("Roberts")

      d.  Proxy Venture, LLC ("Proxy")

      e.  Intec Facility Solutions, LLC ("Intec Facility Solutions")

      f.  Ocala Metal Specialties, LLC ("Ocala Metal")

77.    Kendall was formed in 2011 as a Florida limited liability company.  Mr. Wise is
identified in Florida Secretary of State filings as the Managing Member of the entity.
According to Debtor management, Kendall is a holding company with interests in Native and
Roberts.

78.     Native was formed in 2012 as a Florida limited liability company. Kendall is identified in Florida Secretary of State filings as the Managing Member of the entity. The company is described and the activity in at least one of its bank accounts is analyzed earlier in this report in the section titled "CenterState Bank account xxxx4181 of Native Hubzone Solutions".

79.     Roberts was formed in 2011 as a Florida limited liability company. Kendall is identified in Florida Secretary of State filings as the Managing Member of the entity. Roberts owns the land and building occupying the physical address[7] of the Debtors and other non-Debtor entities. When asked to provide the leases between Roberts and the entities using the properties, Debtor management indicated that no such leases exist.

80.     Proxy was formed in 2009 as a Florida limited liability company. Mr. Wise is identified in Florida Secretary of State filings as the Managing Member of the entity. According to Debtor management, Proxy is a holding company with an interest in Intec Facility Solutions.

81.     Intec Facility Solutions was formed in 2009 as a Florida limited liability company. Proxy is identified in Florida Secretary of State filings as the Managing Member of the entity.

82.     Ocala Metal was formed on May 11, 2017 as a Florida limited liability company. The address of Ocala Metal is reported as being the same as the Debtors. Larry A. Booth, Jr., the Debtors' CFO, is identified as the Registered Agent of this entity.

83.     To identify what involvement these related entities might have with the Debtors, other than common ownership or address, I searched the Debtors' General Ledgers

---

[7] 2695 NW 4th Street, Ocala FL 34475.

for indications of activity with these entities or of transfers of funds to or from these entities by the Debtors. I noted that, with the exception of rent payments to Roberts and the transactions with Native that are described earlier in this report, no significant or recurring transactions were identified with any of the related entities.

84.     Customer checks included in the deposit records for FP CS x4140 identify the payee by a number of names, including Facility Performance, Facility Performance dba Intec Facilities Solutions, Intec, and InTec Facilities Solutions. The Villages Operating Company, one of the larger customers of Facility, identifies the payee on its checks as InTec Facilities Solutions. Clearly, either the commonality of the names, the use of the same address, or the presentation by Facility to its customers creates confusion in the minds of the customers as to the name of the entity it is doing business with. This confusion creates opportunity for business activity or cash collections to be diverted away from Facility to a bank account opened under one of these similar names. As of the date of this report, I have no evidence to support that any diversion of funds has occurred. Additional investigation would be required to determine whether such diversion has occurred.

**Failure to Properly File Monthly Operating Reports**

85.     During the course of my examination, I reviewed Monthly Operating Reports ("MORs") to see whether specific transactions were or were not reported in the MOR. These transactions are discussed in other sections of this report. In addition, I reviewed selected MORs for compliance with reporting requirements.

86.     Debtor management advised me that workpapers supporting and reconciling to the reported balances in the MORs for periods prior to April 2017, during the tenure of the former CFO, could not be located, and that MORs for the period from April to present were

prepared following the same template as earlier reports. I spent a significant amount of time with Debtor management and independently attempting to reconcile between the financial records, primarily General Ledgers and bank statements, to the amounts reported in the monthly MORs, with limited success.

87.    I noted numerous and consistent deficiencies in the filing of the MORs, including:

a.    Balance Sheets and Income (Profit & Loss) Statements were not attached to the MORs;

b.    Bank statements and reconciliations were not attached to the MORs for any accounts identified in the MOR;

c.    Bank accounts were found to exist under the name of various of the Debtors that were not disclosed in the MORs. Further, transactions within these bank accounts were not reported in the MORs. See our separate analysis of the Debtors' use of non-DIP accounts elsewhere in this report.

d.    The schedules of Accounts Receivable and Accounts Payable do not contain all the elements or information required for reporting in the MORs. Specifically, the Accounts Receivable aging schedules are deficient in that they do not provide the receivable date or status of receivables greater than 90 days and the Accounts Payable aging schedules are deficient in that they only provide the name and balance of total payables and do not provide specifics as to aging and the description of the payable.

e.    Check Register listings attached to the MORs do not account for the sequence of checks. Checks within the sequence are missing with no

explanation. As noted in our analysis of disbursements from DIP accounts

to non-DIP accounts, certain checks missing from the sequence on the

Checks Register listings were identified as having been issued to move

funds from DIP accounts to non-DIP accounts[8].

    f.   Check register listings include references appearing to indicate that two

different sequences of checks were in use for the account. For example, for

the Check Register listing included as MOR-8 filed as part of DOC 415 and

included within Exhibit F of this report, references to check numbers

include numbers in the range of 10xxx and numbers in the range of 9xx.

Analysis of the bank statements and CCMS General Ledger indicate that

there is only one sequence of checks, in the 10xxx range, and that the

numbers in the 9xx range are merely reference numbers assigned to

transactions made other than by check.

88.    In addition to the deficiencies identified above, I identified significant

transactions, as described throughout this report, that were either not reported or disclosed in

the MORs or were reported in such a way that the true nature of the transaction was disguised.

89.    Given the deficiencies and other findings, it is my opinion that the MORs do

not provide a reliable reporting of the activity of the Debtors.

## Use of PEX Cards

90.    As noted above, Mr. Wise opened a bank account in the name of CCMS at

CenterState Bank, with account number xxxx4132 ("CCMS CS x4132"), on June 8, 2015,

approximately three weeks after CCMS filed for bankruptcy protection. The account was

---

[8] See check 10967 missing in the sequence of checks from MOR-8 filed as part of DOC 415 and included within Exhibit F to this report.

opened with a $10,000 deposit via a Cashier's Check drawn on BBVA Compass Bank. In the
CCMS General Ledger accounts, the bank account from which these funds were withdrawn is
identified as "BBVA Checking x2044", which appears from the transaction entries in the
account to have been an operating bank account of CCMS prior to bankruptcy. This BBVA
account was closed on July 8, 2015, by transfer of funds to CCMS WF xxxx7603.

91.     According to the signed Account Agreement, Mr. Wise was the only authorized
signor on CCMS CS x4132.

92.     I did not endeavor to examine each and every transaction in CCMS CS x4132.
I discussed the purpose, use, and accounting for the account with management and accounting
personnel. I also reviewed the General Ledger and the bank statements and supporting deposit
and disbursement records for the account in depth to verify the source of deposits and
disposition of funds in the account, noting the following:

      a. CCMS CS x4132 account was opened to facilitate use of prepaid expense
          ("PEX") cards. Mr. Wise indicated that Wells Fargo, the approved DIP
          bank, did not offer a PEX card program. He further asserted that, because
          the company could not use credit cards, without a PEX card program, he
          would not have been able to maintain employees or business.

      b. According to CCMS management and accounting personnel, cards were
          issued to employees who worked in the field, such as installers and service
          technicians. No cards were issued to management personnel. An office
          card was maintained for temporary use by new employees until such time
          as a permanent card could be issued to them.

c. Initially, deposits to the account were made by CCMS by writing checks from other CCMS accounts, such as CCMS WF x7603, made payable to CCMS and endorsing those checks to the CCMS CS x4132 account or cashing them and making a cash deposit. The disbursements were charged to a miscellaneous expense account and the deposits were credited to that same account, thus effecting an offset in the expense account and showing only the transfer of funds from one CCMS bank account to the other. When the cards were replenished, an account titled "Vehicle Gas" was charged in the General Ledger to record the disbursement of funds. CCMS CS x4132 account activity was not recorded in the MORs. Instead, the disbursement of funds into CCMS CS x4132 was reported as "Miscellaneous Expense" on the disbursement listing and as Vehicle Expenses on the Schedule of Receipts and Disbursements".

d. In or about October 2015, CCMS enrolled in an online gas card management program called InCard Access by Payzer. Under this program, CCMS managed the gas card activity online. Instead of going into the bank and withdrawing funds from CCMS CS x4132 and having the funds applied to individual gas cards, CCMS personnel could now transfer funds automatically between CCMS CS x4132 and a holding account maintained on deposit with Payzer (the "Payzer Gas Card Account"). CCMS personnel then could transfer funds from the Payzer Gas Card Account to the individual gas cards to replenish them, as well as transfer funds from one gas card to another or from a gas card back into

the Payzer Gas Card Account. Individual gas cards were replenished based on receipts turned in by the holders of those cards. Accounting for the transactions charged on the cards remained the same.

e.  Deposits into CCMS CS x4132 were also noted as coming from Facility and from third party sources.

f.  Disbursements from CCMS CS x4132 for replenishment of the PEX cards were generally made on or about the same time that deposits were made to the account and in similar amounts. Between June 2015 and September 2017, monthly deposits into CCMS CS x4132 ranged from $14,600 to $28,000 and averaged $19,656. Over that same time period, monthly disbursements from CCMS CS x4132 ranged from $15,000 to $28,043, and averaged $19,646. Due to the method CCMS followed in accounting for gas card activity, at any point in time reported expenses would have been overstated and assets understated by the amount of funds held in the Payzer Gas Card Account and the prepaid balance held on the individual gas cards. As of December 15, 2017, this amount was $6,558.13.

93.    The volume of activity through CCMS CS x4132 form Facility and from third party sources, and the impact on reported amounts in the MORs, is still being determined. However, it was determined that the account itself, and the activity within the account, was not disclosed in the MORs. As a result, creditors and other parties in interest were not afforded the opportunity to evaluate and question the activity in the account.

**Payment of Professional Fees**

94. To identify payments made by the Debtors for professional services, we reviewed the General Ledger accounts used by the Debtors to record professional fees, discussed the nature and purpose of services provided by identified professional service providers, and searched the Debtors' General Ledgers for additional transactions with those individuals or entities identified as professionals requiring court approval (e.g. attorneys) to provide services to a bankrupt entity.

95. I noted that professional fees were paid through CCMS, Facility, and Base 3.

96. For CCMS, significant or recurring payments were made to VetCon Services, for bonding, Janice Gregory, for consulting to the service department, and to Wendy Cooke, for recruiting. For Facility, significant and recurring payments were made to Joshua Barnes, for IT/Programming, Wendy Cooke, for recruiting, and Tom James Company, for uniforms. Based on recent invoices received, General Ledger entries, and discussion with Debtor management and accounting personnel, charges from and/or payments to the following attorneys were noted:

    a. Richard Perry, who has been authorized by the Court to represent the Debtors as their bankruptcy attorney;

    b. George Ortiz, Attorney at Law/CPA, who has been authorized by the Court to represent the Debtors regarding tax matters;

    c. Widerman Malek PL, who has been authorized by the Court to represent the Debtors regarding collection/construction claims issues.

    d. Rodger Friedline, who represents the Debtors in litigation with a vendor, Tregoning Industries. I have not been able as yet to obtain or locate an authorization by the Court for Mr. Friedline's services.

e.  Trow, Dobbins & Pisani, P.A., who represents the Debtors in matters related to its secured lender, Community Bank. I have not been able as yet to obtain or locate an authorization by the Court for the services of Trow, Dobbins & Pisani, P.A.

f.  Paul J Guifoil, Attorney at Law, who invoiced Mr. Wise and Facility for services related to issues involving Mr. Pressley. I have not been able as yet to obtain or locate an authorization by the Court for the services of Mr. Guifoil.

g.  Krizner Group, who invoiced Mr. Wise and Intec for services related to employment law and in particular related to the matter of The Alexander Group v. Feasterco, Thomas Files, Walter Clark, and Joseph Harding. I have not been able as yet to obtain or locate an authorization by the Court for the services of Krizner Group.

h.  Buchanan Ingersoll, who invoiced Facility for services related to Trust Fund Recovery Penalties. I have not been able as yet to obtain or locate an authorization by the Court for the services of Buchanan Ingersoll.

