UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION
www.flmb.uscourts.gov

In re:

| | |
|---|---|
| Climate Control Mechanical Services, Inc., | Chapter 11<br>Case No. 3:15-bk-02248-JAF |
| Base 3, LLC,<br>The Alexander Group, LLC,<br>Facility Performance, LLC, | Jointly Administered with<br>Case No. 3:15-bk-02249-JAF<br>Case No. 3:15-bk-02250-JAF<br>Case No. 3:15-bk-05021-JAF |
| Debtors.<br>_____/ | **Hearing: January 31, 2018 at 10:00 a.m.** |

**UNITED STATES TRUSTEE'S MOTION
TO APPOINT CHAPTER 11 TRUSTEE OR,
IN THE ALTERNATIVE, CONVERT TO CHAPTER 7 THE
CASES OF CLIMATE CONTROL MECHANICAL SERVICES, INC., BASE 3,
LLC, THE ALEXANDER GROUP, LLC, AND FACILITY PERFORMANCE, LLC**

Daniel M. McDermott, United States Trustee for Region 21 ("United States Trustee"), moves this Court to enter an order directing the appointment of a chapter 11 trustee over the estates of the four jointly administered cases of Climate Control Mechanical Services, Inc., Base 3, LLC, The Alexander Group, LLC, and Facility Performance, LLC (collectively the "Debtors"), or, in the alternative, to convert these cases to chapter 7. In support, the United States Trustee states:

**STANDING**

1. The United States Trustee has standing to file motions to dismiss or convert chapter 11 cases, and to seek the appointment of a Chapter 11 trustee, under 11 U.S.C. §§ 307, 1104(a), 1104(c) and 1112(b)(1), as well as 28 U.S.C. § 586. *See also* Collier on Bankruptcy ¶ 1112.04[1] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).

**BACKGROUND**

2. On May 18, 2015, Climate Control Mechanical Services, Inc. ("Climate Control"), Base 3, LLC ("Base 3"), and The Alexander Group, LLC ("Alexander Group") each filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code signed by Louie Wise, III ("Wise") as President and sole owner or member of each of the three Debtors.

3. The Court entered its Order Directing Joint Administration of Cases (Doc. No. 114) on July 7, 2015 ("Initial Joint Administration Order") which provides for the joint administration for procedural purposes only of the cases of Climate Control, Base 3 and Alexander Group, and designates Climate Control as the lead case. In addition, it provides that each Debtor must file a separate monthly financial report in the lead case.

4. On November 16, 2015, Facility Performance, LLC (Case No. 3:15-bk-05021-JAF; "Facility Performance") filed a voluntary petition for relief under Chapter 11 signed by Wise as manager and sole member of the Debtor.

5. The Debtors filed a motion seeking the joint administration of Facility Performance with the other related cases on December 15, 2015 which the Court granted, and entered its Order Adding Additional Case to Those Previously Consolidated for Joint Administration (Doc. No. 239).

6. The Court entered an Order Authorizing Debtor-in-Possession to Operate Business ("DIP Order") in each of the four cases.[1] The DIP Order entered in each case authorizes the debtor, consistent with 11 U.S.C. § 345, to open and maintain bank accounts "for the deposit, investment, and disbursement of monies of the estate." The DIP Orders entered in Climate Control, Base 3 and Alexander Group, further provide,

---

[1] Climate Control (Case No. 3:15-bk-02248-JAF; Doc. No. 15); Base 3, LLC (Case No. 3:15-bk-02249-JAF; Doc. No. 19); The Alexander Group, LLC (Case No. 3:15-bk-02250-JAF; Doc. No. 13); and Facility Performance (Case No. 3:15-bk-05021-JAF; Doc. No. 2).

…2. The debtor-in-possession is authorized, subject to the control of the Court, to operate its business and manage its property, and to employ, discharge, fix the salaries and compensations… except salaries and compensation of the debtor or its attorneys, officers, directors and stockholders, whose compensation shall be determined by the Court…

4. The debtor-in-possession is authorized to pay all necessary and current expenses of operating its business… such payments may only be made for post-petition obligations…

5. Unless otherwise ordered by the Court, the debtor-in-possession, consistent with Section 345 of the Bankruptcy Code, is authorized to open and maintain bank accounts for the deposit, investment, and disbursement of monies of the estate...

