UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION
www.flmb.uscourts.gov

In re:

| | |
|---|---|
| Climate Control Mechanical Services, Inc., | Chapter 11<br>Case No. 3:15-bk-02248-JAF |
| | Jointly Administered with |
| Base 3, LLC, | Case No. 3:15-bk-02249-JAF |
| The Alexander Group, LLC, | Case No. 3:15-bk-02250-JAF |
| Facility Performance, LLC, | Case No. 3:15-bk-05021-JAF |
| Debtors. | |
| _____/ | |

**UNITED STATES TRUSTEE'S WRITTEN ARGUMENT
IN SUPPORT OF MOTION TO APPOINT CHAPTER 11 TRUSTEE
OR, IN THE ALTERNATIVE, CONVERT TO CHAPTER 7 THE CASES
OF CLIMATE CONTROL MECHANICAL SERVICES, INC., BASE 3, LLC, THE
ALEXANDER GROUP, LLC, AND FACILITY PERFORMANCE, LLC (DOC. NO. 554)**

On January 31, 2018, the following matters came before the Court for final evidentiary hearing: (1) United States Trustee's Motion to Appoint Trustee or in the Alternative to Convert to Chapter 7 the Cases of Climate Control Mechanical Services, Inc.; Base 3, LLC; The Alexander Group LLC; and Facility Performance, LLC (Doc. No. 554; "United States Trustee's Motion"); and Ciraco Electric, Inc.'s Emergency Motion for Appointment of Chapter 11 Trustee or, in the Alternative, to Convert Cases to Chapter 7 (Doc. No. 507; "Ciraco's Motion"). At the conclusion of the evidence, the Court took the matters under advisement and directed counsel for the United States Trustee, Ciraco Electric, Inc., and the Debtors, to simultaneously submit written arguments

1

to the Court in 10 days.[1]  Accordingly, the United States Trustee submits its written argument and states as follows:

The United States Trustee has standing to file motions to dismiss or convert chapter 11 cases, and to seek the appointment of a chapter 11 trustee, under 11 U.S.C. §§ 307, 1104(a), 1104(c) and 1112(b)(1), as well as 28 U.S.C. § 586.  *See also* Collier on Bankruptcy ¶ 1112.04[1] (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).

The United States Trustee seeks the appointment of an objective and disinterested chapter 11 trustee to operate the Debtors and manage the Debtors' affairs.  In the alternative, the United States Trustee seeks conversion of these cases to chapter 7, wherein an independent chapter 7 trustee will be appointed for the benefit of their creditors.

**Background**

Climate Control Mechanical Services, Inc. ("Climate Control"), Base 3, LLC ("Base 3"), The Alexander Group, LLC ("Alexander Group"), and Facility Performance, LLC ("Facility Performance") each filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code signed by Louie Wise, III ("Mr. Wise") in 2015.  *See* UST Exhibit Nos. 1-5.[2] Since their inception, and throughout the pendency of the cases, the Debtors have been under the direct control and 100% ownership of Mr. Wise, and have each continued to operate as debtors in possession under the Order of this Court Authorizing Debtor-in-Possession to Operate Business (UST Composite Exhibit No. 8); each is engaged in business in the construction industry with

---

[1] The 10th day following the final evidentiary hearing fell on Saturday, February 10, 2018; pursuant to Fed. R. Civ. P. 9006(a)(1)(C), when the last day for computing any time period in a court order is a Saturday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Accordingly, the deadline for filing the written argument is calculated to be Monday, February 12, 2018.  Further, counsel for the United States Trustee, Ciraco Electric, Inc., and the Debtors conferred and agreed that written argument are due to be filed by the close of business on Monday, February 12, 2018, pursuant to the oral request of the Court.

[2] The United States Trustee identified 28 exhibits which were all admitted into evidence at the final evidentiary hearing on January 31, 2018.

2

Facility Performance serving as a management company.  The cases have been jointly administered since shortly after they were filed and are not substantively consolidated and, while they have been pending for over two years, no plan has been confirmed.  *See* UST Exhibit Nos. 6-7 and 25-28.

