UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION
www.flmb.uscourts.gov

In re:

| | |
|---|---|
| Climate Control Mechanical Services, Inc. | Case 3:15-bk-02248-JAF |
| | (Jointly Administered With) |
| Base 3, LLC | Case 3:15-bk-02249-JAF |
| The Alexander Group, LLC | Case 3:15-bk-02250-JAF |
| Facility Performance, LLC | Case 3:15-bk-05021-JAF |
| Debtors. | Chapter 11 |

**CLOSING ARGUMENT BY DEBTORS
ON MOTIONS TO APPOINT TRUSTEE OR CONVERT TO CHAPTER 7**

Debtors, Climate Control Mechanical Services, Inc. ("Climate Control"), Base 3, LLC ("Base 3"), The Alexander Group LLC ("The Alexander Group"), and Facility Performance, LLC ("Facility Performance") (collectively referred to as the "Debtors") submit a closing argument as directed by the Court.

*Preliminary Matters*

1. A trial was held January 31, 2018 on two motions seeking essentially the same relief. Ciraco Electric Inc. ("Ciraco") filed a motion titled *Ciraco Electric, Inc.'s Emergency Motion for Appointment of Chapter 11 Trustee or in the Alternative to Convert Case to Chapter 7* [Doc. #507] (the "Ciraco Motion"); and, the United States Trustee (the " U.S. Trustee") filed a motion titled *United States Trustee's Motion To Appoint Chapter 11 Trustee or, In the Alternative, Convert to Chapter 7 the Cases of Climate Control Mechanical Services, Inc., Base 3, LLC, The Alexander Group, LLC, and Facility Performance, LLC* [Doc.#554] (the "U.S. Trustee Motion")( collectively the Ciraco Motion and the U.S. Trustee Motion are referred to in this document as the

"Pending Motions") (collectively Ciraco and the U.S. Trustee are referred to in this document as the "Movants").

2. The Court directed each party to submit a written closing argument which included an analysis of the application of 11 U.S.C. § 1104 at the conclusion of the trial. This document is submitted in an attempt to comply with the directions of the Court.

3. The Pending Motions indicate the Movants seek the appointment of a chapter 11 trustee or conversion to chapter 7 of each of the jointly administered cases. However, it is believed the primary goal of Movants is to gain appointment of a chapter 11 trustee. Debtors oppose appointment of a chapter 11 trustee and support the continuation of the appointment of the examiner currently in place. Therefore, the closing argument will focus on the appointment of a chapter 11 trustee versus the continued appointment of the examiner.

*Appointment of Chapter 11 Trustees and Examiners*

4. Chapter 11 provides for the intervention of independent third parties when the need arises under 11 U.S.C. § 1104 . A bankruptcy court has authority to appoint either an examiner or a trustee if there is a present need. Whether a chapter 11 trustee should be appointed or whether an examiner should be appointed depends on what is requested, the particular facts of the case and what creditors and other equity security-holders seek to accomplish. Debtors believe the continuing appointment of an examiner is the most appropriate remedy under § 1104 .

5. Case law indicates there is a presumption in Chapter 11 cases that a debtor-in-possession should be permitted to remain in control of a corporation unless there is a strong showing of need for the appointment of a trustee. *In re Intercat, Inc.*,

247 B.R. 911, 920 (Bankr.S.D.Ga.2000). There is an inherent presumption that the debtor-in-possession is most knowledgeable about the business of a debtor and the most able to run the business of a debtor. Therefore, the appointment of a chapter 11 trustee is the exception rather than the rule. *In re Sharon Steel Corp.*, 871 F.2d 1217, 1225 (3rd Cir.1989).

6. The appointment of a chapter 11 trustee is governed by 11 U.S.C. § 1104(a) which provides that:

> "(a) At any time after the commencement of the case but before confirmation of the plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of a trustee -
>
> (1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case or similar cause, but not including the number of holders of securities of the debtor or the amount of assets of liabilities of the debtor;
>
> (2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor."

7. The appointment of chapter 11 examiner is governed by 11 U.S.C. § 1104(c) which provides in relevant part that:

> "(c) If the court does not order the appointment of a trustee under this section, then at any time before the confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of an examiner to conduct such an investigation of the debtor as is appropriate, including an investigation of any allegations of fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor of or by current or former management of the debtor if -

    (1) such appointment is in the interests of creditors, any equity security holders, and other interests of the estate; or

    (2) the debtor's fixed, liquidated, unsecured debts, other than debts for goods, services, or taxes, or owing to an insider, exceed $5,000,000."