**Payments to Insiders and Related Parties**

97.     Significant transactions with Mr. Wise and with Mr. Pressley or Marathon Equity, LLC, are described and analyzed throughout this report. To identify other transactions with Mr. Wise, Mr. Pressley, and Marathon Equity, LLC, I performed a search of the Debtor General Ledgers. Under Facility's General Ledger, I noted bi-weekly payments of $1,923.08, representing allowed salary payments to Mr. Wise and Mr. Pressley. I identified a number of

other transactions with Mr. Wise and Mr. Pressley that have not as yet been summarized or analyzed.

## Summation

98.     This concludes my Preliminary Report as Examiner.  As noted above, this report is preliminary in that many questions remain unanswered and additional analysis is needed to complete the analysis on a number of issues.  I will await further instruction from the Court as to the scope of additional analysis to be undertaken in this matter.


WHEREFORE, I, as Examiner respectfully submit this EXAMINER'S PRELIMINARY REPORT on this the ___29th___ of December, 2017.


PAUL M. DUMM

Paul M. Dumm, CPA/ABV/CFF, CFE
Examiner

## EXHIBIT A

DocuSign Envelope ID: 6E090B92-AA5B-43B4-9EBF-68E48D0DEDD6

# SKANSKA

## Subcontract Agreement

THIS SUBCONTRACT (the "Subcontract") is made as of this 29th day of April, 2015 ("Effective Date") by and between the Contractor and Subcontractor as identified below. Capitalized terms used in this document entitled Subcontract Agreement and not defined herein shall have the meanings assigned to them in Exhibit E.

| | | | |
|---|---|---|---|
| PROJECT NAME:  UF-323A, CHEMISTRY / CHEMICAL BIOLOGY BUILDING | | PROJECT NUMBER: | 239012 |
| PROJECT ADDRESS: UNIVERSITY OF FLORIDA BUILDING 0275 GAINESVILLE, FL 32611 | | SUBCONTRACT NO.: | 239012-201-017 |
| | | VENDOR NO.: | 2772155 |
| | | COST CODE REFERENCE: | 201.15700000.5020 |

| | |
|---|---|
| CONTRACTOR:   Skanska USA Building Inc. | SUBCONTRACTOR:   Climate Control Mechanical Services, Inc. |
| HOME OFFICE ADDRESS:        4030 W. Boy Scout Blvd.        Suite 200        Tampa, Florida 33607 | ADDRESS:        2695 NW 4th Street        Ocala, FL  34475 |
| CONTACT:        DAVE ANDERSON | CONTACT:        ROB BOYER / LOUIE WISE III        EMAIL: RBOYER@CLIMATECONTROLFLORIDA.COM        SIGNOR: LW3@CLIMATECONTROLFLORIDA.COM |
| TELEPHONE:        813-480-6387 | TELEPHONE:        352-291-0185 |
| FACSIMILE:        866-392-7737 | FACSIMILE:        352-351-0219 |
| CONTRACTOR'S LICENSE NUMBER (IF REQUIRED): | SUBCONTRACTOR'S LICENSE NUMBER (IF REQUIRED): |

WHEREAS, Contractor has entered into a contract with **The University of Florida Board of Trustees**  (the "Owner") dated as of **August 14, 2014** (the "Owner Contract") to perform the construction and related work and services at the project commonly referred to as UF 323A Chemistry/Chemical Biology Building (the "Project"):

| | |
|---|---|
| OWNER:        UNIVERSITY OF FLORIDA BOARD OF TRUSTEES | ARCHITECT:        STANTEC |
| ADDRESS:        P.O. BOX 115050        GAINESVILLE, FL 32611-0050 | ADDRESS:        400 EAST MORGAN CENTER        101 EAST DIAMOND STREET        BUTLER, PA 16001 |
| | TELEPHONE:        727-431-1388 |
| | FACSIMILE:        N/A |

WHEREAS, Subcontractor desires to perform, and Contractor has agreed to enter into this Subcontract with Subcontractor for the performance of, a portion of the work required to complete the Project.

NOW THEREFORE, for and in consideration of the covenants and agreements of the parties contained herein, Contractor and Subcontractor agree as follows:

1.  Subcontractor agrees to perform and complete the work required by this Subcontract, which generally consists of the **HVAC Systems - Mechanical** (the "Work").

2.  As full consideration for complete performance of the Work, and except for increases or decreases by Change Order as provided for in Exhibit E, Subcontractor shall be paid the lump sum of Six Million, Four Hundred Ten Thousand, Seven Hundred Five Dollars and Zero Cents ($6,410,705.00) (the "Subcontract Amount").

DocuSign Envelope ID: 6E090B92-AA5B-43B4-9EBF-68E48D0DEDD6

3. Subcontractor □ is ☒ is not *(Mark the appropriate box with an "X")* required to provide performance and payment bonds securing the performance of the Work and the payment of Sub-subcontractors. Subcontractor ☒ is □ is not *(Mark the appropriate box with an "X")* required to enroll in Contractor's Subguard performance insurance program.

4. Subcontractor shall perform the Work in accordance with and comply with all requirements contained in the following Exhibits, each of which is included as an integral part of the Subcontract:

| | | MANDATORY SUBCONTRACT EXHIBITS | | | |
|---|---|---|---|---|---|
| ☒ | Exhibit A: | Scope of Work/Supply and Clarifications/Qualifications | ☒ | Exhibit G: | Skanska Standard Insurance Requirements |
| ☒ | Exhibit B: | Drawings and Sketches, Specifications, Addenda and Other Documents | ☒ | Exhibit H: | Skanska Standard Interim Estimate for Payment, Waiver and Release |
| ☒ | Exhibit C: | Alternates, Unit Prices and Labor Rates | □ | Exhibit I: | Skanska Standard Final Estimate for Payment, Unconditional Waiver and Release – *Not used in Florida* |
| ☒ | Exhibit D: | Project Schedule/Milestones | ☒ | Exhibit J: | Skanska Standard Subcontractor Environmental Health and Safety Requirements |
| ☒ | Exhibit E: | Skanska Standard Subcontract Terms and Conditions | ☒ | Exhibit K: | Skanska Standard Change Order |
| ☒ | Exhibit F: | Skanska Code of Conduct | ☒ | Exhibit N: | Supplemental Terms and Conditions for use in the State of Florida |

5. Subcontractor shall also perform the Work in accordance with and comply with all requirements contained in the Exhibits marked in the following list, each of which marked Exhibit is included as an integral part of the Subcontract *(Indicate which Exhibits apply by inserting an "X" in the box next to the Exhibit)*:

| | | OPTIONAL SUBCONTRACT EXHIBITS | | | |
|---|---|---|---|---|---|
| □ | Exhibit L: | Supplemental Terms and Conditions for Federal Government Projects | ☒ | Exhibit U: | Sub-subcontractor Identification |
| ☒ | Exhibit M: | Project Specific Requirements | □ | Exhibit V: | Guarantee to Owner |
| □ | Exhibit O: | Payment and Performance Bonds | □ | Exhibit W: | Owner Confidentiality and Non-Disclosure Requirements |
| | Exhibit P: | Reserved | ☒ | Exhibit X: | Site Logistics Plan |
| □ | Exhibit Q: | Skanska Standard Environmental Insurance Requirements | □ | Exhibit Y: | Supplemental Terms and Conditions for Subcontractors with Design Responsibility |
| ☒ | Exhibit R: | Project Specific Quality Management Program | | Exhibit Z: | Not Used |
| ☒ | Exhibit S: | Authorized Signatories | ☒ | Exhibit PS1: | Safety & Health Management Program |
| ☒ | Exhibit T: | LEED Requirements | ☒ | Exhibit PS2: | Subcontractor Start-up Checklist |

**IN WITNESS WHEREOF,** Contractor and Subcontractor have executed this Subcontract to be effective as of the Effective Date.

| Contractor: **SKANSKA USA BUILDING INC.** | Subcontractor: **CLIMATE CONTROL MECHANICAL SERVICES, INC.** |
|---|---|
| By:  *Matt Gilbert*    5/19/2015  (Signature)    DocuSigned by: ...2C80F9F404CF...    (Date) | By:  *Louie Wise III*    5/19/2015  (Signature)    DocuSigned by: ...07F4C85B8B4B0...    (Date) |
| Matt Gilbert  (Printed Name) | Louie Wise III  (Printed Name) |
| Sr. Vice President  (Title) | President  (Title) |

# EXHIBIT B



-----Original Message-----
From: Kevin Barry <KBarry@climatecontrolflorida.com>
To: marcia <marcia@commercialduct.com>; brenda <brenda@commercialduct.com>
Cc: Marcella Hughes <MHughes@intec360.com>; Laura Strieber <lstrieber@climatecontrolflorida.com>
Sent: Mon, Jul 6, 2015 4:57 pm
Subject: UF Chemistry

Marcia:
Attached is a Letter of Intent (LOI) for the UF Chemistry building duct work. Marcella will be forwarding a Purchase Order by Wednesday 7/8/15. Please let this LOI serve as authorization to proceed with fabrication. I have also included the first page of the coordination drawings which indicate Zone tags and delivery dates. Please call me to review and discuss.

Regards,

Kevin Barry » Operations Manager
Climate Control Mechanical Services · www.ClimateControlFlorida.com
O: 352.291.0185 · F: 352.351.0219 · M: 352.547.9434
2695 NW 4th Street · Ocala, FL 34475 · License #: CMC056921
"Mechanical Service Solutions Start Here"



Important/Confidential: This communication and any files or documents attached to it are intended only for the use of the person or entity to which it is addressed. It contains information that may be privileged, confidential and exempt from disclosure under applicable law. If you are not the intended recipient of this communication, you are hereby notified that the copying, distribution or other use of this communication is strictly prohibited. If you have received this communication by mistake, please notify the sender immediately by electronic mail and destroy all forms of this communication (electronic or paper). Thank you.

7/7/2015



# NATIVE HUBZONE SOLUTIONS, LLC
2695 NW 4th Street
Ocala, FL 34475

## LETTER OF INTENT

Commercial Duct Systems, LLC
9707 Williams Road
Thonotosassa, FL 33592

Attn:   Marcia Thompson

Re:     UF Chemistry Building

Marcia:
We are pleased to issue this Letter of Intent to Commercial Duct Systems, LLC for the fabrication and delivery of round and rectangular ductwork including accessories as listed in the quotations dated 6/3/15. Native Hubzone Solutions will issue a Purchase Order in the amount of $653,702.00 which is representative of the quoted amounts including 6% state sales tax. Deliveries will be scheduled in accordance with the project schedule.