6. Unless otherwise ordered by the Court, the debtor-in-possession is directed to segregate all monies withheld from employees or collected for taxes, to deposit these monies in a separate bank account, and to pay them over to the proper authorities when due….

7. Unless otherwise ordered by Court, the debtor-in-possession shall close its present books of account and shall open and maintain new books of accounts as of the date of the petition, showing all earnings, expenses, receipts and disbursements of the debtor subsequent to such date, and shall preserve proper voucher for all payments…

9. The debtor-in-possession shall file with the Court by the twenty-first day of the month succeeding the reporting period: a. a monthly cash flow statement reflecting all income and all expenses paid during the month of the report; … a monthly bank account reconciliation report showing for each account, the account number, opening balance at the beginning of the month, amount disbursed, amount deposited, and the closing balance. …The report shall also include a list of all checks by number, date written, name of payee, consideration and amount…

10. These conditions and the limitations imposed on the debtor-in-possession by the Bankruptcy Code Section 704(7) and the Fed. R. Bank. P. 2015(3) shall remain in full force and effect unless vacated or modified by the Court, the plan is confirmed, the case is dismissed or converted, and the Court retains jurisdiction to alter, modify, amend, revoke, enforce and impose sanctions with respect to each provision of this Order.

7. A meeting of creditors was held and concluded in each of the four cases.

8. To date, a committee of unsecured creditors has not been appointed by the United States Trustee in any of the four cases.

9. The Amended Case Management Summary (Doc. No. 27; "Case Summary") filed on May 22, 2015 in Climate Control was filed as a "combined case management summary" for the initial three debtors. The Case Summary reflects that Climate Control, Base 3 and Alexander

Group are wholly owned and controlled by Wise who receives no compensation from these initial debtors but rather receives his compensation from Facility Performance and that these debtors are engaged in the construction business with each servicing a different segment of the construction industry.

10. In the Case Management Summary filed by Facility Performance on November 22, 2015 (Doc. No. 11; Case No. 3:15-bk-05021-JAF), the Debtor states that it too is owned solely by Wise who received compensation of $26,726 in 2015 and explains that it is in the business of providing management services to its affiliates at a cost of 9% of gross revenues.

11. On September 20, 2017, the United States Trustee filed a Motion to Dismiss or Convert to Chapter 7 the cases of the Debtors (Doc. No. 473) for cause including, the failure to file monthly operating reports ("MORs"), failure to file a disclosure statement and plan, and failure to pay quarterly fees; the Court set the Motion for preliminary hearing on October 16, 2017. During the week prior to the preliminary hearing, the Debtors filed the delinquent MORs through August 2017 and filed a plan and disclosure statement.[2] The Debtors however, were unable to pay delinquent quarterly fees which exceeded $37,000. The Court entered an Order Conditionally Denying the United States Trustee's Motion to Dismiss or Convert the Cases (Doc. No. 495) which required the payment of all past due quarterly fees, including fees due for the third quarter of 2017, by November 1, 2017. After seeking two extensions of the November 1, 2017 deadline, the Debtors paid the delinquent fees on December 7, 2017, the day before the expiration of the second extension.[3]

---

[2] The Disclosure Statement (Doc. No. 487) and Plan (Doc. No. 486) were filed on October 13, 2017. The Debtor filed an Amended Plan (Doc. No. 489) on October 15, 2017. The hearing on approval of the Disclosure Statement and on the Objections filed by the United States Trustee (Doc. No. 543) and by Ciraco Electric, Inc. (Doc. No. 544), held on January 2, 2018, was continued to March 5, 2018; to date, the Debtors' Plan has not been confirmed.
[3] The amount of quarterly fees paid on December 7, 2017 through the third quarter of 2017 to bring the Debtors current, is likely incorrect given the understatement of disbursements by the Debtors in the MORs filed with the Court as described in the Examiner's Report; it is likely that the Debtors have underpaid quarterly fees for past

12. On November 2, 2017, Ciraco Electric, Inc. ("Ciraco") filed an Emergency Motion to Appoint Trustee or, in the Alternative, Convert Cases to Chapter 7 (Doc. No. 507; "Trustee Motion") and an Emergency Motion to Freeze Unauthorized Bank Accounts and Other Assets (Doc. No. 508; "Unauthorized Accounts Motion"). The Court held a preliminary hearing on November 9, 2017 on the Trustee Motion and the Unauthorized Accounts Motion.