In November 2017, the Court ordered the appointment of an examiner.  The appointment of Paul M. Dumm ("Examiner") as Examiner by the United States Trustee was approved by the Court and, on December 29, 2017, the Examiner filed a Preliminary Report (UST Exhibit No. 24; "Examiner's Report").  The Examiner was tasked with the duties of an examiner as set forth in § 1106(a)(3) and provided his findings in the report filed with the Court.  The Examiner's Report details numerous accounts of dishonesty and/or gross mismanagement of the affairs of the Debtors by current management which is indicative of fraud, before and after the commencement of the cases, all while under the control of Mr. Wise.  The testimony of Mr. Dumm reiterated his findings as Examiner, including examples of mismanagement and the entry of deceptive transactions on the books, general ledgers and monthly financial reports ("MORs") of the Debtors, and the failure to report by the financial officers of the Debtors and/or Mr. Wise.

Specifically, in the Examiner's Report, the Examiner explains that his examination revealed "a number of significant and questionable transactions that were either not reported in the Debtors' MORs, or were reported in such a way that the transactions could not be identified, and… the MORs of the Debtors do not reliably report the transactions of the Debtors."  UST Exhibit No. 24 at page 3.  The Examiner reports that "non-DIP [debtor in possession] bank accounts were opened after the date of the filing of the Debtors' bankruptcy petitions and were used to facilitate the deposit and disbursement of funds from specific transactions, such as the settlement of claims with BP, or for specific purposes, such as the use of PEX cards.  The

3

Examiner further states "…[t]ransactions within these non-DIP accounts and DIP accounts were recorded in such a way that the true nature of the transactions was disguised." *See* UST Exhibit No. 24 at page 3.

The existence of the non-DIP accounts was confirmed by Mr. Wise in both the Statement of Non-Debtor in Possession Accounts (UST Exhibit No. 12) and during this testimony at the hearing during which Mr. Wise acknowledges he was a signatory on all of the accounts. He further testified that he did not review the account reconciliation statements provided by the bank or the MORs filed with the Court so he had no knowledge of whether the non-DIP accounts were or were not included in the MORs. During his testimony, he stated that he also does not review the bank statements which are addressed to the Debtors at their shared address. His testimony evidences incompetence and gross mismanagement of the financial affairs of the Debtors. Mr. Wise failed to both supervise the financial officers he placed in control of the Debtors' financial affairs and to monitor their activities and thereby, the financial affairs of the Debtors.

Among the numerous "significant and questionable transactions" included in the Examiner's Report was the undisclosed receipt and disbursement of proceeds from BP litigation. The litigation resulted in settlement proceeds of $67,511 for Alexander Group which it received on December 14, 2016; the monies were deposited into one of the Non-DIP Accounts (Center State Bank account number xxxx9204) on December 19, 2016, the same day the account was opened by Mr. Wise and Ralph Pressley ("Mr. Pressley"). The Examiner reports that the settlement funds were subsequently disbursed via two checks payable to cash and signed and endorsed by Pressley on December 30, 2016 in the amount of $30,000 and on January 12, 2017 in the amount of $35,000. The remaining balance in the account of $2,486 was withdrawn by Mr. Wise on January 27, 2017. Neither the deposits nor the disbursements were disclosed in the

MORs filed by Alexander Group (UST Exhibit Nos. 18 and 19), recorded in its General Ledger accounts, or noted in any other bank account of any of the Debtors. Mr. Wise did not deny the receipt of the settlement monies during his testimony rather; he admitted to holding on to the monies himself and claimed that Mr. Pressley ultimately kept $10,000. Mr. Wise testified that he kept the monies at his home for a time and later took it to a college friend and deposited it into the account of another entity. He also testified that eventually $45,000 was deposited in a Facility Performance account which he could not identify; the Examiner was also unable to ascertain where the monies were deposited. Again, while the testimony of Mr. Wise is questionable at best, it evidences a complete disregard for the separate corporate entities of the Debtors and the most basic accounting practices and duties of a debtor-in-possession as a fiduciary of the estate.