    8. Under 11 U.S.C. § 326(a) compensation for a chapter 11 trustee is commission based. The commission is based only on funds disbursed to creditors. There is no provision for compensation based upon an hourly rate or based upon the success in management of the Debtors. Due to the restrictions on compensation it is impractical for a chapter 11 trustee to continue to operate the day to day business of a chapter 11 debtor. Instead, the chapter 11 trustee will likely liquidate the estates to be compensated. This will almost certainly result in more than 60 employees being left unemployed and general unsecured creditors being left without a chance to recover anything.

    9. Compensation for an examiner is governed by 11 U.S.C. § 330(a) and is limited only as to being "reasonable compensation for actual, necessary services". Therefore, there is more flexibility as to compensation and no economic incentive to liquidate the estates.

*Appointment of a Chapter 11 Trustee for Cause under § 1104(a)(1)*

    10. A review of the Pending Motions and the evidence presented at trial indicate the Movants are primarily relying on § 1104(a)(1) as grounds for the appointment of a chapter 7 trustee. Published opinions by bankruptcy courts routinely cite § 1104(a)(1) as standing for the proposition that the appointment of a trustee for "cause" is mandatory. See, *In re SunCruz Casinos, LLC*, 298 B.R. 821, 828 (Bankr. S.D.Fla. 2003). However, courts have routinely overlooked the definition of "cause" . The term

"cause" is not defined in § 1104(a)(1) only examples are given.  However, *Black's Law Dictionary, 5th Ed.,* gives some insight..... among other things, the term "cause" is defined to mean "[a] ground for legal action". In other words, "cause" is grounds (or a basis) for taking action. The examples of cause set forth in § 1104(a)(1) describe acts of misfeasance, malfeasance and, nonfeasance. They should be construed to mean that those examples **may** be grounds for a determination of cause.  Debtors argue that whether misconduct or incompetence rises to the level of "cause" for appointment of a trustee under § 1104(a)(1) is a matter for the Court to determine. It is a question of fact; not a question of law; and, the current circumstances of a debtor should be taken into account. Determinations to appoint a trustee pursuant to § 1104(a)(1) are fact intensive and decisions must be made on a case by case basis. See *In re Sharon Steel Corp.*, 871 F.2d at 1225; In *re Bellevue Place Assoc.*, 171 B.R. 615, 622 (Bankr.N.D.Ill.1994). Since one would expect to find some degree of incompetence or mismanagement in most businesses which have been forced to seek the protections of chapter 11, the Court must find something more aggravated than simple mismanagement in order to appoint a trustee. Further, it is the abilities and integrity of **current** management which must be considered to determine whether the appointment of a trustee under § 1104(a)(1) is warranted. *In re LaSherene*, Inc., 3 B.R. 169 (Bkrptcy. N.D.Ga.1980).

11.  In making an analysis as to whether there is cause to appoint a chapter 11 trustee, the Debtors request that the Court take into account that there has been a substantial change in management and an honest attempt to remedy misconduct **prior** to the filing of the Pending Motions. A new and more qualified chief financial officer was hired; misplaced funds were returned; and, new bookkeeping and record keeping have

been implemented. The remedial steps taken by the current management of the Debtors reflect an honest attempt to correct past mismanagement. Current management has fully cooperated with the examiner and provided all available information requested.

*Appointment of a Chapter 11 Trustee*
*for the Best Interest of Creditors and Interested Parties Under § 1104(a)(2)*

12.  Under § 1104(a)(2) an alternative ground for the appointment of a chapter 11 trustee is provided. It does not require a showing of misfeasance, malfeasance or nonfeasance. Under this provision, a chapter 11 trustee may be appointed when it is in the "best interests" of creditors, equity interests or other interests of the estate. In making its determination under this standard, the Court weighs the pros and cons of appointing a trustee. *In re Basil Street Partners*, LLC, 477 B.R. 856, 869 (Bkrptcy. M.D. Fla.2012).

13.  With a chapter 11 trustee comes an additional layer of cost and expense to the estate. Further, the statutory scheme required for compensation of a chapter 11 trustee, as discussed above in paragraph 8, makes it extremely likely that the Debtors will be liquidated. Due to the restrictions on compensation it is impractical for a chapter 11 trustee to continue to operate the day to day business of a chapter 11 debtor. Instead, the chapter 11 trustee will likely liquidate the estates to be compensated. The liquidation of the estates is not in the best interest of any of the creditors, administrative, priority, general unsecured and, secured. All creditors will receive less and most will receive nothing if the estates are liquidated. That is not in the best interest of any of the creditors and interested parties.