Louie Wise III

President

Native Hubzone Solutions, LLC

2695 NW 4th Street
Ocala, FL 34475



EXHIBIT
C

# Purchase Order

| Date | P.O. No. |
|------|----------|
| 7/22/2015 | 10524 |

| Vendor | Ship To |
|--------|---------|
| Commercial Duct Systems, LLC<br>9707 Williams Rd.<br>Thonotosassa, FL 33592 | Native Hubzone Solutions, LLC<br>2695 NW 4th Street<br>Ocala, FL 34475 |

| Description | Qty | Rate | Amount |
|-------------|-----|------|--------|
| RECTANGULAR DUCTWORK FABRICATION<br>•All ducts to be built to SMACNA duct construction standards-G90- ASTM standards.<br>•Ducts to ship to the site with all fittings and ductwork completely assembled.<br>•Price includes all ducts to be built to SMACNA duct construction.<br>•ALL DUCTWORK BUILT TO AND 2" WG, 3" AND 4" WG PER CONSTRUCTION SCHEDULE.<br>•ALL DUCTWORK TO BE BARE METAL EXCEPT WHERE NOTED. DUCTWORK TO BE DOUBLE WALL CONSTRUCTION WITH INNER 2" X 1.5LB INSULATION AND PERFORATED INNER CORE.<br>•ALL DUCTWORK MEETS LEEDS STANDARDS WITH INNER DUCTS WIPED AND ALL OPEN ENDS WRAPPED.<br>•DUCTWORK CONNECTED TO FANS EXHAUSTING LAB, HEF, BEF, SEF, REF, BHEF EF HRU AND QEF TO BE CONSTRUCTED OF18 GA 316 STAINLESS STEEL WITH CONTINUOUS WELDED SEAM.<br>•Slips, drives, TDC, DM, Tie rod reinforcements where required and turning vanes.<br>•All seams to be Pittsburgh lock.<br>•All ducts to be piece marked and tagged for easier installation.<br>•Price is based on 20 deliveries to your jobsite. Any additional deliveries to be billed extra.<br>•CDS to provide piece marked drawings with a coordinated material lists to help installation.<br>•Manual volume dampers for ducts 18 x 12 and under.<br>•Double thickness turning vanes | 1 | 379,900.00 | 379,900.00 |

| | Total | |
|--|-------|--|
| | | |

Native Hubzone Solutions, LLC

2695 NW 4th Street
Ocala, FL 34475

# Purchase Order

| Date | P.O. No. |
|------|----------|
| 7/22/2015 | 10524 |

| Vendor | Ship To |
|--------|---------|
| Commercial Duct Systems, LLC<br>9707 Williams Rd.<br>Thonotosassa, FL 33592 | Native Hubzone Solutions, LLC<br>2695 NW 4th Street<br>Ocala, FL 34475 |

| Description | Qty | Rate | Amount |
|-------------|-----|------|--------|
| •State tax is not included.<br>•Price includes hanging strap for rectangular ductwork<br>•Exclusions- state tax, round pipe, drain pans, ducts not shown, fire dampers, fire damper sleeves, shop drawings.<br>•All ductwork to be wiped. Wrapped ends are INCLUDED<br>•NO ACCESS DOORS<br>•NO LINEAR BOXES<br>•NO CLEANING<br>•NO PAINTING<br>•NO ANTI MICROBAL COATING AGENTS<br>TOTAL 86,989 lbs<br>TOTAL LINER 2,723 SQ FT<br>TOTAL INNER WALL 3,839 LBS PERFORATED<br>TOTAL 18 GA 316 SS 55,787 LBS.<br>Ductwork Material - SPIRAL<br>3200 # ALL SINGLE WALL ROUND SPIRAL UPSTREAM OF VAV/SAV UNITS; BELLMOUTH TAPS INCLUDED G90 GALVANIZED.<br>25000# ROUND DUAL WALL SPIRAL (M202); 14 ROUND VCD; 14 INSULATION ENDS; 28 ELBOWS; G90<br>512 - 6" 316 GRADE STAINLESS STEEL FLANGES FOR BENH EXHAUST CONNECTIONS<br>34,400# LONGSEAM WELDED 316 STAINLESS STEEL EXHAUST DUCT, 2BFINISH, #4 WHERE EXPOSED | 1 | 236,800.00 | 236,800.00 |
| **Total** | | | |

Native Hubzone Solutions, LLC

2695 NW 4th Street
Ocala, FL 34475

# Purchase Order

| Date | P.O. No. |
|------|----------|
| 7/22/2015 | 10524 |

| Vendor | Ship To |
|--------|---------|
| Commercial Duct Systems, LLC<br>9707 Williams Rd.<br>Thonotosassa, FL 33592 | Native Hubzone Solutions, LLC<br>2695 NW 4th Street<br>Ocala, FL 34475 |

| Description | Qty | Rate | Amount |
|-------------|-----|------|--------|
| NOT INCLUDED: HANGER MATERIAL; RECTANGULAR DUCT; FLEX DUCT; CANVAS CONNECTORS UNLESS SPECIFICALLY NOTED AS INCLUDED; ACCESS DOORS; EXTRACTORS; RECTANGULAR-TO-ROUND TRANSITIONS; SLEEVES OF ANY KIND; CONCEALED ROUND LOW PRESSURE DUCT UNLESS INDICATED; CURBS OR FLASHINGS. PLASTIC WRAPPED ENDS NOT INCLUDED UNLESS NOTED. | | | |
| Sales Tax paid on received bills | | 37,002.00 | 37,002.00 |

| | Total | $653,702.00 |
|--|-------|-------------|

Page 3



**EXHIBIT D**



# CREDIT APPLICATION

Date _July 31_ , 2015

The following information is submitted to you for consideration as a basis for extension of credit.

1. Company name: _Native Hubzone Solutions_  2. Type of business: _____
3. Address: _24095 NW 4th St_  City: _Ocala_  State: _FL_  Zip: _34475_
4. Mailing address, if different: _____
5. Telephone: _352/351-0114_  Fax: _352/351-0219_  E-Mail: _info@nativehubzone.com_
6. We have been established since: _2012_  (provide year business started)
   WWW Address _N/A_

7. Name of Officers and/or Partners          Home Address
   _Louie Wise III_                          _PO Box 3038 Ocala, FL 34478_
   _____                _____
   _____                _____

8. Bank Name: _CenterState_  Address: _____  City/State: _Ocala FL_
   Phone: _352 / 308 - 6800_  Contact: _Michelle Hardaway_

9. Is purchase order required? [✓] Yes  [ ] No    10. Are you tax exempt? [ ] Yes  [✓] No
                                                       *If yes, copy of Certificate required*

---

### TRADE REFERENCE

Company: _____ Address: _____ City/State: _____ Contact: _____
Phone: _____ / _____ - _____      Fax: _____ / _____ - _____

Company: _____ Address: _____ City/State: _____ Contact: _____
Phone: _____ / _____ - _____      Fax: _____ / _____ - _____

Company: _____ Address: _____ City/State: _____ Contact: _____
Phone: _____ / _____ - _____      Fax: _____ / _____ - _____

---

THE ABOVE INFORMATION IS FOR THE PURPOSE OF OBTAINING CREDIT AND IS WARRANTED TO BE TRUE. WE HEREBY AURHTORIZE THE FIRM TO WHOM THIS APPLICATION IS MADE TO INVESTIGATE THE REFERENCES LISTED PERTAINING TO MY/OUR CREDIT AND FINANCIAL RESPONSIBILITY. The undersigned personal guarantor recognizing that his or her individual credit history may be a necessary factor in the evaluation of this personal guarantee, hereby consents to and authorizes the use of a consumer credit report on the undersigned, by the above named business credit grantor, from time to time as may be needed, in the credit evaluation process.

The undersigned, jointly, severally and personally, in consideration of your extending credit to the above named applicant, do hereby agree to pay for all goods sold to applicant, and in the event of default by applicant you shall be entitled to look to us for payment without prior demand or notice and without first having attempted to collect from applicant. In the event you engage the services of an attorney to collect any sum of money due hereunder, or to enforce or defend your rights hereunder, you shall be entitled to collect reasonable attorney's fees from the undersigned. The liability of the undersigned shall not be affected by any extensions or indulgences granted applicant, or by releasing or surrendering any security given by the applicant. The undersigned agree to give you a written notice by certified mail in the event of any change in the ownership of applicant's business or the form of applicant's business organization.

Name (print) _Louie Wise III_  Signature: _____  Title: _Managing member_

**EXHIBIT**

**E**

## WAIVER AND RELEASE OF LIEN
### CONDITIONAL UPON FINAL PAYMENT

The undersigned Lienor, in consideration of the final payment in the amount of $706,680.69, hereby waives and releases its lien and right to claim a lien for labor, services or materials furnished to Skanska USA Building Inc. on the job of UF 323 A UF CHEMISTRY / BIOLOGY BUILDING to the following property:

UF-323A CHEMISTRY / CHEMICAL BIOLOGY BUILDING
UNIVERSITY OF FLORIDA, BUILDING 0275
GAINESVILLE FL, 32611

Job #    230912

DATED on this 10th day of March, 2016.

Lienor Name:    Native Hebrzem Solutions

Address:    2695 NW 4th Street
            Ocala, FL, 34475

Signature:

Printed Name:    Louie F. Wise, II
Title:    Managing Member



Notary Public    Trish Wilson

Printed Name

Commission Expiration Date

Notary Public State of Florida
Trish Wilson
My Commission FF 904484
Expires 03/25/2019

NOTE: This is a statutory form prescribed by Section 713.20, Florida Statutes. A person may not require a lienor to furnish a waiver or release of lien that is different from the statutory form.

**Statement**



Page:    1

Statement Date: 4/14/2016



Commercial Duct Systems, LLC. 2016
9707 Williams Road
Thonotosassa, FL 33592
(813) 413-8230
(813) 413-8378 Fax    helen@commercialduct.com

Customer Number  NATIVE

Native Hubzone Solutions, LLC
2695 nNW 4th Street
Ocala, FL 34475        Phone:   (352) 351-0114      Fax:
Contact:

| Date | Reference | Description | Charge | Credit | Balance |
|------|-----------|-------------|--------|--------|---------|
| 10/16/15 | 0546866-IN | UF CHEMISTRY BIOLOGY BLDG | 1,113.00 | | 1,113.00 |
| 10/20/15 | 0546940-IN | UF CHEMISTRY BIOLOGY BLDG | 36,983.40 | | 36,983.40 |
| 10/23/15 | 0547030-IN | UF CHEMISTRY BIOLOGY BLDG | 33,920.00 | | 33,920.00 |
| 11/25/15 | 0547509-IN | UF CHEMISTRY BIOLOGY BLDG | 33,920.00 | | 33,920.00 |
| 12/11/15 | 0547708-IN | UF CHEMISTRY BIOLOGY BLDG | 50,880.00 | | 50,880.00 |
| 12/15/15 | 0547722-IN | UF CHEMISTRY BIOLOGY BLDG | 69,832.80 | | 69,832.80 |
| 12/15/15 | 0547760-IN | UF CHEMISTRY BIOLOGY BLDG | 67,712.80 | | 67,712.80 |
| 01/18/16 | 0548131-CM | Credit Riser Duct UF Chemistry | | 22,154.00 | 22,154.00- |
| 03/24/16 | 0549174-IN | UF CHEMISTRY 5TH FLOOR | 18,447.18 | | 18,447.18 |
| 03/24/16 | 0549176-CM | CREDIT UF CHEMISTRY FLANGES | | 4,877.42 | 4,877.42- |

| | | | | Total: | 285,777.76 |
|---|---|---|---|---|---|
| Current | 30 Days | 60 Days | 90 Days | 120 Days | Balance Due |
| 13,569.76 | 0.00 | 22,154.00- | 0.00 | 294,362.00 | 285,777.76 |

Your account with us is seriously past due.
Remit today so that we may continue to serve you.



## COMMERCIAL DUCT SYSTEMS, LLC
PRECISION BEYOND STANDARDS.

## SWORN STATEMENT OF ACCOUNT

WARNING: YOUR FAILURE TO FURNISH THE REQUESTED STATEMENT, SIGNED UNDER OATH, WITHIN 30 DAYS OR THE FURNISHING OF A FALSE STATEMENT WILL RESULT IN THE LOSS OF YOUR LIEN.