13. Ciraco made several assertions in the Trustee Motion and Unauthorized Accounts Motion which were not disputed by Debtors at the preliminary hearing on November 9, 2017, including Debtors' failure to disclose bank accounts at unauthorized depositories maintained and used by the Debtors to execute numerous and significant undisclosed transactions, and their failure to attach bank statements to MORs filed with the Court.

14. The Trustee Motion is set for final hearing on January 31, 2018 at 10:00 a.m.

15. On December 14, 2017, with the consent of the Debtors, the Court entered an Order Granting in Part Emergency Motion to Freeze Unauthorized Bank Accounts and Other Assets (Doc. No. 540; "Order on Unauthorized Accounts").

16. The Order on Unauthorized Accounts provides that by December 28, 2017: (1) Wise shall file with the Court a statement under penalty of perjury a list of all banking and financial accounts held in the name of any Debtor or Debtors, since May 18, 2015, that are not authorized debtor-in-possession accounts; and (2) the Debtors shall close all Non-DIP accounts, transfer funds in those accounts to the appropriate debtor-in-possession accounts, and Wise shall file with the Court a statement under penalty of perjury attesting to compliance.

17. On January 8, 2018, Wise, as the "corporate representative" of the Debtors, filed a Statement Regarding Non-Debtor in Possession Accounts (Doc. No. 551; "Statement of Non-DIP

---

quarters and are in fact currently delinquent in their payments beyond the payments currently due for the fourth quarter of 2017.

Accounts"). In the Statement of Non-DIP Accounts filed under penalty of perjury, Wise identifies and lists eight accounts previously undisclosed by the Debtors that are not authorized debtor-in-possession accounts and are referred to as the "Non-Debtor in Possession Accounts" (the "Non-DIP Accounts"). In the Statement of Non-DIP Accounts, the Debtors state that the Non-DIP Accounts have now been closed and the monies "transferred to the appropriate DIP account." The Non-DIP Accounts reflect numerous transactions that were not reported on MORs filed by the Debtors under the penalty of perjury during the pendency of their cases. Wise was an authorized signatory on each of the accounts.

18. The Order on Unauthorized Accounts further provides that by January 4, 2018 Wise, as an authorized representative of and on behalf of the Debtors, shall provide to counsel for Ciraco and the United States Trustee: (1) a statement under penalty of perjury that identifies and lists all pre-paid debit or smart cards, or any pre-paid instrument, purchased by the Debtor or by Mr. Wise on behalf of any Debtor since May 18, 2015; and (2) copies of all statements and records which identify the purchase dates, the card/account number, the issuing bank, and the current balance for any pre-paid debit or smart cards, or any pre-paid instrument, purchased by any Debtor or by Mr. Wise on behalf of any Debtor, since May 18, 2015. To date, the Debtors have not provided either of these items to the United States Trustee.

19. Lastly, the Order on Unauthorized Accounts requires each of the Debtors amend monthly operating reports previously filed and attach copies of bank account statements for all accounts held by the respective Debtors within 21 days of the date of the order, or by January 4, 2018.