Mr. Wise's testimony provides several examples of his inability to manage the debtor entities as required by the Bankruptcy Code and as directed by the orders of this Court, and his total disregard of corporate formalities and responsibilities. These include the transactions between the Debtors and Native Hubzone Solutions, LLC ("Native") which Mr. Wise testified he also owns. The Examiner identified in his report an account at CenterState Bank that was opened under the name of Native where significant unreported transactions with the Debtors transpired. *See* Examiner's Report, UST Exhibit No. 24 at pages 10-26. The Examiner reports that Native had no business operations prior to August 2015 and shared the same physical address as the Debtors although it made no payments for rent or for employees. Again, Mr. Wise did not dispute the Examiner's findings and did not deny that funds were often transferred between the Debtors and Native; rather, he testified that funds were transferred as needed between the Debtors and Native and then paid back to Native. These "loans" between Native and the Debtors were never authorized by the Court or disclosed by the Debtors.

In addition, the Examiner's Report details numerous unauthorized disbursements from the Non-DIP Accounts and the DIP Accounts including: payments to professionals retained with Court approval but paid without a filed fee application or an order of the Court authorizing the payments; and payments to professionals whose retention and payment were never authorized or approved by the Court, including attorneys.

The Examiner also reports the use of PEX prepaid cards through a Non-DIP account in the name of Climate Control (Center State Bank account number xxxx4132) where, "[b]etween June 2015 and September 2017, monthly deposits into CCMS [Climate Control] CS [CenterState] x4132 ranged from $14,600 to $28,000 and averaged $19,646 [and] …monthly disbursements from CCMS CS x4132 ranged from $15,000 to $28,043, and averaged $19,646." *See* Examiner's Report, UST Exhibit No. 24 at pages 30-33. The Examiner states in his report that the activity in this Non-DIP account was not recorded in the MORs and "[i]nstead, the disbursement of funds into CCMS CS x4132 was reported as "Miscellaneous Expense" on the disbursement listing and as Vehicle Expenses on the Schedule of Receipts and Disbursements." *See* Examiner's Report, UST Exhibit No. 24 at page 32.

Lastly, during the pendency of these cases the Debtors have each incurred significant tax debt, failing to pay post-petition taxes as they come due, and have accrued significant post-petition accounts payables. The Internal Revenue Service filed a Request for Payment of Administrative Claim in each of the four cases; the claims total $ 366,012.58 (UST Exhibit Nos. 20-23). Mr. Wise did not dispute the fact that significant post-petition taxes have not been paid. In addition, the most recent MORs on file just prior to the hearing for August 2017 (UST Exhibit Nos. 13-16) reflect total post-petition accounts payable due of $1,825,769.64 which include intercompany transfers among the Debtors.

Throughout the pendency of these cases, the Debtors have been managed and under the control of Mr. Wise. Given the misconduct of the Debtors and Mr. Wise, and their failure to comply with the Orders of this Court and with the requirements of the Bankruptcy Code as detailed above, the United States Trustee seeks the appointment of an objective and disinterested chapter 11 trustee to operate the Debtors and manage the Debtors' affairs. The Debtors are operating entities; a trustee should be appointed and given the opportunity to evaluate the viability of each of the Debtors and to make a determination as to whether reorganization or liquidation of each of the entities is in the best interest of their respective estates.

**Appointment of a Chapter 11 Trustee Pursuant to 11 U.S.C. Section 1104(a)**

A chapter 11 debtor serves as a "debtor in possession," with many of the rights and duties of a trustee. 11 U.S.C. § 1107. These include the duty to "be accountable for all money received" and, if the business of the debtor is authorized, file with the court "periodic reports and summaries of the operation of such business." 11 U.S.C. §§ 704(a)(2) and (8), 1106(a)(1). In addition, just like a trustee, a debtor in possession cannot use estate property outside of the ordinary course of business without prior court authorization after a noticed hearing. 11 U.S.C. § 363(b)(1).

Under 11 U.S.C. § 1104(a), after a noticed hearing the bankruptcy court "shall" order the appointment of a trustee in a chapter 11 bankruptcy case (1) "for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management," or (2) "if such appointment is in the interests of creditors, any equity holders, and other interests of the estate."

Cause exists in each of the cases before the Court for the appointment of a chapter 11 trustee; there is no need for any further investigation by the Examiner as suggested by Debtors' counsel at the trial on these matters. The Examiner's Report and the evidence presented at the

7

hearing is replete with facts which support a finding of cause for the appointment of a chapter 11 trustee in these cases as mandated by § 1104(a).