14.  The Debtors have made significant progress in the last few months and the

chances of reorganizing the Debtors have significantly improved (with the exception of The Alexander Group). If the Examiner is left in place for guidance and assistance in management, the chances of success are even greater.

15. It should be noted that current management successfully concluded prosecution of an adversary proceeding which now awaits approval of the Court. Under the proposed settlement, Climate Control will recover $1,150,000.00. A pleading titled Motion to Approve Settlement Agreement in Adversary Proceeding 3:15-ap-00352-RAC was filed February 9, 2018 [Doc.#584].

16. Because of the complexities of construction litigation and the factual knowledge regarding the second pending adversary proceeding, it is essential to keep current management in place. Debtors estimate the claim in the second adversary proceeding has a value of several million dollars. It is extremely unlikely a chapter 11 trustee could recover more than the nuisance value of the remaining construction bond claim without current management in place.

17. It should also be noted that current management has continued adequate protection payments to Community Bank in the amount of $25,000.00 per month as required under the order titled *Order Approving Settlement Agreement Between Debtors and Community Bank and Trust of Florida* [Doc.#351]. It is hard to fathom how a chapter 11 trustee could generate those funds without current management in place. Construction jobs require construction licenses and personal relationships with customers. None of those matters were addressed by Movants at trial. Further, it is believed Community Bank will file a written closing argument which opposes appointment of a chapter 11 trustee. It is simply not practical to reorganize the debts of

the estates with an appointed chapter 11 trustee and is not in the best interests of creditors and interested parties.

*Appointment of an Examiner Under  § 1104(c)*

18.  It is considered extraordinary for a trustee to be appointed in chapter 11 because of the importance of the debtor-in-possession. The knowledge of the troubled business is usually critical to the success of the reorganization. If chapter 11 is filed by a business and a trustee is appointed, the trustee will take control of the business, thereby displacing the debtor-in-possession. Therefore, one of the most important reasons for the continued appointment of the examiner is his role as an investigator and reporter but not a manager. If the Court continues the appointment of an examiner, the ongoing business of the Debtors will not be terminated.  Allowing the Debtors to remain in control encourages a reorganization, as opposed to liquidation, and, will result in a greater likelihood that general unsecured creditors will receive a distribution.

19.  The continued appointment of the examiner in these cases can provide many significant potential benefits to the parties in these cases. First, the examiner can assist in a determination as to whether the Debtors' businesses have a meaningful chance of reorganizing successfully.  Second, the examiner's investigations can reduce the time and money that might be spent in investigation by multiple parties. This avoids duplicative efforts while also providing credible results because an impartial independent third party conducted the investigation. Third, a continuation of the examiner's investigation can be concluded more quickly than another party's investigation.  Fourth, the restrictions on compensation of a chapter 11 trustee are not present. The administrative costs of employing an examiner can be customized to meet

the needs of the examiner and the interested parties. Fifth, and probably most important, the continued appointment of the examiner can avoid disrupting the Debtors' businesses since an examiner does not take control of the business as a chapter 11 trustee would. And finally, and hopefully, the continued appointment of the examiner may result in a diffusion of tensions between interested parties in these cases. There are a multitude of conflicting and competing interests. This services of the examiner may be expanded to include: mediating a confirmable plan between the Debtors and the interested parties; assisting the Debtors with management or reorganization issues, or performing other tasks that are best performed by a party not connected with any of those with vested and conflicting interests in these cases.

20. Under 11 U.S.C. § 1106 an examiner has many duties similar to a trustee. In particular, both a chapter 11 trustee and an examiner have the duty under § 1106(a)(3) to, among other things, "investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business and the desirability of the continuance of such business, and any other matter relevant to the case or to the formulation of a plan". The examiner has not been able to fulfill those duties due to the necessary time limitations imposed by the Court. The Debtors encourage the Court to expand the services of the examiner to permit further consultation regarding management and negotiation together with mediation between the various interested parties in these cases.

*Appropriate Relief*

21. Debtors believe that the appointment of an examiner has been beneficial to the administration of the four bankruptcy estates. Debtors believe it is appropriate for

the examiner to remain in place and prepare a report within 60 to 90 days regarding the financial viability of the Debtors and to retain his appointment through the confirmation process. The role of the examiner should be expanded to include consultation with the Debtors regarding management, financial reporting and, interaction with the Debtors and interested parties to develop a confirmable plan of reorganization. Debtors have no objection to customizing an order providing for compensation on a regular monthly basis subject to approval of a fee application at a later date.