TO:

Native Hub Zone Solutions
2695 NW 4th Street, Ocala, FL 34475

UF CHEMISTRY
1200 SW 34th Street
Gainesville, FL 32611

STATE OF: Florida

COUNTY OF: Hillsborough

Be it remembered, that on this 23 Day of March ., 2016 , before me, the undersigned Notary Public, in and for said County and State, duly

commissioned and qualified, personally appeared Brenda Ley who being duly sworn, deposeth and saith that she is a member of the firm of

Commercial Duct Systems, LLC and that the annexed account exhibiting the sum of $ 285,777.76 against NATIVE HUB ZONE SOLUTIONS
is just and true as stated; that Commercial Duct Systems LLC has not received any part of the money stated to be due, or any security or satisfaction for

the same; that all just credits have been given; and, additionally, that the contractual document provides for reasonable attorney fees and interest.

Property description:

UF Chemistry Authorization – 4 final for phase 111 UF-323A, Chemistry – Chemical Biology Building – Alachua County, Florida, Bond # 09131570,8015044653, 681926911, # 929530065 in or book 4338, page 598.

Which property is owned by: University of Florida Board of Trustees a total value of $ 645,117.75 of which there remains unpaid $ 285,777.76 The first of said materials and /or labor was furnished on  7/31/15 , and the last of same on  2/03/16 , and (where not in privity with the owner) that the lienor served his notice to owner on  9/04/15  , by  CERTIFIED MAIL, and served a copy to SKANSKA USA , on  9/04/15 , by Certified Mail.

### AFFIDAVIT
TO THE BEST OF MY INFORMATION AND BELIEVE, AFTER INVESTIGATION OF DEFENDANT'S EMPLOYMENT, I HEREBY MAKE AFFIDAVIT THAT THE DEFENDANT IS NOT A MEMBER OF A MILITARY SERVICE.

Commercial Duct Systems, LLC
9707 Williams Road
Thonotosassa, Florida 33592

BY:

Brenda Ley, OFFICER

Sworn to and subscribed before me. In witness whereof I have hereunto set my hand and affixed my official seal in the County of Hillsborough, Florida on this 23 day of March, 2016.

My Commission Expires:

Notary Public: Helen A. Scarbrough

HELEN A. SCARBROUGH
Notary Public - State of Florida
Commission # FF 246993
My Comm. Expires Jan 9, 2019
Bonded through National Notary Assn.

Thonotosassa, FL 33592 ○ Tel 877-237-3828 ○ Fax 813-413-8377

## EXHIBIT C

INSTRUMENT#: 2017387719, BK: 25273 PG: 485 PGS: 485 - 486 10/04/2017 at
03:36:11 PM,    DEPUTY CLERK:TJORDAN Pat Frank,Clerk of the Circuit Court
Hillsborough County

IN THE CIRCUIT COURT FOR THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA

COMMERCIAL DUCT SYSTEMS, LLC,
a Florida limited liability company

Plaintiff,

Case No. 2016 CA 009961
Division D

v.

NATIVE HUBZONE SOLUTIONS, LLC, a
Florida limited liability company; and, LOUIE
WISE, III, an individual;

Defendants.

## FINAL JUDGMENT BY CONSENT

This Cause came before the Court upon consideration of the Joint Motion for Entry of Consent
Final Judgment between all Parties: Plaintiff COMMERCIAL DUCT SYSTEMS, LLC, and
Defendants NATIVE HUBZONE SOLUTIONS, LLC and LOUIE WISE, III. As it appears the
Parties have voluntarily stipulated and consented to the relief set forth herein, and it appearing
such terms are equitable and enforceable, it is hereby **ORDERED, ADJUDGED,** and **DECREED**
as follows:

1. This Court has subject matter jurisdiction over this matter, jurisdiction over the parties, and
   continuing jurisdiction over this matter and the Parties. The Amended Complaint filed in
   this matter states claims upon which relief may be granted under the common law for
   breach of contract, open account, account stated, and unjust enrichment.

2. The Parties agree and stipulate to the entry of this Consent Judgment without the need for
   trial, discovery, or adjudication of any issue of law or fact, and further waive entry of
   findings of fact and conclusions of law, and any hearing on the entry of this Judgment.

3. The Defendants, NATIVE HUBZONE SOLUTIONS, LLC (FEI/EIN Number 45-
   5381662) and LOUIE WISE, III, an individual (DOB 10/11/1971), shall jointly and
   severally pay the following sums to Commercial Duct Systems, LLC:

   o **Expectation damages** in the amount of $285,777.76;

   o **Pre-judgment interest** in the amount of $22,546.61 (*i.e.* 5.17% per annum of the
      expectation damages calculated from March 24, 2016 until September 29, 2017 as
      stipulated in the Parties' Joint Motion for Entry of Consent Final Judgment);

   o **Post-judgment interest** at the rate of 5.17% per annum from the date of this
      Consent Judgment until the date it is satisfied;

Page 1 of 2

   o **Costs** in the amount of $815;

   o **Reasonable attorneys' fees** in the amount of $10,837.50.

4. Each Defendant shall complete Florida Rule of Civil Procedure Form 1.977 (Fact Information Sheet), including all required attachments, and serve it on the attorney-of-record for Plaintiff within forty-five (45) days from the date of this Final Judgment, unless the Final Judgment is satisfied or post-judgment discovery is stayed.

5. *The Court shall retain jurisdiction over this matter for all purposes, including construction, modification, and enforcement of this Judgment.*

DONE AND ORDERED at the City of Tampa, Hillsborough County, Florida, on this 3RD day of October, 2017.

16-CA-009961 10/3/2017 10:47:06 AM

HON. CLAUDIA RICKERT ISOM
Circuit Court Judge

Copies to:

Matt Newton, Esq.
Singer Law Group, P.A.
712 S. Oregon Ave., Suite 200
Tampa, FL 33606
matt@singerlg.com

David Singer, Esq.
Singer Law Group, P.A.
712 S. Oregon Ave., Suite 200
Tampa, FL 33606
david@singerlg.com

Richard Alan Perry, Esq.
820 E. Fort King St.
Ocala, FL 34471-2320
richard@rapocala.com

**EXHIBIT D**



**CenterState**

Account Number:         ████181
Capture Date:           June 15, 2016
Item Number:            21190001622290
Posted Date:            June 15, 2016
Posted Item Number:     429373
Serial Number:
Amount:                 194,508.90

NATIVE HUBZONE SOLUTIONS, LLC
2695 NW 4TH ST
OCALA FL 34475

DEPOSIT TICKET

Name  Native Hubzone Solutions

Account No ████41.81

CASH

CHECKS                  194508.90

DATE  6/15/16

CHECKS OR TOTAL
FROM OTHER SIDE

SUB TOTAL

LESS CASH

**CenterState**
B A N K

TOTAL
DEPOSIT   $   194508.90

 **CenterState**

Account Number: ████902
Capture Date: June 15, 2016
Item Number: 21190001622291
Posted Date: June 15, 2016
Posted Item Number: 429374
Serial Number: 2047
Amount: 194,508.90



CASH ONLY IF ALL CheckLess™ SECURITY FEATURES LISTED ON BACK INDICATE NO TAMPERING OR COPYING

VetCon Services LLC                                    BANK OF AMERICA, NA          **2047**
3325 Diamond Falls Circle                              63-027/631
Land O Lakes, FL 34639
813 777 3600                                                              6/8/2016

PAY TO THE
ORDER OF      Native Hubzone Solutions                                    $ **194,508.90

One Hundred Ninety-Four Thousand Five Hundred Eight and 90/100************************************  DOLLARS

Native Hubzone Solutions
PO BOX 3038
Ocala, FL 34478

MEMO   Signature Brands



**EXHIBIT E**

eGIFTS

Page 1 of 1

### Fedwire Payment

| Payment Date | 26-MAY-2016 | | Amount | | | Debit Charges | | | |
|---|---|---|---|---|---|---|---|---|---|
| Value Date | 26-MAY-2016 | | Original | | USD 225,000.00 | Default | BILL | | 25.00 |
| Sender Ref. | 201605260000457 | | Debit | | USD 225,025.00 | Override | BILL | | 25.00 |
| Ref.For Beneficiary | | | | | | Additional Charges | | | |
| Beneficiary | CUSTOMER | | Paid | | USD 225,000.00 | Bill (Debit) | | | 0.00 |
| Fedwire Type/Code | 10 00 / CTR | | | | | Deduct (Credit) | | | 0.00 |
| | | | | | | Total Bill Charges | | | 25.00 |
| | | | | | | Total Deduct Charges | | | 0.00 |

| Sending Bank | | Receiving Bank | | Originator to Beneficiary Info. |
|---|---|---|---|---|
| F/063114030 | | F/121000248 | | OPERATING FUNDS |
| CENTERSTATE BANK OF FLORIDA, NA | | WELLS FARGO BANK, NA | | |
| | | | | |
| WINTER HAVEN | | SAN FRANCISCO | | |
| FL | | CA | | |

| Originator | | Beneficiary | |
|---|---|---|---|
| ███████81 | | ████████6122 | |
| NATIVE HUBZONE SOLUTIONS, LLC | | FACILITY PERFORMANCE LLC | |
| 2695 NW 4TH ST | | | |
| OCALA FL 34475-6038 | | | |
| | | | |
| Occupation: | | Occupation: | |
| Currency: USD   Advice: | | Advice: | |

Sender Ref. (Translated)
Ref.For Beneficiary (Translated)

| Delivery | Walk-in |
|---|---|
| BSA | |
| Name | |
| Address | |
| City | |
| State | |
| Zip | |
| | |
| Phone | |
| SSN | |
| Identification | |
| | |
| Issuer | |
| Expiry Date | |
| Comments | |

Reason for Payment        OPERATING FUNDS

Relationship to Beneficiary

| Rebates | | | | Fedwire | | | |
|---|---|---|---|---|---|---|---|
| Credit | 0.00 | | | | | | |
| Debit | 0.00 | | | | | | |
| ESN | | | | | | | |
| Source | MANUAL ENTRY | | IMAD | 20160526 | MMQFMP78 | 000044 | |
| Institution | CENTERSTATE BANK (CSB) | | OMAD | 20160526 | 11B7033R | 006058 | |
| Branch | CENTERSTATE BANK (MST) | | | | | | |
| Department | OCALA DOWNTOWN (021) | | | | | | |
| | | | | | | | |
| OFAC | No Match Found | | | | | | |
| Pre-Advice | NO | | | | | | |
| Inclearing Check | NO | | | | | | |

| Expected Credit/Reference No. | 0 |
|---|---|
| Entry Operator / Date | NWALLS / 26-MAY-2016 09:23:41 |
| Memo | |

OPERATING FUNDS(26-MAY-2016 9:23:40/NWALLS);
Travel Rules validation Successful (26-MAY-2016 9:53:18/SYSTEM)

| Method Of Payment | Fedwire Payment | Queue | FED PAYMENTS COMPLETION QUEUE | |
|---|---|---|---|---|
| Transaction No. | 201605260000457 (B) | Domestic/Foreign | (Domestic )     FATCA Withhold | (NO ) |