20. To date, the Debtors have not filed the required amended MORs required by the Order on Unauthorized Accounts.

21.    The Debtors are also again delinquent in filing MORs; each Debtor has failed to file MORs for September, October and November 2017.[4]

22.    The Debtors last filed a monthly operating report on October 11, 2017 for the reporting period of August 2017.  The monthly operating reports filed for August 2017 reflect significant delinquencies in the payment of post-petition tax obligations owed to both the Internal Revenue Service ("IRS") in the total amount of $204,695.33 ($202,251.47 + $2,443.86) and to the State of Florida Department of Revenue ("DOR") in the total amount of $10,566.92.  The IRS has filed a Request for Payment of Administrative Expense in all of the cases in the total amount of $ 366,012.58, which confirms the significant administrative claims incurred by the Debtors and which indicates greater amounts are due than what is listed by the Debtors in their respective August 2017 MORs.  The amounts due as shown on the August 2017 MORs and on the Request for Payment of Administrative Claim filed by the IRS are as follow:

| Debtor | "Fed W/H/PR Tax" due to IRS | "Federal Unemp" due to IRS | **IRS Request for Payment of Administrative Claim** | Amount due to DOR |
|---|---|---|---|---|
| Climate Control (Doc. No. 482) | $ 179,300.77 | $ 1,694.26 | **$ 337,153.29 (Claim 52-1)** | **$ 6,782.04** <br> **$ 3,415.73** |
| Base 3 (Doc. No. 483) | (none listed) | $ 347.31 | **$ 15,287.38 (Claim 15-1)** | **$  369.15** |
| Alexander Group (Doc. No. 484) | (none listed) | $ 20.17 | **$   735.94 (Claim 23-1)** | (none listed) |
| Facility Performance (Doc. No. 485) | $ 22,950.70 | $ 382.12 | **$ 12,835.97 (Claim 5-1)** | (none listed) |
| **Total Administrative Expenses Due** | **$ 202,251.47** | **$ 2,443.86** | **$ 366,012.58** | **$ 10,566.92** |

23.    The August 2017 MORs filed by each of the Debtors also list significant post-petition unsecured debt incurred during the pendency of these cases by each of the Debtors.  The

---

[4] The Debtors' December 2017 MORs are due to be filed on January 21, 2018.

Debtors have incurred post-petition accounts payable of $1,825,769.64 during the pendency of their cases through August 2017. The Debtors list the following accounts payable balance on Attachment 2 to their respective August 2017 MORs:

| Debtor | Opening Balance | PLUS Indebtedness incurred in August 2017 | MINUS Amounts Paid | **Ending Balance** |
|---|---|---|---|---|
| Climate Control | $ 986,342.11 | $ 462,177.81 | $ 404,246.84 | **$1,044,273.08** |
| Base 3 | $ 81,988.44 | $ 29,270.22 | $ 23,931.43 | **$ 87,327.23** |
| Alexander Group | $ 27,477.41 | $ 1,582.12 | $ 1,582.12 | **$ 27,477.41** |
| Facility Performance | $ 665,523.61 | $ 405,415.15 | $ 404,246.84 | **$ 666,691.92** |
| **Total Post-Petition Accounts Payable** | | | | **$1,825,769.64** |

24. The Debtors currently owe quarterly fees for the fourth quarter of 2017 which became due on December 31, 2017 and are due to be paid by January 31, 2018. The amount owed by each Debtor, which is estimated because of their failure to file timely and accurate MORs, is as follows: Climate Control, $6,500; Base 3, $1,625; Alexander Group, $325; and Facility Performance, $6,500.

25. At the preliminary hearing on November 9, 2017, the Debtors also consented to the appointment of an examiner in the cases.

26. On November 15, 2017, the Court entered an Order Directing the United States Trustee to Appoint an Examiner (Doc. No. 526) pursuant to 11 U.S.C. § 1104(c) and directing the Examiner to file a preliminary or final report with the Court concerning his investigation of the financial affairs of the Debtors within 30 days.

27. The United States Trustee filed a Notice of Appointment of Chapter 11 Examiner, Paul M. Dumm (Doc. No. 529; "Examiner") on November 22, 2017 and, upon the filing of an Acceptance of Appointment (Doc. No. 533) and Application for Approval of Appointment (Doc. No. 534), the Court entered an Order Approving Appointment of Chapter 11 Examiner (Doc. No.

536).

28. On December 29, 2017, the Examiner filed a Preliminary Report (Doc. No. 545; "Examiner's Report"). The Examiner's Report details numerous accounts of fraud, dishonesty, and/or gross mismanagement of the affairs of the Debtors by current management, before and after the commencement of the cases.