During the two years that these cases have been pending, the Debtors, while under the direct control of Mr. Wise, have filed monthly financial reports under penalty of perjury which did not account for all of their receipts and disbursements. In the Debtors' Statement Regarding Non-Debtor in Possession Accounts (UST Exhibit No. 12) signed by Mr. Wise under penalty of perjury, the Debtors list eight accounts previously undisclosed by the Debtors that are not authorized debtor-in-possession accounts. Numerous deposits, withdrawals, and transfers took place in these accounts representing significant amounts of monies that were not accounted for by the Debtors. Notably, they were not disclosed or reported during their bankruptcy cases until after Ciraco Electric, Inc. filed an Emergency Motion to Freeze Unauthorized Bank Accounts and Other Assets (Doc. No. 508) and an Emergency Motion to Appoint Trustee or, in the Alternative, Convert Cases to Chapter 7 (Doc. No. 507) on November 2, 2017 which resulted in this Court's Order Granting in Part Emergency Motion to Freeze Unauthorized Bank Accounts and Other Assets (UST Exhibit No. 11).

The testimony of Mr. Wise confirms both the findings of the Examiner and the fact that Mr. Wise is either unwilling or unable to act honestly and in compliance with the requirements of the Bankruptcy Code and the orders of this Court including the Orders authorizing the Debtors in Possession to Operate, or the duties of a debtor in possession which is a fiduciary of the estate. His testimony was not believable and demonstrates, at a minimum, dishonesty and/or incompetence in the management of the financial affairs of the Debtors. In addition to testifying that he does not review MORs, Mr. Wise went on to testify that the January 2017 MOR of Alexander Group (UST Exhibit No. 19) was prepared in either February or March 2017 by Mr.

Pressley just prior to his abrupt departure from the Debtors' premises on March 28, 2017, with Mr. Wise's forged signature; yet, it was filed with the Court on July 25, 2017, presumably submitted to Debtor's counsel by Mr. Booth, the Debtor's new financial officer.  Mr. Wise's explanation for filing MORs which failed to disclose the receipt and disbursement of the BP proceeds by attempting to lay blame on Mr. Pressley is not credible and, at a minimum, further demonstrates gross mismanagement and lack of candor.  This is especially disturbing given that Mr. Wise testified that he held on to $45,000 for some period of time at his home, later deposited it into an account in Tampa under the name of another entity, and claims that he eventually deposited $45,000 into an unidentified Facility Performance account; none of this could be verified by the Examiner.

Through section 1104(a)(1), Congress has mandated that the chapter 11 debtor-in-possession, which acts as a fiduciary of the creditors of the bankrupt estate, be an honest broker. *See Wolf v. Weinstein*, 372 U.S. 633, 651 (1963) (acknowledging the willingness of courts to leave debtors in possession "is premised upon an assurance that the officers and managing employees can be depended upon to carry out the fiduciary responsibilities of a trustee"); *In re V. Savino Oil and Heating Co.*, 99 B.R. 518, 526 (Bankr. E.D.N.Y. 1989) (stating that "the willingness of Congress to leave a debtor-in-possession is premised on an expectation that current management can be depended upon to carry out the fiduciary responsibilities of a trustee.  And if the debtor-in possession defaults in this respect, Section 1104(a)(1) [of the Code] commands that stewardship of the reorganization effort must be turned over to an independent trustee.")  (cited with approval in *In re Marvel Entertainment Group, Inc.*, 140 F.3d 463, 474 (3d Cir. 1998)).

The current management of the Debtors, cannot be depended upon to carry out the fiduciary responsibilities of a trustee, current management has: deliberately concealed estate

monies in undisclosed bank accounts at unauthorized depositories; exhibited a total disregard of the Orders of this Court and the duties of a debtor-in-possession; filed incomplete and inaccurate MORs under penalty of perjury; failed to account for estate monies; retained professionals without seeking Court authorization; made payments to professionals and insiders, and transferred monies amongst the Debtors and a related non-debtor entity without disclosure and without Court authorization; and incurred significant post-petition administrative claims owed to taxing authorities and accounts payables.

The actions of the Debtors and their principal, as set forth above and described in the Examiner's Report and, as evidenced by the Debtors' Statement of Non-DIP Accounts and Mr. Wise's testimony demonstrate they cannot be depended upon to carry out the fiduciary responsibilities of a debtor in possession and mandate the appointment of chapter 11 trustee.