22. The finances of the Debtors are complicated and overlap. The bookkeeping and record keeping are admittedly less than stellar. The financial reporting has obviously been confusing, inadequate and, sometimes erroneous. However, a new chief financial officer was employed this summer who has commenced reconciling the books and records. He is a certified public accountant who had pre-petition experience in the reviewing the records of the Debtors, however, he has limited knowledge in completing the reports required for a chapter 11 case. It is quite beneficial for the examiner to continue to be available for consultation and review of records as they are corrected and reconciled.

23. The Debtors consented to the appointment of an examiner at a preliminary hearing prior to the trial. The undersigned attorney recalls at the hearing, that the Court specifically requested that the report by an examiner contain an analysis of the financial viability of the Debtors. The request was overlooked by counsel for the Movants. When the examiner sought direction as to the parameters of his examination the financial viability of the Debtors was not discussed by the Movants. The examiner understandably did not consult with the undersigned prior to the examination.

24. Debtors believe it is appropriate to require the Debtors to within 60 to 90 days correct deficiencies in the financial reporting required by the U.S. Trustee to the satisfaction of the examiner and U.S. Trustee.  With the assistance and oversight of the examiner this can be accomplished.  Without the assistance and oversight by the examiner, it unlikely the deficiencies can be corrected within a time period acceptable to interested parties.

25. Debtors are ambivalent as to whether The Alexander Group is converted to chapter 7.  It is not an operating business entity and has limited assets. All assets are encumbered by a lien held by Community Bank. Under an order dated May 13, 2016 [Doc.#351] Community Bank has a claim secured by all tangible and intangible assets in the amount of $1,854,632.05.  The amount of the secured claim is far more than any imaginable assets of the estate of The Alexander Group.  Debtors have suggested to Ciraco that conversion to chapter 7 for The Alexander Group is acceptable, however, Ciraco, for reasons which are unclear, desires appointment of a chapter 11 trustee. How a chapter 7 or chapter 11 trustee would be paid from the meager assets of The Alexander Group remains unclear.

26. Debtors do not believe the appointment of a chapter 11 trustee for Climate Control, Base 3 or Facility Performance is warranted. The misconduct does not rise to the level of cause to appoint a trustee and it is not in the best interest of creditors and interest parties. While past management of the Debtors has left much to be desired, aggressive corrective action is being taken and a new chief financial officer is now in place. The Debtors believe that the current management is competent and moving forward at an appropriate rate of speed towards confirmation.

27. The costs and expenses of a chapter 11 trustee are disproportionately higher than the value of the protection afforded. This is primarily due to the compensation scheme imposed on chapter 11 trustees under § 326. It is believed the U. S. Trustee envisions a "hands on" chapter 11 trustee who would operate the business on site, however, because § 326(a) limits compensation to a chapter 11 trustee to a commission based only upon funds disbursed to creditors, it is unlikely that business operations would be permitted to continue. Instead, the chapter 11 trustee will likely liquidate the estates to be compensated. It is not in the economic interest of a chapter 11 trustee to attempt to reorganize the Debtors. Due to the large secured claims against the estates held by Community Bank and the large priority tax claims held by taxing authorities, it is hard to fathom how any funds would be distributed to general unsecured claims if the estates of the Debtors were liquidated. The only feasible way is through a reorganization plan which is extremely unlikely if a chapter 11 trustee is appointed.

28. Debtors believe it is appropriate to order the chief executive officer of the Debtors to pay $4,486.00 to the bankruptcy estate of The Alexander Group. That is the amount the examiner conclusively determined was not turned over from the BP Settlement Claim and was received by former Chief Financial Officer, Ralph Pressley. The chief executive officer, Louie F. Wise, III has agreed to pay the funds within 30 days.

RICHARD A. PERRY, P.A.
Law Firm

/s/ Richard A. Perry
RICHARD A. PERRY
Fla. Bar No. 394520
820 East Fort King Street
Ocala, Florida 34471-2320
(352) 732-2299
richard @ rapocala.com

Attorney for Debtors

### CERTIFICATE OF SERVICE

**DATE:** February 12, 2018

**I CERTIFY** that, on the date set forth above, a copy of the foregoing has been served by electronic notice using Case Management/Electronic Case Filing ("CM/ECF"). This is a contested matter and all parties are represented by counsel.

/s/ Richard A. Perry
RICHARD A. PERRY
Fla. Bar No. 394520
Attorney for Debtor