**EXHIBIT F**

Account number: ████603  ■ April 1, 2016 – April 30, 2016  ■ Page 5 of 9



## Transaction history (continued)

| Date | Check Number | Description | Deposits/ Credits | Withdrawals/ Debits | Ending daily balance |
|------|-------|-------------|---------|---------|---------|
| 4/20 | | Fla Dept Revenue C01 160419 000000013496069 Climate Control | | 57.55 | |
| 4/20 | | Acs Sls Expertpay xxxxx0313 Fair Mechanical Soluti | | 2,376.77 | |
| 4/20 | 10956 | Check | | 652.10 | 7,009.45 |
| 4/21 | | Purchase authorized on 04/19 Fadv – Contractor Atlanta GA S386110485767291 Card 5509 | | 28.77 | |
| 4/21 | | Purchase authorized on 04/19 Fadv – Contractor Atlanta GA S586110710587552 Card 5509 | | 28.77 | |
| 4/21 | | Purchase authorized on 04/19 Fadv – Contractor Atlanta GA S466110712318066 Card 5509 | | 28.77 | |
| 4/21 | | Purchase authorized on 04/19 Fadv – Contractor Atlanta GA S306110713436857 Card 5509 | | 28.77 | |
| 4/21 | | Purchase authorized on 04/19 Fadv – Contractor Atlanta GA S586110714305989 Card 5509 | | 28.77 | |
| 4/21 | | Purchase authorized on 04/19 Fadv – Contractor Atlanta GA S306110715582544 Card 5509 | | 28.77 | |
| 4/21 | | Purchase authorized on 04/20 Sunpass*Acc2099065 888-865-5352 FL S386111626680311 Card 5509 | | 200.00 | |
| 4/21 | 10951 | Check | | 500.00 | |
| 4/21 | 10958 | Check | | 331.10 | 5,805.73 |
| 4/22 | | Purchase Return authorized on 04/21 United Refrig Br # Jacksonville FL S626113554193865 Card 5509 | 1,972.58 | | |
| 4/22 | | Deposit | 3,718.29 | | |
| 4/22 | | Purchase authorized on 04/19 National Energy CO 610-4499800 PA S586110480604724 Card 5509 | | 90.06 | |
| 4/22 | | Purchase authorized on 04/20 The Home Depot 253 Ocala FL S386111586125523 Card 5509 | | 45.97 | |
| 4/22 | | Purchase authorized on 04/21 Johnstone Supply 352-873-4443 FL S006112454943427 Card 5509 | | 406.19 | |
| 4/22 | | Purchase authorized on 04/21 United Refrig Br # Jacksonville FL S306112355608382 Card 5509 | | 54.47 | 10,899.91 |
| 4/25 | | Purchase Return authorized on 04/22 #457-United Refrig Brunswick GA S626114553651719 Card 5509 | 2,033.65 | | |
| 4/25 | | Merch Bankcard Net Setlmt 042216 520001328825 Merch Bankcard Net Setlmt 520001328825 | 526.00 | | |
| 4/25 | | Online Transfer From Facility Performance L Business Checking xxxxxx8122 Ref #Ibev2Pqvqk on 04/25/16 | 160,000.00 | | |
| 4/25 | | Purchase authorized on 04/22 Best Western Hotel Clewiston FL S306110100207848 Card 5509 | | 475.18 | |
| 4/25 | | Purchase authorized on 04/21 Johnstone Supply 407-849-0573 FL S286112485784492 Card 5509 | | 575.43 | |
| 4/25 | | Purchase authorized on 04/21 Fadv – Contractor Atlanta GA S386112505739563 Card 5509 | | 28.77 | |
| 4/25 | | Purchase authorized on 04/21 Fadv – Contractor Atlanta GA S306112507138684 Card 5509 | | 28.77 | |
| 4/25 | | Purchase authorized on 04/21 Fadv – Contractor Atlanta GA S386112508158607 Card 5509 | | 28.77 | |
| 4/25 | | Purchase authorized on 04/21 The Home Depot 253 Ocala FL S306112619568290 Card 5509 | | 34.14 | |
| 4/25 | | Purchase authorized on 04/21 Fadv – Contractor Atlanta GA S386112706878673 Card 5509 | | 28.77 | |
| 4/25 | | Purchase authorized on 04/22 Best Western Hotel Clewiston FL S586109598708360 Card 5509 | | 475.18 | |
| 4/25 | 10967 | Check | | 105,936.40 | 65,848.19 |
| 4/26 | | Deposit | 6,576.25 | | |
| 4/26 | 10940 | Check | | 785.32 | |
| 4/26 | 10968 | Check | | 227.37 | 71,431.75 |
| 4/27 | | Purchase authorized on 04/21 National Energy CO 610-4499800 PA S466112630629121 Card 5509 | | 93.19 | |
| 4/27 | | Purchase authorized on 04/25 Fadv – Contractor Atlanta GA S306116538968794 Card 5509 | | 28.77 | |

MOR - 8

**Climate Control Mechanical Services, Inc.**

**As of February 29th, 2016**

| Date | Num | Name | Credit |
|------|-----|------|--------|
| 02/01/16 | | Transfer | 6,000.00 |
| 02/01/16 | | Transfer | 2,710.00 |
| 02/01/16 | 92 | The Alexander Group, LL | 80.00 |
| 02/01/16 | 94 | The Alexander Group, LL | 550.00 |
| 02/01/16 | | Transfer | 5,035.00 |
| 02/02/16 | | Fees | 19.95 |
| 02/03/16 | 10802 | Cintas Corporation | 338.47 |
| 02/04/16 | 98 | Base 3, LLC dba Gibson | 8,832.00 |
| 02/04/16 | 99 | The Alexander Group, LL | 1,655.00 |
| 02/05/16 | | Transfer | 105,350.00 |
| 02/05/16 | 100 | Everlast Power Equipme | 14,728.98 |
| 02/05/16 | 10803 | Airgas South, Inc | 4,637.27 |
| 02/05/16 | 10804 | CED/RAYBRO ELECTRIC | 2,513.73 |
| 02/05/16 | 10805 | Home Depot | 1,340.36 |
| 02/08/16 | 10806 | Ferrell Gas | 285.71 |
| 02/08/16 | | Fees | 18.00 |
| 02/08/16 | 101 | AT&T Mobility | 309.42 |
| 02/08/16 | 753 | Sullivan Welding | 4,500.00 |
| 02/08/16 | 10807 | Airgas South, Inc | 177.68 |
| 02/08/16 | 10808 | Fire Safety Speciali | 1,090.00 |
| 02/08/16 | 10810 | UF Transportation | 731.25 |
| 02/09/16 | | Transfer | 32,500.00 |
| 02/09/16 | | Fees | 400.86 |
| 02/09/16 | 754 | State of Florida | 2,447.08 |
| 02/09/16 | 756 | The Alexander Group, L | 567.96 |
| 02/09/16 | 757 | Laser Printer Checks | 65.27 |
| 02/09/16 | 10811 | Morgan Bros. Supply | 1,449.04 |
| 02/10/16 | 758 | BC Industrial Supply I | 2,160.18 |
| 02/10/16 | 759 | Lowe's | 576.80 |
| 02/11/16 | 10812 | AT&T Mobility | 2,155.32 |
| 02/11/16 | 10813 | Blue Cross Blue Shie | 18,819.16 |
| 02/11/16 | 10814 | Diamond Core Drillin | 7,660.00 |
| 02/11/16 | 10815 | Federated Insurance | 1,230.00 |
| 02/11/16 | 10816 | McGill Airflow LLC | 280.84 |
| 02/11/16 | 10817 | Rountree Transport & | 58,105.00 |
| 02/11/16 | 10818 | Safe Fire Protection | 1,283.20 |
| 02/11/16 | 10819 | The Bancorp Bank | 8,462.55 |
| 02/11/16 | 761 | The Alexander Group, L | 660.00 |
| 02/11/16 | 762 | Facility Performance | 15,150.00 |
| 02/11/16 | 10820 | Baker Distributing C | 918.60 |
| 02/11/16 | 10821 | Beaches Automotive | 4,637.01 |
| 02/11/16 | 10822 | Grainger | 778.88 |
| 02/11/16 | 10823 | Panther Print Soluti | 346.09 |
| 02/11/16 | 10824 | William Sullivan | 34,000.00 |

MOR - 8

# Climate Control Mechanical Services, Inc.
## As of February 29th, 2016

| Date | Num | Name | Credit |
|------|-----|------|--------|
| 02/11/16 | 10825 | William Sullivan | 10,900.00 |
| 02/12/16 | 763 | Southeast Personnel Le | 600.00 |
| 02/12/16 | 764 | Superior Products Inte | 147.33 |
| 02/12/16 | 765 | Airgas South, Inc | 474.38 |
| 02/12/16 | 766 | Driveswarehouse.com | 1,158.00 |
| 02/12/16 | 767 | Nelson & Company | 578.06 |
| 02/12/16 | 768 | Tampa Bay Steel Corp | 2,031.81 |
| 02/12/16 | 10826 | Airgas South, Inc | 3,964.53 |
| 02/12/16 | | MEE100 Invoice 792 | 2,700.00 |
| 02/15/16 | 769 | Zendesk | 278.00 |
| 02/15/16 | 10827 | Community Bank & Tru | 15,000.00 |
| 02/15/16 | 10828 | Johnstone Supply | 192.53 |
| 02/15/16 | 10829 | Stan Weaver & Compan | 7,345.80 |
| 02/15/16 | 10830 | Johnstone Supply | 2,256.19 |
| 02/17/16 | | Fees | 11.88 |
| 02/17/16 | 775 | Mass Mutual | 50.00 |
| 02/17/16 | 776 | Amazon.com | 19.89 |
| 02/17/16 | 10831 | US Department of Edu | 252.83 |
| 02/19/16 | | Payroll | 168.39 |
| 02/18/16 | 10832 | William Sullivan | 3,500.00 |
| 02/18/16 | 10833 | William Sullivan | 73,500.00 |
| 02/19/16 | | Transfer for payroll | 15,000.00 |
| 02/19/16 | 777 | The Alexander Group, L | 1,610.00 |
| 02/19/16 | 778 | Department of Revenue | 11.83 |
| 02/22/16 | 10834 | Commercial Duct Syst | 567.10 |
| 02/22/16 | 10835 | Johnstone Supply | 1,018.15 |
| 02/22/16 | 10836 | United Rentals | 1,779.61 |
| 02/22/16 | 779 | Cunningham Sales Incor | 322.24 |
| 02/22/16 | 10837 | AmTrust North Americ | 10,420.64 |
| 02/22/16 | 10838 | Beyel Brothers, Inc. | 302.40 |
| 02/22/16 | 10839 | Colonial Life | 1,521.20 |
| 02/22/16 | 10840 | Enterprise Fleet Man | 5,499.68 |
| 02/22/16 | 10841 | Fire Safety Speciali | 111.30 |
| 02/22/16 | 10843 | Guardian | 1,456.25 |
| 02/22/16 | 10844 | MyFloridaMarketPlace | 42.51 |
| 02/22/16 | 10846 | U.S. Trustee | 6,496.82 |
| 02/22/16 | 10847 | Valvolne Instant Oil | 73.44 |
| 02/22/16 | 10848 | Verizon | 734.89 |
| 02/22/16 | 10849 | Bethel Products, LLC | 45,747.46 |
| 02/22/16 | 10850 | TAI Services, Inc. | 5,136.00 |
| 02/22/16 | 10851 | Airgas South, Inc | 378.16 |
| 02/22/16 | 10852 | Ferguson | 21,946.79 |
| 02/23/16 | 781 | The Alexander Group, L | 5,410.00 |
| 02/23/16 | 782 | The Alexander Group, L | 450.00 |