29. In the Examiner's Report, the Examiner explains that his examination revealed "a number of significant and questionable transactions that were either not reported in the Debtors' MORs, or were reported in such a way that the transactions could not be identified, and… the MORs of the Debtors do not reliably report the transactions of the Debtors."[5] The Examiner reports that "non-DIP bank accounts were opened after the date of the filing of the Debtors' bankruptcy petitions and were used to facilitate the deposit and disbursement of funds from specific transactions, such as the settlement of claims with BP, or for specific purposes, such as the use of PEX cards. Transactions within these non-DIP accounts and DIP accounts were recorded in such a way that the true nature of the transactions was disguised." *Id.*

30. Among the numerous "significant and questionable transactions" included in the Examiner's Report are the following:

   a. Alexander Group received litigation settlement proceeds of $67,511 by a check dated December 14, 2016 which were deposited into one of the Non-DIP Accounts (Center State Bank account number xxxx9204) on December 19, 2016, the same day the account was opened by Wise and Ralph Pressley ("Pressley"). The deposit was not accounted for in the accounting records of Alexander Group or ever disclosed in its MORs. The settlement funds were subsequently disbursed via two checks payable to cash and signed and endorsed by Pressley on December

---

[5] *See* Examiner's Report, Doc. No. 545 at page 3.

30, 2016 in the amount of $30,000 and on January 12, 2017 in the amount of $35,000.  The remaining balance in the account of $2,486 was withdrawn by Wise on January 27, 2017.  Neither the deposits nor the disbursements were disclosed in the in the MORs filed by Alexander Group, recorded in its General Ledger accounts, or noted in any other bank account of any of the Debtors, and explanations provided by Wise to the Examiner as to the ultimate disposition of the monies could not be verified by the Examiner.[6]

b. While the Debtors maintain their DIP bank accounts at Wells Fargo Bank, the Examiner identifies four accounts at CenterState Bank and one at Heritage Bank that were used by the Debtors between May 2015 and November 2017, and another account at CenterState Bank that was opened under the name of Native Hubzone Solutions, LLC ("Native") an entity "ultimately owned by Mr. Wise" where significant unreported transactions with the Debtors transpired.[7]  The transactions in these accounts, as detailed in the Examiner's Report, are numerous and of significant amounts.[8]

c. The Examiner also reports that Native had no business operations prior to August 2015 and shared the same physical address as the Debtors although it made no payments for rent or for employees.[9]  It appears likely Native likely operated to divert a business opportunity from the Debtors related to a contract for work at the University of Florida; on April 29, 2015, Climate Control was engaged as a subcontractor by Skanska USA Building on a project at the University of Florida.

---

[6] *See* Examiner's Report, Doc. No. 545 at pages 4-6.
[7] *See* Examiner's Report, Doc. No. 545 at pages 10-26.
[8] The Statement of Accounts filed by the Debtor and signed by Wise under penalty of perjury confirms the existence of eight Non-DIP Accounts.  The Debtor however, has failed to provide bank statements for these accounts.
[9] *See* Examiner's Report, Doc. No. 545 at pages 15-23.

      The Examiner's Report summarizes receipts and disbursements in Native's account (Center State Bank account number xxxx4181), including; a deposit of $706,700 from the University of Florida; a deposit of $145,936.40 from Climate Control and disbursements totaling $350,224.34 to Climate Control; a disbursement to Facility Performance of $225,000; and disbursements to Wise of $68,200, Pressley of $15,000, and Richard Perry, counsel for the Debtors, of $3,000.[10]

d. The Debtors made numerous unauthorized disbursements from the Non-DIP Accounts and the DIP Accounts including: the post-petition repayment of a loan to Wise in January 2016 in the amount of $58,653.60[11]; payments to professionals George Ortiz and Widerman Malek PL, retained with Court approval, but paid without a fee application on file or an order of the Court authorizing the payments; and payments to professionals whose retention and payment were never authorized or approved by the Court, including attorneys, Roger Friedline, Trow, Dobbins & Pisani, P.A., Paul J. Guifoil, Krizner Group and Buchanan Ingersoll[12]; and

e. The use of PEX prepaid cards through a Non-DIP account (Center State Bank account number xxxx4132), opened by Wise who is also the only authorized signor on the account. The Examiner reports that "[b]etween June 2015 and September 2017, monthly deposits into CCMS CS x4132 ranged from $14,600 to $28,000 and averaged $19,646 [and] … monthly disbursements from CCMS CS