The evidence presented at the hearing establishes cause which mandates the appointment of a chapter 11 trustee in the four jointly-administered cases of the Debtors pursuant to 11 U.S.C. § 1104(a)(1); and such appointment is in the interests of creditors and other interests of the estate. In the alternative, cause exists for the conversion of the cases to chapter 7 pursuant to § 1112(b) and there are no unusual circumstances establishing that converting the cases is not in the best interest of creditors and the estate. It is in the interest of the creditors of the Debtors' estates, that an independent trustee be appointed in these cases to pursue claims of the Debtors, including claims against the principal, related entities and insiders of the Debtors.

### Conversion to Chapter 7 Pursuant to 11 U.S.C. Section 1112

Pursuant to 11 U.S.C. § 1112(b), where "cause" is shown on the motion of a party in interest, the bankruptcy court shall convert to chapter 7 or dismiss a chapter 11 case, whichever is in the best interest of creditors and the estate, unless the court determines that the appointment

under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

A non-exhaustive list of examples of "cause" warranting dismissal or conversion is set forth in 11 U.S.C. § 1112(b)(4) which includes, without limitation, the following: (i) substantial or continuing loss to or diminution of the Debtor's estate and a lack of reasonable likelihood of rehabilitation; (ii) gross mismanagement of the estate; (iii) failure to comply with orders of this Court; (iv) unexcused failure to satisfy timely any filing or reporting requirement established by title 11 or by any rule applicable to a case under Chapter 11; and (vi) failure to timely pay taxes owed after the date of the order for relief or to file tax returns due after the date of the order for relief. 11 U.S.C. §§ 1112(b)(4)(A), (B), (E), (F) and (I).

As described above, there is cause to convert these cases due to the following: substantial and continuing, losses to, and diminution of, estate assets, including personal property and funds in the Debtors' bank accounts; the Debtors' failure to comply with the DIP Orders, the Order on Unauthorized Accounts and general requirements of a debtor in possession; the gross mismanagement of the estates of the Debtors; the filing of incomplete and inaccurate MORs under penalty of perjury; the incompetence and/or lack of honesty of current management; and the Debtors' failure to timely pay taxes coming due post-petition.

The matters set forth above constitute grounds for the conversion of these cases under 11 U.S.C. § 1112(b) for cause and there are no unusual circumstances establishing that converting the cases is not in the best interest of creditors and the estates.

WHEREFORE, based on the foregoing, the United States Trustee requests the Court enter an Order granting his motion, appointing a chapter 11 trustee in the cases of Climate

Control Mechanical Services, Inc.; Base 3, LLC; The Alexander Group LLC; and Facility Performance, LLC, or convert the Debtors' cases to proceedings under chapter 7.

DATED:  February 12, 2018.

           Respectfully submitted,
           DANIEL M. MCDERMOTT
           UNITED STATES TRUSTEE
           Region 21

           /s/  Miriam G. Suarez
           Miriam G. Suarez, Trial Attorney
           Florida Bar No.:  756105
           Office of the United States Trustee
           U.S. Department of Justice
           George C. Young Federal Building
           400 W. Washington Street, Suite 1100
           Orlando, FL 32801
           Telephone No.:   (407) 648-6301, Ext. 126
           Facsimile No.:   (407) 648-6323
           Miriam.G.Suarez@usdoj.gov

## **CERTIFICATE OF SERVICE**

  I HEREBY CERTIFY that on February 12, 2018, I caused a true and correct copy of the foregoing Written Argument to be served electronically through CM/ECF to all parties having appeared electronically in the instant matter and by U.S. Mail, postage prepaid, on the following:

| | |
|---|---|
| Climate Control Mechanical Services, Inc.<br>P.O. Box 3038<br>Ocala, FL 34478 | Alexander Group, LLC<br>P.O. Box 3038<br>Ocala, FL 34478 |
| Base 3, LLC<br>P.O. Box 3038<br>Ocala, FL 34478 | Facility Performance, LLC<br>P.O. Box 3038<br>Ocala, FL 34478 |

           /s/  Miriam G. Suarez
           Miriam G. Suarez, Trial Attorney