**MOR - 8**

## Climate Control Mechanical Services, Inc.
### As of February 29th, 2016

| Date | Num | Name | Credit |
|------|-----|------|--------|
| 02/23/16 | 10853 | Pac | 795.00 |
| 02/23/16 | 10854 | George Albright, Tax | 668.68 |
| 02/23/16 | | Transfer | 35,800.00 |
| 02/23/16 | 10855 | Airgas South, Inc | 5,376.07 |
| 02/23/16 | 10856 | Johnstone Supply | 901.36 |
| 02/25/16 | 784 | Bernie's Tool & Fasten | 9,370.45 |
| 02/25/16 | 785 | Carolinas Construction | 119,453.69 |
| 02/25/16 | 786 | Hub Industrial Supply | 1,387.59 |
| 02/25/16 | 787 | Mobile Modular Manager | 482.00 |
| 02/25/16 | 788 | RT Insulation, Inc. | 104,438.04 |
| 02/25/16 | 789 | United Rentals | 13,138.63 |
| 02/25/16 | 791 | AT&T Mobility | 217.92 |
| 02/25/16 | 792 | State of Florida | 2,447.08 |
| 02/24/16 | 10857 | Commercial Duct Syst | 105,936.40 |
| 02/25/16 | 10858 | Sullivan Welding & C | 124,593.90 |
| 02/26/16 | 10859 | C&M Ent of Christmas | 4,420.30 |
| 02/29/16 | 793 | Zendesk | 91.07 |
| 02/29/16 | 10860 | Johnstone Supply | 116.94 |
| 02/29/16 | 10861 | Eastern Crane & Rigg | 2,205.00 |
| 02/29/16 | 794 | Airgas South, Inc | 151.16 |
| 03/08/16 | | Reconcile Discrepancy | 0.01 |
| 02/12/16 | 807 | Holiday Inn Express | 114.25 |
| 02/26/16 | 808 | Strate Welding Supply | 226.99 |
| 02/12/16 | 809 | Harbor Freights | 1,649.85 |
| 02/24/16 | 810 | Hub Industrial Supply | 1,592.07 |
| 02/24/16 | 811 | Airgas South, Inc | 569.39 |
| 02/26/16 | 812 | Airgas South, Inc | 765.75 |
| 02/18/16 | 818 | Mass Mutual | 50.00 |
| 02/25/16 | 826 | United Rentals | 12,975.82 |
| | | | 1,156,658.16 |

## MOR - 8
## Climate Control Mechanical Services, Inc.
### As of March 31, 2016

| Date | Num | Name | Credit |
|------|-----|------|-------:|
| Wells Fargo Checking 7603 | | | |
| 03/01/16 | 795 | CWI Climateworx Intern | 4,032.20 |
| 03/01/16 | 10862 | Airgas South, Inc | 871.30 |
| 03/02/16 | | Fees | 19.95 |
| 03/03/16 | | Transfer | 12,200.00 |
| 03/02/16 | 796 | Mass Mutual | 50.00 |
| 03/02/16 | 797 | Bernie's Tool & Fasten | 698.13 |
| 03/02/16 | 798 | Mobile Modular Managem | 99.50 |
| 03/02/16 | 799 | United Rentals | 4,343.68 |
| 03/02/16 | 800 | HD Supply | 792.78 |
| 03/02/16 | 10863 | TD Bank | 40.00 |
| 03/02/16 | 10864 | US Department of Edu | 252.83 |
| 03/03/16 | 10865 | Climate Control Mech | 5,000.00 |
| 03/03/16 | 10866 | Johnstone Supply | 143.48 |
| 03/03/16 | 10867 | Sullivan Welding & C | 121,126.82 |
| 03/04/16 | | Transfer for payroll | 89,500.00 |
| 03/04/16 | 801 | Facility Performance | 2,000.00 |
| 03/04/16 | 802 | Facility Performance | 11,500.00 |
| 03/04/16 | 803 | Facility Performance | 10,100.00 |
| 03/04/16 | 804 | The Alexander Group, L | 1,750.00 |
| 03/04/16 | 805 | HD Supply | 323.74 |
| 03/04/16 | 10868 | Marion/Service Roofi | 10,950.00 |
| 03/04/16 | 10869 | Mobile Modular Manag | 573.50 |
| 03/04/16 | 10870 | Stan Weaver & Compan | 155.82 |
| 03/04/16 | 10871 | Baker Distributing C | 352.99 |
| 03/04/16 | 10872 | Metro Steel & Pipe S | 301.72 |
| 03/07/16 | | JCA payment to Trane | 20,000.00 |
| 03/07/16 | 806 | Sunbelt Rentals | 4,081.92 |
| 03/07/16 | 10873 | Palm Cay Homeowners | 105.00 |
| 03/07/16 | 10874 | Holistic Test and Ba | 1,000.00 |
| 03/01/16 | 813 | Airgas South, Inc | 182.30 |
| 03/01/16 | 814 | Airgas South, Inc | 590.95 |
| 03/01/16 | 815 | Airgas South, Inc | 354.57 |
| 03/07/16 | 816 | Airgas South, Inc | 118.19 |
| 03/07/16 | 817 | Airgas South, Inc | 118.19 |
| 03/07/16 | 10875 | Metro Steel & Pipe S | 544.30 |
| 03/08/16 | | Transfer | 31,900.00 |
| 03/08/16 | | Fees | 3.00 |
| 03/08/16 | | Fees | 5.50 |
| 03/08/16 | | Fees | 10.00 |
| 03/08/16 | | Fees | 167.19 |
| 03/08/16 | 820 | Base 3, LLC dba Gibson | 1,840.00 |
| 03/09/16 | 821 | UPS | 23.36 |
| 03/10/16 | 822 | Johnstone Supply | 128.79 |

# MOR - 8
## Climate Control Mechanical Services, Inc.
### As of March 31, 2016

| Date | Num | Name | Credit |
|------|-----|------|-------|
| 03/08/16 | 10876 | Stan Weaver & Compan | 785.46 |
| 03/09/16 | 10877 | Cintas Corporation | 386.44 |
| 03/09/16 | 10878 | Carroll Air Systems, | 1,185.08 |
| 03/09/16 | 10879 | Post Office Tire Ser | 341.96 |
| 03/09/16 | 10880 | Airgas South, Inc | 2,342.81 |
| 03/09/16 | 10881 | Johnstone Supply | 480.92 |
| 03/10/16 | 10882 | Johnstone Supply | 1,431.58 |
| 03/10/16 | 823 | Johnstone Supply | 146.00 |
| 03/10/16 | 10883 | On Top of the World | 684.00 |
| 03/10/16 | 10884 | Oak Run Associates, | 649.00 |
| 03/11/16 | | Fees | 12.09 |
| 03/11/16 | 824 | Sunbelt Rentals | 172.78 |
| 03/11/16 | 10885 | Sullivan Welding & C | 57,100.00 |
| 03/14/16 | 10886 | Carroll Air Systems, | 426.12 |
| 03/09/16 | 825 | State of Florida | 2,987.54 |
| 03/11/16 | 827 | Home Depot | 55.82 |
| 03/10/16 | 828 | Home Depot | 160.80 |
| 03/15/16 | 829 | Zendesk | 417.00 |
| 03/15/16 | 10887 | Marathon Equity, LLC | 3,923.49 |
| 03/14/16 | 10888 | Climate Control Mech | 5,000.00 |
| 03/15/16 | 830 | Mass Mutual | 100.00 |
| 03/15/16 | 831 | Home Depot | 54.43 |
| 03/15/16 | 832 | Cemex, Inc. | 960.36 |
| 03/15/16 | 10889 | TD Bank | 40.00 |
| 03/15/16 | 10890 | Community Bank & Tru | 25,000.00 |
| 03/15/16 | 10891 | Fastenal Company | 398.98 |
| 03/16/16 | 833 | Home Depot | 133.78 |
| 03/16/16 | 10892 | Johnstone Supply | 1,777.44 |
| 03/17/16 | 10893 | Dixie Fix, LLC | 2,986.34 |
| 03/17/16 | | Transfer for payroll | 98,850.00 |
| 03/17/16 | 834 | Facility Performance | 10,500.00 |
| 03/17/16 | 835 | The Alexander Group, L | 1,650.00 |
| 03/17/16 | 10894 | Johnstone Supply | 515.92 |
| 03/17/16 | 10895 | Baker Distributing C | 366.09 |
| 03/18/16 | | Payroll | 410.83 |
| 03/18/16 | 10896 | Sullivan Welding & C | 23,147.50 |
| 03/21/16 | 10897 | Ferguson | 4,474.03 |
| 03/21/16 | 10898 | Climate Control Mech | 5,000.00 |
| 03/21/16 | 836 | Department of Revenue | 200.14 |
| 03/21/16 | 10899 | City of Jacksonville | 1,161.84 |
| 03/22/16 | 837 | Mobile Modular Managem | 1,268.10 |
| 03/22/16 | 838 | Sunpass | 39.15 |
| 03/22/16 | 839 | Sunpass | 18.15 |
| 03/22/16 | 840 | Sunpass | 21.85 |

## MOR - 8
### Climate Control Mechanical Services, Inc.
#### As of March 31, 2016

| Date | Num | Name | Credit |
|---|---|---|---|
| 03/22/16 | 841 | Sunpass | 13.30 |
| 03/22/16 | 842 | Sunpass | 270.30 |
| 03/22/16 | 843 | Sunpass | 57.21 |
| 03/22/16 | 844 | Sunpass | 10.10 |
| 03/22/16 | 845 | Sunpass | 21.56 |
| 03/22/16 | 846 | Sunpass | 579.06 |
| 03/22/16 | 847 | Sunpass | 31.35 |
| 03/22/16 | 848 | Clerk of Court | 544.31 |
| 03/22/16 | 849 | Sunpass | 542.69 |
| 03/22/16 | 850 | Sunpass | 491.94 |
| 03/23/16 | 851 | The Alexander Group, L | 485.14 |
| 03/23/16 | 852 | Sunpass | 7.04 |
| 03/23/16 | 10901 | Post Office Tire Ser | 995.01 |
| 03/23/16 | | Transfer | 29,900.00 |
| 03/23/16 | 854 | State of Florida | 2,611.79 |
| 03/23/16 | 855 | Sunpass | 11.00 |
| 03/23/16 | 856 | Sunpass | 228.36 |
| 03/23/16 | 857 | Home Depot | 72.80 |
| 03/23/16 | 858 | Johnstone Supply | 565.92 |
| 03/23/16 | 859 | Sunpass | 5.79 |
| 03/23/16 | 860 | Sunpass | 163.25 |
| 03/23/16 | 861 | Sunpass | 159.00 |
| 03/23/16 | 874 | Sunpass | 10.00 |
| 03/23/16 | 875 | Sunpass | 10.00 |
| 03/24/16 | 876 | Sunpass | 10.00 |
| 03/23/16 | 10905 | Enterprise Fleet Man | 5,499.68 |
| 03/23/16 | 10906 | Guardian | 2,521.35 |
| 03/23/16 | 10907 | The Bancorp Bank | 8,462.55 |
| 03/24/16 | 10908 | Ferguson | 580.54 |
| 03/24/16 | 10909 | Blue Cross Blue Shie | 20,457.12 |
| 03/24/16 | 10910 | Colonial Life | 2,132.15 |
| 03/24/16 | 10911 | Mobile Modular Manag | 199.00 |
| 03/24/16 | 10912 | United Rentals | 5,071.68 |
| 03/24/16 | 10913 | Johnstone Supply | 5,000.00 |
| 03/24/16 | 10914 | Post Office Tire Ser | 392.71 |
| 03/24/16 | 10915 | Stan Weaver & Compan | 95.40 |
| 03/24/16 | 878 | The Alexander Group, L | 700.00 |
| 03/24/16 | 879 | Sunpass | 10.00 |
| 03/24/16 | 880 | Sunpass | 50.00 |
| 03/28/16 | 881 | Holiday Inn Express | 349.80 |
| 03/28/16 | 882 | Budget Print and Signs | 31.80 |
| 03/28/16 | 883 | UPS | 39.72 |
| 03/28/16 | 884 | UPS | 24.64 |
| 03/25/16 | 10916 | Ferguson | 763.21 |