---

[10] *See* Examiner's Report, Doc. No. 545 at page 18.
[11] *See* Monthly Operating Report for Facility Performance (Doc. No. 274, page 4) listed as "Officer Loan".
[12] *See* Examiner's Report (Doc. No. 545, pages 34-81).

x4132 ranged from $15,000 to $28,043, and averaged $19,646."[13]  The Examiner states that the activity in this Non-DIP account was not recorded in the MORs and "[i]nstead, the disbursement of funds into CCMS CS x4132 was reported as "Miscellaneous Expense" on the disbursement listing and as Vehicle Expenses on the Schedule of Receipts and Disbursements."[14]

31.     Throughout the pendency of these cases, the Debtors have been managed and under the control of Wise.  Given the misconduct of the Debtors and their failure to comply with the Orders of this Court and with the requirements of the Bankruptcy Code as detailed above, the United States Trustee seeks the appointment of an objective, disinterested Chapter 11 trustee to operate the Debtors and manage the Debtors' affairs.  In the alternative, the United States Trustee seeks conversion of these cases to Chapter 7 cases, wherein an independent Chapter 7 trustee will be appointed and pursue claims of the Debtors for the benefit of their creditors.

## ARGUMENT

### Conversion Pursuant to 11 U.S.C. Section 1112

32.     Pursuant to 11 U.S.C. § 1112(b), where "cause" is shown on the motion of a party in interest, the bankruptcy court shall convert to chapter 7 or dismiss a chapter 11 case, whichever is in the best interest of creditors and the estate, unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

33.     A non-exhaustive list of examples of "cause" warranting dismissal or conversion is set forth in 11 U.S.C. § 1112(b)(4) which includes, without limitation, the following:  (i) substantial or continuing loss to or diminution of the Debtor's estate and a lack of reasonable

---

[13] *See* Examiner's Report (Doc. No. 545, pages 30-33).
[14] *See* Examiner's Report (Doc. No. 545, pages 32).

likelihood of rehabilitation; (ii) gross mismanagement of the estate; (iii) failure to comply with orders of this Court; (iv) unexcused failure to satisfy timely any filing or reporting requirement established by title 11 or by any rule applicable to a case under Chapter 11; and (vi) failure to timely pay taxes owed after the date of the order for relief or to file tax returns due after the date of the order for relief.  11 U.S.C. §§ 1112(b)(4)(A), (B), (E), (F) and (I).

34.     As set forth above in detail, there is cause to convert or dismiss these cases due to the following:

    a. Substantial, and possibly continuing, losses to, and diminution of, estate assets, including personal property and funds in the Debtors' bank accounts;

    b. The Debtors' failure to comply with the DIP Orders and the Order on Unauthorized Accounts;

    c. The gross mismanagement of the estates of the Debtors;

    d. The Debtors' failure to file MORs as they become due; and

    e. The Debtors' failure to timely pay taxes coming due post-petition.

35.     The matters set forth above constitute grounds for the dismissal or conversion of these cases under 11 U.S.C. § 1112(b) for cause, and these cases should be converted to Chapter 7 or dismissed.

**Appointment of a Chapter 11 Trustee**

36.     In the event this Court is not inclined to dismiss or convert these cases for cause pursuant to section 1112, then the United States Trustee seeks the appointment of a Chapter 11 trustee pursuant to 11 U.S.C. § 1104(a).[15]

---

[15] Section 1104(e) directs the United States Trustee to move for appointment of a trustee under 11 U.S.C. § 1104(a) if "there are reasonable grounds to suspect that current members of the governing body of the debtor" or "members of the governing body who selected the debtor's chief executive or chief financial officer" participated in wrongdoing.

37. Section 1104(a) of the Bankruptcy Code provides as follows:

(a) At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of a trustee –

(1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; or

(2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor.