## MOR - 8
## Climate Control Mechanical Services, Inc.
### As of March 31, 2016

| Date | Num | Name | Credit |
|------|-----|------|-------:|
| 03/25/16 | 10917 | Johnstone Supply | 2,846.35 |
| 03/25/16 | 10918 | Stan Weaver & Compan | 347.68 |
| 03/28/16 | 885 | Johnstone Supply | 394.83 |
| 03/28/16 | 886 | Sunpass | 10.00 |
| 03/28/16 | 887 | Johnstone Supply | 1,298.64 |
| 03/28/16 | 888 | Baker Distributing Com | 324.21 |
| 03/28/16 | 889 | Home Depot | 180.55 |
| 03/28/16 | 10919 | Baker Distributing C | 197.58 |
| 03/28/16 | 10920 | Sullivan Welding & C | 23,109.78 |
| 03/29/16 | 890 | Johnson Controls, Inc. | 44,914.92 |
| 03/29/16 | 891 | Richard Flanders, Inc. | 6,750.00 |
| 03/29/16 | 892 | DigiCert, Inc. | 175.00 |
| 03/29/16 | 10921 | Ferguson | 2,853.85 |
| 03/30/16 | 893 | Bernie's Tool & Fasten | 262.35 |
| 03/30/16 | 895 | Mobile Modular Managem | 99.50 |
| 03/30/16 | 896 | United Rentals | 4,695.49 |
| 03/30/16 | 897 | Conklin Metal Industri | 2,247.76 |
| 03/30/16 | 898 | American Plumbing Cont | 14,500.00 |
| 03/30/16 | 899 | Carolinas Construction | 3,878.00 |
| 03/30/16 | 900 | Conklin Metal Industri | 3,269.81 |
| 03/31/16 | 901 | Superior Products Inte | 505.02 |
| 03/31/16 | 902 | Dixie Metal Products, | 150.52 |
| 03/31/16 | 903 | Home Depot | 91.07 |
| 03/31/16 | 904 | Home Depot | 139.17 |
| 03/31/16 | 905 | Sunpass | 50.00 |
| 03/30/16 | 10922 | Baker Distributing C | 2,146.05 |
| 03/30/16 | 10923 | Baker Distributing C | 528.45 |
| 03/30/16 | 10924 | Marion County | 600.00 |
| 03/30/16 | 10925 | Baker Distributing C | 1,313.56 |
| 03/30/16 | 10926 | Conklin Metal Indust | 668.31 |
| 03/30/16 | 10927 | Stan Weaver & Compan | 172.78 |
| 03/31/16 | 906 | The Alexander Group, L | 1,600.00 |
| 03/31/16 | 907 | Trane Orlando Parts (C | 831.89 |
| 03/31/16 | 908 | Home Depot | 28.56 |
| 03/31/16 | 909 | UPS | 24.64 |
| 03/31/16 | 10928 | Facility Performance | 44,488.00 |
| 03/31/16 | 914 | Home Depot | 10.56 |
| 03/01/16 | 953 | New Trent, Inc. | 119.85 |
| 03/07/16 | 954 | Sunbelt Rentals | 4,100.48 |
| 03/25/16 | 955 | United Refrigeration, | 772.08 |
| | | | 856,991.08 |

## MOR - 8
## Climate Control Mechanical Services, Inc.

| Date | Num | Name | Credit |
|------|-----|------|--------|
| 04/01/16 | | Sunbelt Charge | 14.31 |
| 04/01/16 | 910 | Trane Orlando Parts (C | 866.59 |
| 04/04/16 | 10929 | Ferguson | 496.59 |
| 04/04/16 | 10930 | Abatement Technologi | 823.99 |
| 04/04/16 | 10931 | Enterprise Fleet Man | 5,499.68 |
| 04/04/16 | 10932 | Ferrell Gas | 358.97 |
| 04/04/16 | 10933 | Mass Mutual | 325.00 |
| 04/04/16 | 10934 | Pac Van | 265.00 |
| 04/04/16 | 10935 | The Bancorp Bank | 8,462.55 |
| 04/04/16 | | Credit card fees | 19.95 |
| 04/04/16 | 911 | Sunpass | 100.00 |
| 04/04/16 | 912 | Baker Distributing Com | 661.67 |
| 04/04/16 | 913 | United Refrigeration, | 840.81 |
| 04/01/16 | 915 | Home Depot | 102.68 |
| 04/04/16 | 916 | Home Depot | 28.68 |
| 04/04/16 | 10936 | Climate Control Mech | 5,000.00 |
| 04/05/16 | 917 | Facility Performance | 3,450.00 |
| 04/05/16 | 918 | Facility Performance | 12,100.00 |
| 04/05/16 | 919 | The Alexander Group, L | 457.57 |
| 04/05/16 | 920 | The Alexander Group, L | 470.00 |
| 04/05/16 | 921 | State of Florida | 2,376.77 |
| 04/05/16 | 10937 | Eastern Crane & Rigg | 1,837.50 |
| 04/06/16 | | Transfer | 27,500.00 |
| 04/06/16 | 923 | Mass Mutual | 100.00 |
| 04/06/16 | 924 | AT&T Mobility | 1,580.97 |
| 04/06/16 | 925 | Verizon | 1,082.08 |
| 04/07/16 | 926 | Home Depot | 72.47 |
| 04/07/16 | 927 | United Refrigeration, | 2,033.65 |
| 04/06/16 | 10938 | TD Bank | 80.00 |
| 04/06/16 | 10939 | Baker Distributing C | 560.27 |
| 04/06/16 | 10940 | Metro Steel & Pipe S | 765.32 |
| 04/06/16 | 10941 | Southway Crane & Rig | 1,861.80 |
| 04/07/16 | | Credit card fees | 106.47 |
| 04/08/16 | | Fees | 3.00 |
| 04/08/16 | | Fees | 8.00 |
| 04/08/16 | | Fees | 10.00 |
| 04/11/16 | | Credit card fees | 12.52 |
| 04/07/16 | 928 | The Alexander Group, L | 100.00 |
| 04/08/16 | 929 | Sunpass | 83.35 |
| 04/08/16 | 930 | Sunpass | 58.70 |
| 04/08/16 | 931 | Sunpass | 162.50 |
| 04/08/16 | 932 | Sunpass | 154.69 |
| 04/08/16 | 933 | Sunpass | 178.25 |
| 04/08/16 | 934 | Sunpass | 21.82 |

## MOR - 8
## Climate Control Mechanical Services, Inc.

| Date | Num | Name | Credit |
|------|-----|------|--------|
| 04/12/16 | 935 | Sunpass | 100.00 |
| 04/12/16 | 936 | Best Buy Credit Servic | 402.78 |
| 04/07/16 | 10942 | Post Office Tire Ser | 313.29 |
| 04/08/16 | 10943 | York International | 1,936.64 |
| 04/08/16 | 10944 | Sullivan Welding & C | 13,464.00 |
| 04/08/16 | 10945 | Sunpass | 37.92 |
| 04/11/16 | 10946 | Construction Journal | 994.00 |
| 04/11/16 | 10947 | City of Ocala | 92.50 |
| 04/11/16 | 10948 | Baker Distributing C | 952.45 |
| 04/13/16 | | Transfer | 3,750.00 |
| 04/13/16 | 937 | Southway Crane & Riggi | 556.40 |
| 04/13/16 | 938 | United Rentals | 936.89 |
| 04/13/16 | 939 | Home Depot | 199.13 |
| 04/13/16 | 940 | Home Depot | 138.98 |
| 04/13/16 | 941 | The Alexander Group, L | 100.00 |
| 04/13/16 | 10949 | KWI | 293.24 |
| 04/13/16 | 10950 | Federated Insurance | 500.00 |
| 04/13/16 | 10951 | Federated Insurance | 500.00 |
| 04/14/16 | | Transfer for payroll | 30,000.00 |
| 04/14/16 | | United Refrigeration Charge | 656.31 |
| 04/14/16 | 942 | The Alexander Group, L | 1,600.00 |
| 04/15/16 | 943 | Sunpass | 18.80 |
| 04/15/16 | 944 | Lennox Industries, Inc | 452.76 |
| 04/15/16 | 945 | Home Depot | 6.86 |
| 04/15/16 | 946 | Amazon.com | 41.52 |
| 04/15/16 | 947 | Zendesk | 417.00 |
| 04/15/16 | 10952 | Baker Distributing C | 676.36 |
| 04/15/16 | 10953 | Community Bank & Tru | 25,000.00 |
| 04/15/16 | 10954 | Federated Insurance | 968.00 |
| 04/18/16 | | Payroll | 37.95 |
| 04/18/16 | | Fees | 35.00 |
| 04/18/16 | 948 | Lexis Nexis | 28.77 |
| 04/19/16 | 949 | Holiday Inn Express | 702.84 |
| 04/19/16 | 950 | Hub Industrial Supply | 207.97 |
| 04/19/16 | 951 | United Refrigeration, | 1,991.84 |
| 04/19/16 | 952 | National Energy Contro | 90.06 |
| 04/19/16 | 957 | State of Florida | 2,376.77 |
| 04/19/16 | 958 | Department of Revenue | 57.55 |
| 04/19/16 | 10956 | Johnstone Supply | 652.10 |
| 04/19/16 | 10957 | Stan Weaver & Compan | 2,521.74 |
| 04/19/16 | | CHA110/Check 49141 | 877.50 |
| 04/19/16 | 959 | The Alexander Group, L | 500.00 |
| 04/20/16 | 961 | Sunpass | 200.00 |
| 04/18/16 | 962 | Lexis Nexis | 28.77 |

## MOR - 8
## Climate Control Mechanical Services, Inc.

| Date | Num | Name | Credit |
|------|-----|------|-------:|
| 04/18/16 | 963 | Lexis Nexis | 28.77 |
| 04/21/16 | 964 | Lexis Nexis | 143.85 |
| 04/20/16 | 10958 | Cintas Corporation | 331.10 |
| 04/22/16 | 965 | United Refrigeration, | 54.47 |
| 04/22/16 | 966 | Johnstone Supply | 406.19 |
| 04/22/16 | 967 | Johnstone Supply | 575.43 |
| 04/22/16 | 968 | National Energy Contro | 90.06 |
| 04/22/16 | 969 | AmTrust North America | 11,315.65 |
| 04/22/16 | 970 | AmTrust North America | 10,432.96 |
| 04/22/16 | 10959 | Marion County | 60.00 |
| 04/25/16 | 10960 | AT&T Mobility | 1,561.85 |
| 04/25/16 | 10961 | Bethel Products, LLC | 2,995.56 |
| 04/25/16 | 10962 | Blue Cross Blue Shie | 18,806.92 |
| 04/25/16 | 10963 | Enterprise Fleet Man | 5,630.55 |
| 04/25/16 | 10964 | Guardian | 1,458.38 |
| 04/25/16 | 10965 | Pac Van | 265.00 |
| 04/25/16 | 10966 | Verizon | 1,461.05 |
| 04/25/16 | 10968 | Conklin Metal Indust | 227.37 |
| 04/26/16 | 971 | Holiday Inn Express | 475.16 |
| 04/26/16 | 972 | Home Depot | 80.11 |
| 04/26/16 | 973 | Holiday Inn Express | 475.16 |
| 04/27/16 | 974 | Lexis Nexis | 28.77 |
| 04/27/16 | 975 | Lexis Nexis | 28.77 |
| 04/27/16 | 976 | Lexis Nexis | 28.77 |
| 04/27/16 | 977 | Lexis Nexis | 28.77 |
| 04/27/16 | 978 | Lexis Nexis | 28.77 |
| 04/27/16 | 979 | Lexis Nexis | 28.77 |
| 04/27/16 | 980 | Lexis Nexis | 28.77 |
| 04/27/16 | 981 | Lexis Nexis | 28.77 |
| 04/27/16 | 982 | Lexis Nexis | 28.77 |
| 04/26/16 | 10969 | Baker Distributing C | 180.43 |
| 04/27/16 | 983 | The Alexander Group, L | 2,900.00 |
| 04/27/16 | 984 | The Alexander Group, L | 1,380.00 |
| 04/28/16 | 987 | Bernie's Tool & Fasten | 1,017.04 |
| 04/28/16 | 988 | Carolinas Construction | 20,069.00 |
| 04/28/16 | 989 | United Rentals | 5,190.26 |
| 04/27/16 | 10970 | Stan Weaver & Compan | 810.90 |
| 04/28/16 | 990 | The Alexander Group, L | 220.00 |
| 04/29/16 | | Transfer | 63,700.00 |
| 04/29/16 | 991 | The Alexander Group, L | 450.00 |
| 04/29/16 | 992 | Trane Orlando Parts (C | 1,846.39 |
| 04/29/16 | 993 | Florida Dept | 158.75 |
| 04/29/16 | 998 | Johnstone Supply | 1,909.58 |
| 04/26/16 | 999 | Carroll Air Systems, I | 641.30 |