11 U.S.C. § 1104(a).

38. Through section 1104(a)(1), Congress has mandated that the chapter 11 debtor-in-possession, which acts as a fiduciary of the creditors of the bankrupt estate, be an honest broker. *See Wolf v. Weinstein*, 372 U.S. 633, 651 (1963) (acknowledging the willingness of courts to leave debtors in possession "is premised upon an assurance that the officers and managing employees can be depended upon to carry out the fiduciary responsibilities of a trustee"); *In re V. Savino Oil and Heating Co.*, 99 B.R. 518, 526 (Bankr. E.D.N.Y. 1989) (stating that "the willingness of Congress to leave a debtor-in-possession is premised on an expectation that current management can be depended upon to carry out the fiduciary responsibilities of a trustee. And if the debtor-in possession defaults in this respect, Section 1104(a)(1) [of the Code] commands that stewardship of the reorganization effort must be turned over to an independent trustee.") (cited with approval in *In re Marvel Entertainment Group, Inc.*, 140 F.3d 463, 474 (3d Cir. 1998)).

39. The United States Trustee asserts that the same cause that exists to support the dismissal or conversion of these cases pursuant to section 1112 as set forth above also constitutes

cause for the appointment of a Chapter 11 trustee pursuant to section 1104.

40.     Most importantly, the United States Trustee is concerned about the Debtors' deliberate concealment of estate monies in undisclosed bank accounts at unauthorized depositories, their total disregard of the Orders of this Court and the duties of a debtor-in-possession, the filing of incomplete and/or inaccurate MORs, the unauthorized retention of professionals, the unauthorized payment of professionals and insiders, the possible misappropriation of monies of the estate as set forth above and described in the Examiner's Report and, as evidenced by the Debtors' Statement of Non-DIP Accounts signed by Wise and filed with the Court, and their failure to timely pay taxes due post-petition resulting in administrative expense claims asserted by the IRS of $ 366,012.58, and post-petition accounts payable of $ 1,825,769.64.

41.     The Debtors were managed and under the direct control of Wise before they filed their bankruptcy petitions and during the pendency of their respective cases. The gross mismanagement and fraudulent filings, including MORs, by the Debtors warrants the appointment of a Chapter 11 trustee in these cases.

WHEREFORE, based on the foregoing, the United States Trustee requests the Court enter an Order granting this motion, dismissing or converting the Debtors' cases to chapter 7, or

[*Intentionally left blank*]

in the alternative, appointing a Chapter 11 trustee, and granting such other and further relief as is just and proper.

       DATED:  January 12, 2018

                                        Respectfully submitted,

                                        DANIEL M. MCDERMOTT
                                      UNITED STATES TRUSTEE
                                      Region 21

                                      /s/  Miriam G. Suarez
                                      Miriam G. Suarez, Trial Attorney
                                      Florida Bar No.:  756105
                                      Office of the United States Trustee
                                      U.S. Department of Justice
                                      George C. Young Federal Building
                                      400 W. Washington Street, Suite 1100
                                      Orlando, FL 32801
                                      Telephone No.:   (407) 648-6301, Ext. 126
                                      Facsimile No.:    (407) 648-6323
                                      Miriam.G.Suarez@usdoj.gov

## **CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that on January 12, 2018, I caused a true and correct copy of the foregoing Motion to be served electronically through CM/ECF to all parties having appeared electronically in the instant matter and by U.S. Mail, postage prepaid, on the following:

| | |
|---|---|
| Climate Control Mechanical Services, Inc.<br>P.O. Box 3038<br>Ocala, FL 34478 | Facility Performance, LLC<br>P.O. Box 3038<br>Ocala, FL 34478 |
| Base 3, LLC<br>P.O. Box 3038<br>Ocala, FL 34478 | Paul M. Dumm, CPA/ABV/CFF, CFE<br>Morrison Valuation & Forensic Services, LLC<br>934 N. Magnolia Avenue, Suite 199<br>Orlando, FL  32803 |
| Alexander Group, LLC<br>P.O. Box 3038<br>Ocala, FL 34478 | |

                                      /s/  Miriam G. Suarez
                                      Miriam G. Suarez, Trial Attorney