## MOR - 8
## Climate Control Mechanical Services, Inc.

| Date | Num | Name | Credit |
|---|---|---|---|
| 04/29/16 | 1000 | Baker Distributing Co | 242.15 |
| 04/29/16 | 1001 | Johnstone Supply | 2,379.70 |
| 04/29/16 | 1002 | Grainger | 120.59 |
| 04/29/16 | 1003 | Waco | 1,430.31 |
| 04/29/16 | 10971 | Facility Performance | 63,038.00 |
| 04/28/16 | 1010 | Holiday Inn Express | 109.99 |
| 04/29/16 | 1011 | Holiday Inn Express | 219.98 |
| 04/01/16 | 1041 | Baker Distributing Co | 179.97 |
| 04/27/16 | 1042 | Lennox Industries, In | 359.97 |
| 04/13/16 | 1043 | Microsoft.com | 99.99 |
| 04/13/16 | 1044 | National Energy Contr | 93.19 |
| 04/28/16 | 1082 | UPS | 23.36 |
| 04/20/16 | 1083 | Mobile Modular Manage | 208.10 |
| | | | 402,622.33 |

**EXHIBIT G**

| | |
|---|---|
| Account Number: | ⬛181 |
| Capture Date: | November 13, 2015 |
| Item Number: | 21190001436310 |
| Posted Date: | November 13, 2015 |
| Posted Item Number: | 659876 |
| Serial Number: | 9999 |
| Amount: | 58,200.00 |



## CenterState

NATIVE HUBZONE SOLUTIONS, LLC
2695 NW 4TH ST
OCALA FL 34475

---

Name **Native Hubzone Solutions LLC**

Account No. ⬛ **4181**          **11-13-15**          SS-1403/631
                                        Date                    21

Pay to the
Order of **Louie Wise**          $ **58,200.00**

**Fifty-eight Thousand Two hundred and** 00/18          Dollars

**CenterState**
BANK
Ocala Downtown Office

For **7,000          51,200**

---

CHECK BACK (shown reversed/mirrored)

| | | |
|---|---|---|
| Checks | .00Total | 58,200.00 |
| Cash In | .00 Out | .00 |
| ID: | | |
| ON | 104   TRN   15:26:47  11/13/2015 | |
| ON-US CHECK   Acct (R$) | ⬛181 | |
| TLR#   2104 | | |

111315   6467   21190001436310   000611200058311489305878

Account Number:        ●●●●●81
Capture Date:          November 13, 2015
Item Number:           21190001436317
Posted Date:           November 13, 2015
Posted Item Number:    659883
Serial Number:         9999
Amount:                5,000.00



NATIVE HUBZONE SOLUTIONS, LLC
2695 NW 4TH ST
OCALA FL 34475

Name  Native Hubzone Solutions LLC

Account No  20334181          11-13-15          63-1403/631
                                        Date        21

Pay to the
Order of    Ralph Pressley                    $ 5,000.00

Five Thousand and  00/100        Dollars

CenterState
BANK
Ocala Downtown Office

For

---

Checks        101010        5,000.00
Cash In        .00    .00        .00
101:
TRN    66    15:24:28 11/13/2015    ON
Acct #(s)    ●●●●181
ON-US CHECK    TLR#    2104

111315-10457 21190E883 00143E317>063114830<CSB

Account Number:        ████4181
Capture Date:          December 08, 2015
Item Number:           21190001457691
Posted Date:           December 08, 2015
Posted Item Number:    363367
Serial Number:         9999
Amount:                6,000.00


**CenterState**

NATIVE HUBZONE SOLUTIONS, LLC
2695 NW 4TH ST
OCALA FL 34475

Name _NATive Hub Zone_

Account No ████████4181          12/8/15          E3-1403/631 21
                                 Date

Pay to the
Order of  _Louie wise / cash_          $ 6000.00

_Six thousand & No/1000_          Dollars

**CenterState**
B A N K
Ocala Downtown Office

For _____

-6,000.00   Total

6,000.00   Cash, In
.00   00 Out
ON  15:24:58 12/08/2015   53   TRN
ID:
4181   Acct #(s)
ON-US CHECK   TLR#   3104
129815  +8387 21190815 599811>863114838<CSB

Account Number:       ████4181
Capture Date:         December 08, 2015
Item Number:          21190001457692
Posted Date:          December 08, 2015
Posted Item Number:   363368
Serial Number:        9999
Amount:               6,000.00



NATIVE HUBZONE SOLUTIONS, LLC
2695 NW 4TH ST
OCALA FL 34475

Name  *Native Hub Zone*

Account No.  ████4181          12/8/15          63-1403/631
                                                           21
                                                  Date

Pay to the
Order of  *Ralph Pressley / cash*          | $ 6,000 00

*Six Thousand & no/100*  ——————  Dollars

**CenterState**
B A N K
Ocala Downtown Office

For

Checks                    1010100         6,000.00
Cash In          .00    1n0 00:        6,000.00
                              :01
                     TRN        55  15:22:35  12/08/2015  CN-
                     Acct #(s)    4181
                     CN-U0R1CHECKEN-NO
TLFR# 2104                                         TLFR# 2104
120315 ~8397 211909909 081457692>863114930<CSB
                     TRN        55  15:26:33  12/08/2015  CN
                     ID:
                     Cash In          .00 Out         6,000.00
                     Checks           .00 Total       6,000.00



**CenterState**

| | |
|---|---|
| Account Number: | ████181 |
| Capture Date: | February 18, 2016 |
| Item Number: | 5258036295954 |
| Posted Date: | February 18, 2016 |
| Posted Item Number: | 507822 |
| Serial Number: | 1011 |
| Amount: | 2,500.00 |

NATIVE HUBZONE SOLUTIONS, LLC
2695 NW 4TH ST
OCALA FL 34475



Native Hubzone Solutions, LLC
2695 NW 4th Street
Ocala, FL 34475

CenterState Bank
Ocala, FL
63-1400/831

1011

2/17/2016

PAY TO THE ORDER OF   Louie Wise III                     $ **2,500.00

Two Thousand Five Hundred and 00/100************************************************ DOLLARS

Louie Wise III

Memo





Account Number: ██████4181
Capture Date: March 04, 2016
Item Number: 21190001533477
Posted Date: March 04, 2016
Posted Item Number: 664334
Serial Number: 1012
Amount: 2,500.00

 CenterState

NATIVE HUBZONE SOLUTIONS, LLC
2695 NW 4TH ST
OCALA FL 34475



THE FACE OF THIS DOCUMENT HAS A COLORED BACKGROUND ON WHITE PAPER AND ORIGINAL DOCUMENT SECURITY BORDER ON BACK WITH PADLOCK SECURITY ICON.

Native Hubzone Solutions, LLC
2695 NW 4th Street
Ocala, FL 34475

CenterState Bank
Ocala, FL
63-1403/631

1012

3/3/2016

PAY TO THE
ORDER OF    Marathon Equity, LLC                                         $ **2,500.00

Two Thousand Five Hundred and 00/100************************************************    DOLLARS

Marathon Equity, LLC
PO Box 3630
Ocala, FL 34478

Memo

039416 -9587 21198911 991533477>863114838<CSB

Account Number:    ████81
Capture Date:        March 17, 2016
Item Number:        21190001543672
Posted Date:        March 17, 2016
Posted Item Number: 527197
Serial Number:      1013
Amount:             1,000.00

 **CenterState**

NATIVE HUBZONE SOLUTIONS, LLC
2695 NW 4TH ST
OCALA FL 34475



**Native Hubzone Solutions, LLC**           CenterState Bank           **1013**
2695 NW 4th Street                          Ocala, FL
Ocala, FL 34475                             63-1403/831
                                                             3/17/2016

PAY TO THE    Louie Wise III                                    $ **1,000.00
ORDER OF

One Thousand and 00/100*************************************************************** DOLLARS

        Louie Wise III

Memo

Account Number:          ████181
Capture Date:            March 17, 2016
Item Number:             21190001543706
Posted Date:             March 17, 2016
Posted Item Number:      527230
Serial Number:           1014
Amount:                  1,000.00



NATIVE HUBZONE SOLUTIONS, LLC
2695 NW 4TH ST
OCALA FL 34475



Native Hubzone Solutions, LLC
2695 NW 4th Street
Ocala, FL 34475

CenterState Bank
Ocala, FL
63-1403/631

1014

3/17/2016

PAY TO THE
ORDER OF    Marathon Equity, LLC                          $ ***1,000.00

One Thousand and 00/100****************************************************************    DOLLARS

Marathon Equity, LLC
PO Box 3630
Ocala, FL 34478

Memo

831716 -8184 21198882 E81543786>853114C38<CSB



| | |
|---|---|
| Account Number: | ████181 |
| Capture Date: | May 25, 2016 |
| Item Number: | 5258038708133 |
| Posted Date: | May 25, 2016 |
| Posted Item Number: | 406314 |
| Serial Number: | 1015 |
| Amount: | 500.00 |

NATIVE HUBZONE SOLUTIONS, LLC
2695 NW 4TH ST
OCALA FL 34475

---

**Native Hubzone Solutions, LLC**
2695 NW 4th Street
Ocala, FL 34475

CenterState Bank
Ocala, FL
63-1403/631

1015

5/20/2016

PAY TO THE
ORDER OF    Louie Wise III                                    $ **500.00

Five Hundred and 00/100***********************************************    DOLLARS

Louie Wise III

Memo

---

3482465670

ENDORSE HERE

DO NOT WRITE, STAMP OR SIGN BELOW THIS LINE
RESERVED FOR FINANCIAL INSTITUTION USE

Account Number:        ████181
Capture Date:          May 23, 2016
Item Number:           21190001601810
Posted Date:           May 23, 2016
Posted Item Number:    239326
Serial Number:         1016
Amount:                500.00



NATIVE HUBZONE SOLUTIONS, LLC
2695 NW 4TH ST
OCALA FL 34475



THE FACE OF THIS DOCUMENT HAS A COLORED BACKGROUND ON WHITE PAPER AND ORIGINAL DOCUMENT SECURITY SCREEN ON BACK WITH PADLOCK SECURITY ICON.

Native Hubzone Solutions, LLC                CenterState Bank          1016
2695 NW 4th Street                               Ocala, FL
Ocala, FL 34475                                  63-1403/631

                                                                   5/20/2016

PAY TO THE    Marathon Equity, LLC                        $ **500.00
ORDER OF

    Five Hundred and 00/100************************************************    DOLLARS

    Marathon Equity, LLC
    PO Box 3630
    Ocala, FL 34478

Memo

852316 -0816 21199002 881681818>863114838<CSB

ENDORSE HERE
Pay to the Order of
CenterState Bank
For Deposit Only
Marathon Equity, LLC
661

Deposit Only
Shadowood Villas, LLC
CenterState Bank
742